**BERRY LAW PLLC**
745 Fifth Avenue, 5th Floor
New York, New York 10151
Phone: (212) 355-0777
Eric W. Berry, Esq.
berrylawpllc@gmail.com

**TARTER KRINSKY & DROGIN LLP**
1350 Broadway, 11th Floor
New York, New York 10018
Phone: (212) 216-8000
Michael Z. Brownstein, Esq.
Jill Makower, Esq.
mbrownstein@tarterkrinsky.com
jmakower@tarterkrinsky.com

*Attorneys for Shalom S. Maidenbaum, Creditor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

AARON FISCHMAN,

                        Debtor.
-----------------------------------------------------------x

Chapter 13

Case No. 23-35660 (CGM)

**SHALOM S. MAIDENBAUM'S OPPOSITION TO DEBTOR'S MOTION FOR AN ORDER: (I) ENFORCING THE AUTOMATIC STAY, AND (II) GRANTING THE DEBTOR AN AWARD OF DAMAGES FROM VIOLATION OF THE AUTOMATIC STAY**

Shalom S. Maidenbaum ("Maidenbaum"), a creditor and party in interest in the above-captioned Chapter 13 case of Aaron Fischman ("Fischman" or the "Debtor"), submits this opposition to the Debtor's motion dated October 6, 2023 (the "Motion") [ECF No. 31] pursuant to §§362(a) and 105(a) of title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), for the entry of an order (i) enforcing the automatic stay, and (ii) granting damages to the Debtor for Maidenbaum's alleged violation of the automatic stay, and respectfully represents:

**PRELIMINARY STATEMENT**

1.     The Debtor's Motion is replete with gross misstatements of fact and law, and lacks any factual or legal basis. As demonstrated in the accompanying Declaration of Maidenbaum's Israeli attorney Adv. Shai Ganor, dated October 22, 2023 (the "Ganor Decl.") and the exhibits thereto, and the accompanying Declaration of Eric W. Berry dated October 24, 2023 (the "Supplemental Berry Decl.") and the exhibits thereto, and as further demonstrated herein, the Debtor's Motion must be denied in its entirety for at least four reasons.

2.     First, the Israeli foreclosure proceeding (the "Foreclosure Proceeding") relating to the Apartment[1] that the Debtor owned in Israel, was commenced and prosecuted by the Bank of Jerusalem (the "Israeli Bank") in accordance with Israeli law, and the uncontroverted evidence proves that the **Foreclosure Proceeding was controlled solely by the Israeli Bank and the Israeli Bank's Receiver**.[2] Maidenbaum exercised no control over the Foreclosure Proceeding or the sale of the Apartment or the Receiver.[3] The Israeli Bank's and its Receiver's exclusive control over the Foreclosure Proceeding is confirmed by statements made in the Israeli Court by both the Receiver and by Israeli attorney Adv. Avraham Barzel ("Barzel") (who sometimes represented the Debtor and sometimes represented the Debtor's wife Nina).[4] Although the Debtor's Motion states that Maidenbaum "is currently prosecuting the Israel Sale Proceeding to sell the Israel Property" (Motion, ¶22), that statement is not supported by Barzel's September 20, 2023 declaration (the "Barzel Declaration") [ECF No. 19] or any other evidence.[5]

---

[1] Capitalized terms not defined herein shall have the meanings given in the Ganor Decl.
[2] Ganor Decl., ¶¶ 36,40,41. See also id. at ¶ 27.
[3] Id. at ¶¶ 36,40,41.
[4] Id. at ¶ 40.

[5] Prior to the filing of Debtor's Motion, Maidenbaum's counsel advised the Debtor's counsel that the auction of the Apartment had already taken place and that the Foreclosure Proceeding was controlled solely by the Israeli Bank and the Israeli Bank's Receiver.

3. Second, **the automatic stay never applied in Israel to stay the Israeli Bank's Foreclosure Proceeding**. The automatic stay is inapplicable to the Foreclosure Proceeding and didn't stay the sale of the Apartment because the Apartment is foreign property located in Israel, and under applicable federal law, the United States Bankruptcy Court is precluded from exercising control over property of the estate located in a foreign country without the assistance of the foreign (Israeli) courts. Further, as stated in the Ganor Decl., the automatic stay from a U.S. bankruptcy case is not recognized under Israeli law unless an application for the recognition of foreign proceedings is submitted to an authorized court in the State of Israel by a foreign officer (and not the debtor) and the Israeli court exercises its discretion to recognize the foreign insolvency proceedings.[6] No application for recognition was submitted in Israel for recognition of Fischman's U.S. bankruptcy case.[7]

4. Third, the Debtor never even argued in Israel that there was or should be any stay as a result of his bankruptcy case.[8]

5. Fourth, since no automatic stay applied in Israel to stay the Foreclosure Action, the sale of the Apartment (which, in any event, was controlled solely by the Israeli Bank and its Receiver) was not a violation of the automatic stay.

6. When the Debtor filed this Chapter 13 case *pro se* on August 10, 2023 (the "Petition Date"): (i) the Israeli Bank, in connection with its Foreclosure Proceeding, had already conducted an auction of the Debtor's Apartment on August 1, 2023; (ii) the Receiver had already filed a motion on August 2, 2023 to approve that sale; (iii) Barzel had already made certain requests on behalf of the Debtor's wife Nina to stop the sale (including on August 1, 2023 and on August 3, 2023), relating primarily to Rabbinical proceedings, none of which was successful.

---

[6] Ganor Decl., ¶¶ 8, 42, 43.
[7] Id. at ¶ 48.
[8] Id. at ¶ 34, 48.

7. Although the Debtor filed Chapter 13 on August 10, 2023, he never argued in Israel that there was or should be any stay as a result of his bankruptcy case.[9]

8. On August 27, 2023, the Registrar presiding over the Israeli Bank's Foreclosure Proceeding approved the Receiver's sale of the Apartment effective as of September 6, 2023, "unless an order by a competent and authorized court is presented ordering to the contrary."[10] No such order was presented, and the sale was deemed approved effective of September 6, 2023, allowing the Receiver to sign the Contract of Sale.[11]

9. On September 18, 2023, the Registrar signed the Sale Order. Pursuant to Israeli law, the Sale Order finalized the sale of the Apartment, entitled the purchaser to be registered as title owner, and vacated any rights of any interested parties, including the Debtor, Nina, the Israeli Bank (the mortgage holder) and Maidenbaum (an attachment holder.).[12]

10. Although the automatic stay never applied to the Israeli Bank's Foreclosure Proceeding, the automatic stay in this case terminated 30 days after the Petition Date pursuant to Bankruptcy Code section 362(c)(3), as demonstrated below, and it is appropriate for the Court to enter an order confirming same. See 11 U.S.C. § 362(j).

11. Maidenbaum respectfully requests an order denying the Debtor's Motion in its entirety, and confirming, pursuant to Bankruptcy Code section 362(j), that the automatic stay terminated 30 days after the Petition Date.

---

[9] Id. at ¶ 34, 48.
[10] Id. at ¶ 37.
[11] Id. at ¶ 37.
[12] Id. at ¶ 39.

# FACTUAL BACKGROUND

12. The relevant factual background is set forth in the Ganor Decl. and the exhibits thereto, and the Supplemental Berry Decl. and the exhibits thereto, all of which is incorporated by reference as it fully set forth herein.

# ARGUMENT

## I. THE AUTOMATIC STAY NEVER APPLIED TO THE ISRAELI BANK'S FORECLOSURE PROCEEDING

13. The Debtor's Motion is fatally flawed because it ignores critical the fact that the Apartment is located outside of the United States.

14. As Judge Chapman stated in <u>In re Lehman Bros. Holdings Inc</u>., 544 B.R. 16, 40–41 (Bankr. S.D.N.Y. 2015):

> B. *In Rem* **Jurisdiction**
>
> The court in which a bankruptcy proceeding is pending has "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e) (emphasis supplied); <u>see also Sinatra v. Gucci (In re Gucci)</u>, 309 B.R. 679, 681 (S.D.N.Y.2004).
>
> ****
>
> The bankruptcy court's in rem jurisdiction is broad and reaches property wherever located. See 28 U.S.C. § 1334(e). In other contexts, a court may only exercise in rem jurisdiction over property physically within the court's jurisdiction at the time of the suit. See 4A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 107 (3d ed.). However, in the bankruptcy context, Congress explicitly gave bankruptcy courts global reach over the debtor's property via section 541(a) of the Bankruptcy Code and section 1334(e) of title 28 of the United States Code. <u>See Hong Kong & Shanghai Banking Corp., Ltd. v. Simon (In re Simon)</u>, 153 F.3d 991, 996 (9th Cir.1998), cert. denied, 525 U.S. 1141, 119 S.Ct. 1032, 143 L.Ed.2d 41 (1999) ("Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate."); <u>Gucci</u>, 309 B.R. at 683 (declaring that "[s]ection 1334(e) ... embodies a Congressional determination that bankruptcy courts should determine rights in property of bankrupt estates regardless of where that property may be found"); <u>Nakash v. Zur (In re Nakash)</u>, 190 B.R. 763, 768 (Bankr.S.D.N.Y.1996) (exercising in rem jurisdiction to enforce automatic stay against foreign receiver related to foreign assets of foreign debtor).

> **Despite the bankruptcy court's broad reach to assert jurisdiction over foreign property, the bankruptcy court's in rem jurisdiction cannot be enforced extraterritorially without in personam jurisdiction over the defendant. See Found. for Research v. Globo Communicacoes e Participacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.), 317 B.R. 235, 251–52 (S.D.N.Y.2004).** In other words, "the bankruptcy court is precluded from exercising control over property of the estate located in a foreign country without the assistance of the foreign courts." In re Int'l Admin. Servs., Inc., 211 B.R. 88, 93 (Bankr.M.D.Fla.1997).

Lehman Bros. Holdings Inc., 544 B.R. at 40–41 [emphasis added].

15. Even though the Debtor may have held an interest in the Apartment as of the Petition Date,[13] the automatic stay was never applicable to the Foreclosure Proceeding and never stayed the sale of the Apartment because the Apartment is foreign property located in Israel, and under applicable federal law, the Bankruptcy Court is precluded from exercising control over property of the estate located in a foreign country without the assistance of the foreign (Israeli) courts. See In re Globo Comunicacoes e Participacoes S.A., 317 B.R. 235, 251 (S.D.N.Y. 2004)("A court, in exercising its in rem jurisdiction alone, is constitutionally empowered to adjudicate rights to property only when such property is legally or physically located within its own jurisdiction."); In re Gucci, 309 B.R. 679, 684 (S.D.N.Y. 2004)("the bankruptcy court is precluded from exercising control over property of the estate located in a foreign country without the assistance of the foreign courts... As the property in question here is located in Rome, its fate ultimately will be determined by Italian courts"); Lehman Bros. Holdings Inc., 544 B.R. at 40-41; 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1070 (3d ed. rev.2004) ("One of the requirements of in rem or quasi-in-rem jurisdiction is that the property be

---

[13] The Jerusalem District Court's September 2, 2022 Declaratory Judgment (attached as Exhibit 1 to the Ganor Decl.) declared that the Debtor "is the owner the Apartment" (see Ganor Decl., Exh. 1. ¶ 102; Ganor Decl. ¶¶ 15-17), and that the Declaratory Judgment became final and unappealable. (Ganor Decl. ¶ 18). The auction was held on August 1, 2023, and on September 18, 2023, the Registrar signed the Sale Order which terminated all rights of any interested parties.

within the court's jurisdiction at the time of suit."). Further, as stated in the Ganor Decl., the automatic stay from a U.S. bankruptcy case is not recognized under Israeli law unless an application for the recognition of foreign proceedings is submitted to an authorized court in the State of Israel by a foreign officer (and not the debtor) and the Israeli court exercises its discretion to recognize the foreign insolvency proceedings.

16. Since the Bankruptcy Court was and is precluded from exercising control over the Apartment without the assistance of the Israeli courts, and no application for recognition was submitted in Israel for recognition of Fischman's U.S. bankruptcy case, the automatic stay did not apply to the Israeli Bank's Foreclosure Proceeding.

17. Since the Foreclosure Proceeding was never stayed, there was no violation of the automatic stay, and it is thus respectfully submitted that there can be no award of damages. The Motion therefore must be denied in its entirety.

## II. THE APARTMENT HAS BEEN SOLD IN ACCORDANCE WITH ISRAELI LAW IN A PROCEEDING CONTROLLED SOLELY BY THE ISRAELI BANK AND ITS RECEIVER

18. As demonstrated in the Ganor Decl., the Apartment was sold by the Israeli Bank and its Receiver in accordance with Israeli law, in the Foreclosure Proceeding which the Israeli Bank and the Receiver solely controlled.

19. At no point in time did Maidenbaum have any control over the Receiver, who was appointed by the Registrar at the behest of the Israeli Bank years before the commencement of the Maidenbaum Enforcement Proceeding.[14] The Receiver acted according to his own professional discretion subject to the oversight and instructions of the Registrar.[15]

---

[14] Ganor Decl. ¶ 36.
[15] Id. at ¶ 36.

20. There is no genuine dispute that the Israeli Bank, which was a secured creditor, was the sole entity in charge of the Foreclosure Proceeding and the sale of the Apartment, and that the proceedings that led to the sale of the Apartment were initiated and controlled solely by the Israeli Bank and according to its discretion.[16] The Receiver made statements in the Israeli court confirming that the sale of the Apartment was carried out solely by the Israeli Bank, and Barzel also made statements agreeing with the Receiver's view that the sale was carried out solely by the Israeli Bank.[17]

21. As set forth in the Ganor Decl., the auction of the Apartment took place on August 1, 2023, and the Receiver declared a purchaser, Mr. Daniel Beer, as the winning bidder.[18] On August 2, 2023, the Receiver filed a motion (the "Approval Motion") to approve the sale of the Apartment by the Registrar.[19] On August 6, 2023, the Registrar gave Fischman seven (7) days to respond to the Approval Motion, but Fischman never responded.[20] On August 20, 2023, the Receiver filed another motion requesting the Registrar to deliver its decision and approve the sale.[21] On August 27, 2023, the Registrar approved the sale of the Apartment, and set forth that the decision should become effective as of September 6, 2023, unless an order by a competent and authorized court is presented ordering to the contrary.[22] No order was presented, and the sale was deemed approved effective of September 6, 2023, allowing the Receiver to sign the Contract of Sale.[23] On or about September 13, 2023, the purchaser Mr. Beer deposited the full consideration of the sale with the Authority under the Bank's Enforcement Proceeding, and after the Receiver reported the sale to the Israeli Tax Authority, the Receiver filed a motion to the Registrar to sign a

---

[16] Id. at ¶ 40.
[17] Id. at ¶ 40.
[18] Id. at ¶ 32.
[19] Id. at ¶ 33.
[20] Id. at ¶ 33.
[21] Id. at ¶ 37.
[22] Id. at ¶ 37.
[23] Id. at ¶ 37.

sale order declaring that the Apartment is the legal property of Mr. Daniel Beer and that it is free from any mortgage, pledge, attachment, encumbrance, lien or other right of any person or entity ("Sale Order").[24]

22. On September 18, 2023, the Registrar signed the Sale Order.[25] Under Israeli law, the Sale Order finalized the sale of the Apartment, entitled the purchaser to be registered as title owner, and vacated any rights of any interested parties, in this case, including Fischman (and/or Nina), the Bank as a mortgage holder, and Maidenbaum as an attachment holder.[26]

### III. THE DEBTOR NEVER ARGUED IN ISRAEL THAT THE AUTOMATIC STAY APPLIED

23. Although Fischman filed this Chapter 13 case on August 10, 2023, Fischman never filed any motion in any Israeli court requesting the recognition or enforcement in Israel of any order relating to his bankruptcy proceedings.[27] In fact, Fischman never even argued in Israel that the automatic stay applied to stay the Foreclosure Proceeding.[28]

24. Fischman's statement that "after the Debtor filed his Bankruptcy Case, he notified the Court of Israel of his bankruptcy filing" (Motion, ¶ 1) is false and misleading.[29] What occurred was that a month after the Petition Date, on September 10, 2023, Barzel, acting as Nina's attorney, made a passing reference to Fischman's bankruptcy filing.[30]

---

[24] Id. at ¶ 38.
[25] Id. at ¶ 39.
[26] Id. at ¶ 39.
[27] Id. at ¶ 48.
[28] Id. at ¶ 48.
[29] Id. at ¶ 48.
[30] Id. at ¶¶ 34, 49, 50.

## IV. THE AUTOMATIC STAY TERMINATED 30 DAYS AFTER FISCHMAN'S CHAPTER 13 FILING

25. Although the automatic stay never applied to the Israeli Bank's Foreclosure Proceeding, pursuant to Bankruptcy Code § 362(c)(3), the automatic stay terminated thirty (30) days after the Petition Date in this Chapter 13 case.

26. Section 362(c) of the Bankruptcy Code provides, in pertinent part:

(c) Except as provided in subsections (d), (e), (f), and (h) of this section—

\*\*\*\*

(3) **if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed,** other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

(A) **the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt** or with respect to any lease **shall terminate with respect to the debtor on the 30th day after the filing of the later case;**

(B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; …

11 U.S.C. § 362(c)(3)(A), (B).

27. Section 362(c)(3) applies here because the Debtor is an individual debtor in a case under Chapter 13, and a case of the Debtor was pending within the preceding one-year period but was dismissed. The prior case of the Debtor was an involuntary Chapter 11 case filed in this Court on May 8, 2023 by Ahron Berlin ("<u>Petitioning Creditor</u>"), Case No. 23-35368-cgm (the "<u>Involuntary Case</u>").

28. The Involuntary Case was dismissed by the Court on July 11, 2023 for lack of prosecution. [Involuntary Case, ECF No. 18].

29. The Debtor did not file any motion for continuation of the automatic stay and, therefore, the automatic stay terminated 30 days after the Petition Date. See 11 U.S.C. § 362(c)(3); In re Thomas, 639 B.R. 285, 291 (Bankr. S.D.N.Y. 2022) (CGM) ("Discouraging bankruptcy abuse and bad faith repeat filings, as § 362(c)(4) is meant to do, "is best achieved by interpreting § 362(c)(3)(A) to terminate the entire stay, including as to estate property."); In re Bender, 562 B.R. 578, 585 (Bankr. E.D.N.Y. 2016)(holding "the Court grants NY Liens' motion to confirm that the automatic stay terminated in this case 30 days post-filing by operation of § 362(c)(3)(A), and further finds that the § 362(a) stay terminated with respect to any judicial, administrative or other formal proceeding commenced prepetition which relates to a debt or property securing such debt or a lease, regardless of whether the property or lease was property of the estate or property of the Debtor.").

30. The fact that the preceding case of the Debtor was an involuntary bankruptcy case, is of no relevance under section 362(c)(3). The view that section 362(c)(3) (or 362(c)(4)) does not apply if the previous case of the debtor was an involuntary case, is not supported by any authority. An involuntary case filed against the debtor that was pending within the preceding one year, and which was dismissed, counts for purposes of section 362(c)(3) and 362(c)(4). See Dobrer v. PennyMac Corp., 2018 WL 6437068, at *1-2 (E.D.NY. 2018) (dismissing appeal of Bankruptcy Judge Craig's May 11, 2018 order as moot and for lack of subject matter jurisdiction where foreclosure sale had already taken place, and **Judge Craig had rejected debtor's argument that the prior involuntary chapter 7 petition filed against the debtor, which was never served on the debtor, and which was dismissed in the one year period, should not have "counted"** under § 362(c)(4)(A)(i) because it was involuntary); In re Dobrer, Case No. 17-45560-cec [ECF No.

42](May 11, 2018). See also Adams v. Zarnel (In re Zarnel), 619 F.3d 156, 166, 167 (2d Cir. 2010) ("a petition filed under §§ 301, 302, or 303 both 'operates as a stay'… and 'commences a bankruptcy case'", and holding that a case is "commenced" under Section 303 even if the debtor is ineligible for relief under the Bankruptcy Code, or the creditor is ineligible to file the involuntary petition); 2 Norton Bankr. L. & Prac. 3d § 43:14 ("Generally, if a debtor had a case pending in the year before the petition date which was dismissed, the stay under Code § 362(a) will terminate with respect to the debtor on the 30th day after the filing of the later case... When a debtor has had two or more cases pending against it in the year preceding the Petition Date, the stay afforded by Code § 362(a) does not go into effect in the first instance, and upon request of a party in interest the court shall promptly enter an order confirming that no stay is in effect.")[footnotes omitted].

31. In Dobrer, the U.S. District Court described Judge Craig's unreported decision on this issue:

> Judge Craig heard oral argument on May 3, 2018. (A059.) **The appellant claimed, without citing any authority, that the January 2017 petition should not have "counted" under § 362(c)(4)(A)(i) because it was involuntary, and thus, the automatic stay should have gone into effect after the third petition. (A007; A065; A070–71.) Judge Craig rejected this argument, pointing out that § 362(c)(4)(A) was meant to "prevent the automatic stay from being invoked multiple times," and "putting a creditor in a position where they have to seek preclusive relief."** (A076–78.) Because the automatic stay took effect when the first two petitions were filed, the automatic stay did not attach when the appellant filed her third petition in October 2017. (A075–78.)
>
> **The appellant also claimed that she was denied due process because she was never served with the involuntary petition. (A071–72.) As a result, she claims that the sale of her property never should have occurred because the automatic stay should have attached upon the filing of what she thought was her second, not third, bankruptcy petition. (A073–75.) Judge Craig rejected this argument, too, because the appellant had "actual notice of the pendency of [the involuntary proceedings], whether or not the petitioning creditor served her,** because she was served ... with the Court's order to show cause." (A074.) Therefore, the appellant knew that the October 2017 filing was her third bankruptcy petition, and could have prevented the foreclosure by moving under § 362(c)(4)(B) for a stay. (Id.)

> Judge Craig granted the appellee's motion to terminate loss mitigation, because "the automatic stay did not take effect in the instant bankruptcy case pursuant to 11 U.S.C. § 362(c)(4)(A)(i) and the property was sold at a foreclosure sale held on November 2, 2017."5 (A087.) The appellant timely appealed Judge Craig's order. (A009; ECF No. 1.)
>
> The appellant makes essentially the same arguments she made to Judge Craig. Arguing that 11 U.S.C. § 362(c)(4)(A)(i) does not apply to involuntary bankruptcy petitions, she claims that she was denied due process because she was not served with the first petition. 6 (ECF No. 6 at 9–20.) 7 The appellee responds that the bankruptcy court correctly interpreted 11 U.S.C. § 362(c), and that the appellant could have moved for a stay, but did not.

Dobrer, 2018 WL 6437068 at *2-3.

32. The District Court dismissed the appeal on mootness grounds because the subject property was sold at a foreclosure hearing. Id. at * 3.

33. Under Bankruptcy Code section 362 and the caselaw, the Involuntary Case filed against Fischman "counts" for purposes of section 362(c)(3). Further, the Involuntary Case, despite being dismissed on July 11, 2023 for lack of prosecution, substantially interfered with Maidenbaum's collection efforts. Fischman, through his counsel, used the automatic stay arising from the Involuntary Case to stop certain of Maidenbaum's proceedings in the United States. Not coincidentally, the Involuntary Case was filed on May 8, 2023, (i) shortly after Justice Cozzens' April 25, 2023 contempt order,[31] and (ii) the day before Fischman's court-ordered and in-court deposition and document production then scheduled for May 9, 2023.[32]

34. As demonstrated above, pursuant to Bankruptcy Code § 362(c)(3), the automatic stay terminated thirty (30) days after the Petition Date in this Chapter 13 case.

---

[31] Supplemental Berry Decl., ¶ 11 and Exhibit D.
[32] Id. at ¶ 12.

## CONCLUSION

35. Based on the foregoing, Maidenbaum submits that the Debtor's Motion should be denied in its entirety, and an order should be entered confirming, pursuant to Bankruptcy Code section 362(j), that the automatic stay terminated 30 days after the Petition Date.

Dated: New York, New York
October 24, 2023

        BERRY LAW PLLC
        Eric W. Berry, Esq.
        745 Fifth Avenue, 5th Floor
        New York, New York 10151
        (212) 355-0777
        berrylawpllc@gmail.com

        TARTER KRINSKY & DROGIN, LLP

By: /s/ Jill Makower
        Michael Z. Brownstein, Esq.
        Jill Makower, Esq.
        1350 Broadway, 11th Floor
        New York, New York 10018
        (212) 216-8000
        mbrownstein@tarterkrinsky.com
        jmakower@tarterkrinsky.com

        *Attorneys for Shalom S. Maidenbaum, a Creditor*