**BERRY LAW PLLC**
745 Fifth Avenue, 5th Floor
New York, New York 10151
Phone: (212) 355-0777
Eric W. Berry
berrylawpllc@gmail.com

**TARTER KRINSKY & DROGIN LLP**
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Michael Z. Brownstein, Esq.
mbrownstein@tarterkrinsky.com
Jill Makower, Esq.
jmakower@tarterkrinsky.com

*Attorneys for Shalom Maidenbaum,*
    *a Creditor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

*In re* AARON FISCHMAN,

                    Debtor,

-----------------------------------------------------X

Chapter 13

Case No. 23-35660 (CGM)

**DECLARATION IN OPPOSITION TO: (I) DEBTOR'S MOTION TO
ENFORCE THE AUTOMATIC STAY, AND (II) DEBTOR'S MOTION TO
<u>CONVERT CASE TO CHAPTER 11</u>**

Eric W. Berry, pursuant to 28 U.S.C. §1746, declares that the following statements are

true and correct:

1.        I am one of the attorneys for Shalom S. Maidenbaum ("<u>Maidenbaum</u>") in this

case.   Maidenbaum is a judgment creditor of the debtor, Aaron Fischman (the "<u>Debtor</u>").

## A. __INTRODUCTION__

2.      This declaration is respectfully submitted in opposition to (i) the Debtor's October 6, 2023 motion (the "<u>Stay Enforcement Motion</u>") [ECF No. 31] to hold Maidenbaum in contempt of the automatic stay and for an assessment of actual and punitive damages against Maidenbaum, and (ii) Debtor's motion to convert this Chapter 13 case to Chapter 11 (the "<u>Conversion Motion</u>") [ECF No. 20].

3.      Maidenbaum is a judgment creditor of the Debtor based on four separate confessions of judgment that Fischman signed in 2015.  Maidenbaum filed the confessions of judgment in 2016 after Fischman failed to repay two promissory notes that Maidenbaum received from the "Cardis Entities,"[1] and which Fischman had guaranteed, and two separate promissory notes made by Fischman personally.  As of the Debtor's filing of this Chapter 13 case on August 10, 2023 (the "<u>Petition Date</u>"), Maidenbaum holds a nondischargeable secured claim in the amount of over $5.56 Million based on the four judgments (docketed as Claim No. 5-1).  Maidenbaum also holds a $900,000 nondischargeable fraud claim based on Debtor's fraud in connection with Maidenbaum's investments in the Cardis Entities (docketed as Claim No. 6-1).

4.      Claims totaling over $7.6 Million have been filed in this case. (See claims register annexed hereto as **Exhibit A**.)  The bar date has passed and, as indicated by the claims register, Maidenbaum is the Debtor's largest creditor. (A copy of Maidenbaum's Claim No. 5-1 is

---

[1] The "Cardis Entities" are Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), Inc.  These notes were also made by Choshen Israel, LLC ("<u>Choshen</u>"), another entity controlled by Fischman.

annexed hereto as **Exhibit B** and a copy of Maidenbaum's Claim No. 6-1 is annexed hereto as

**Exhibit C**).

**B.   FISCHMAN'S STAY ENFORCEMENT MOTION MUST BE DENIED**

5.      Fischman's Stay Enforcement Motion is entirely without merit.   Fischman's

argument that Maidenbaum violated the automatic stay is based *solely* on a bank foreclosure and

foreclosure sale of Fischman's apartment (the "Apartment") in Jerusalem, Israel— what

Fischman's Stay Enforcement Motion defines as the "Israel Sale Proceeding."   The allegation

that the sale of the Apartment violated the automatic stay is comprehensively refuted by the

accompanying declaration of Shai Ganor, one of Maidenbaum's Israeli attorneys.   The Ganor

Declaration shows, *inter alia*, that:

(a) The foreclosure of Fischman's Apartment (the "Foreclosure Proceeding") and resulting sale were prosecuted and controlled solely by Fischman's purchase money lender, The Bank of Jerusalem (the "Israeli Bank"). (Ganor Decl., ¶¶36, 45).

(b) Maidenbaum had no control whatsoever over the Israeli Bank's Foreclosure Proceeding or the sale.   (*Id.*, ¶¶37-41.)

(c) On August 27, 2023, an Israeli "Registrar"— essentially an administrative judge— approved the sale of the Apartment, and held that the decision would become effective as of September 6, 2023, unless Fischman presented a Court order to the contrary.   Fischman did not present any such order, and approval of the sale was therefore deemed effective as of September 6, 2023. (*Id.*, ¶¶37.)

(d) Neither Fischman nor his wife, Nina, ever moved for relief in Israel based on the automatic stay in this case.   (*Id.*, ¶¶34, 48 and 52).

- and -

(e) The automatic stay in this case is not self-executing under Israeli law with respect to real estate situated in Israel; instead, Fischman was required to

make an application for recognition of this case as a foreign proceeding, which he failed to do. (*Id.*, ¶¶43, 48 and 52.)

6. Fischman's Stay Enforcement Motion is based solely on the Israeli Banks's Foreclosure Proceeding. Though it refers to "repeated" failures to comply with the automatic stay, the Debtor's Stay Enforcement Motion actually does not allege any stay violation that does not relate to the Apartment sale. (See ECF No. 31, p. 10). Instead, Fischman identifies other proceedings relating either to Maidenbaum's collection efforts and Fischman's own various appeals and counterattacks. Fischman hopes that the multiplicity of proceedings will lead the Court to conclude that Maidenbaum is, as Fischman argues, an "overzealous" judgment creditor, who disregarded the automatic stay. However, as the Ganor Declaration shows, no stay violation occurred in connection with the Israeli Apartment sale, and Fischman's account of Maidenbaum's collection efforts is entirely misleading. An examination of the disputes between Maidenbaum and Fischman shows clearly that Fischman, rather than Maidenbaum, is the vexatious litigant.

7. This declaration will show, **(i)** Fischman was convicted of securities fraud based on his defrauding numerous investors in Cardis (including Maidenbaum, who was both an investor and a lender) and has already paid and is required to disgorge $2 million to the Attorney General in restitution; **(ii)** Fischman's attempts to obstruct Maidenbaum's collection efforts involves the same type of mendacity as Fischman's investor frauds; and **(iii)** Maidenbaum's collection efforts have been measured, and even conservative, in contrast to Fischman's outrageous tactics.

**C.  FISCHMAN'S MOTION TO CONVERT TO CHAPTER 11 MUST BE DENIED, AND THIS CASE MUST BE DISMISSED**

**1.  The Attorney General's Criminal And Civil Actions Against Fischman And Fischman's Guilty Plea**

8.      In 2018, the New York Attorney General filed a civil action against Fischman, Choshen[2] and Lawrence Katz[3] (among others) arising from fraudulent sales of Cardis securities to investors.  *People by Letitia James v. Fischman, et al.*, Index No. 452353/2018.[4]   The civil action alleges that Fischman, Choshen and Katz diverted tens of millions of dollars in capital contributions from the disclosed and proper uses and misappropriated those investments to Fischman and Katz.   (See Attorney General's Amended Complaint, ¶¶15, 22, 29, 30, 87, 89, 90, 96, 97, 105, 107, 127(c)(ii)(1) and 162-164).

9.      In 2020, the Attorney General indicted Fischman on charges that paralleled those in its civil action.[5]   On December 15, 2022, Fischman pled guilty[6] to a criminal violation of General Business Law §352-c(5) (Plea Agreement at 3:18-24), a state securities fraud statute, disgorged $1 million to the Attorney General (*id.*, at 31:21-24) and agreed to disgorge another $1

---

[2] Fischman also caused Choshen to file a Chapter 11 case, a filing that had no purpose other than attempting to stay Fischman's deposition in Maidenbaum's supplementary (collection) proceeding against him.

[3] Katz was an attorney whose IOLA account was used in the scheme to misappropriate investor funds from Cardis to Fischman and Fischman's wife, Nina.   Katz executed the Local Rule 1007-1 affidavit in conjunction with the Choshen Chapter 11 filing.

[4] A copy of the Attorney General's Amended Complaint is annexed to Maidenbaum's Claim No. 5-1 as Exhibit 8.

[5] A copy of the indictment is annexed to Maidenbaum's Claim No. 5-1, as Exhibit 6.

[6] A copy of the Plea Agreement is annexed to Maidenbaum's Claim No. 5-1 as Exhibit 7.

090302\1\170410514.v4

million within three years (*id.*, at 12:17-23). In his allocution, Fischman specifically admitted to intentionally defrauding Cardis investors. *Id.* at 24:14-26:11.

10.     The Attorney General's civil action against Fischman was settled on these terms, but continued against Choshen, Katz and other defendants.   In the Attorney General's Civil Action, on August 3, 2023, Justice Robert Reed denied all motions to dismiss.

### 2.  Fischman's Obstruction Of Maidenbaum's Collection Efforts

11.     For years, Fischman engaged in numerous tactics, tricks and strategems to avoid an obligatory deposition in Maidenbaum's supplementary (collection) proceeding. As summarized in an order filed by Nassau County Supreme Court Justice R. Bruce Cozzens filed on April 25, 2023 (See **Exhibit D** hereto):

> It has been almost seven years since the Judgment (based upon a Confession of Judgment) was entered in this action. There has been constant avoidance of providing financial documents and failure to comply with Court Orders. Though claiming not to have funds $1,000,000 was paid to another Creditor.

*Id.*, p. 2.   Justice Cozzens' order continues:

> The underlying subpoena was served in June of 2017 almost six (6) years ago and in spite of the orders of Justice Murphy and the undersigned there has been no compliance whatsoever. There have been ten motions relating to the 2017 subpoenas including six by the Plaintiff for Contempt of Court and 4 by the Defendant seeking to quash and/or for a protective order. The conduct on the part of the Defendants is making a mockery of this Court.

*Id.*, p. 3.   Justice Cozzens' order held that, unless Fischman appeared in Court for the deposition and document production required under Maidenbaum's subpoena, Fischman would be arrested and incarcerated.   The order further held that Fischman could purge the contempt and avoid

arrest and incarceration by complying with the subpoena and appearing in Court on May 9 for his deposition. *Id.,* p. 4.

12.     An involuntary Chapter 11 case, In re Aaron Fischman, Case No. 23-35368-cgm (Bankr., S.D.N.Y.) (the "<u>Involuntary Case</u>") was then filed by Ahron Berlin against Fischman on May 8, 2023, the day before Fischman's court-ordered and in-court deposition and document production, then scheduled for May 9, 2023.   Linda Tirelli, Esq., represented Fischman in the Involuntary Case.   The Involuntary Case was dismissed by a decision of this Court on July 11, 2023, after Berlin failed to serve the summons or appear at the Government Zoom hearing on the Court's motion to dismiss.   *Id.*, <u>ECF 18</u>.

13.     On August 1, 2023, following dismissal of that "involuntary" case, Fischman's in-court deposition and document production was rescheduled by Justice Cozzens for August 14, 2023.   See **Exhibit E** hereto.

14.     However, on August 2, 2023, approximately three weeks after the dismissal of the Involuntary Case, Ms. Tirelli (who represented Fischman in the Involuntary Case) filed Choshen's Chapter 11 Case.

15.     By order entered on August 7, 2023, Justice Cozzens severed Maidenbaum's judgment enforcement claim against Fischman from the claims against Choshen and Cardis. (See **Exhibit F** hereto.)   The severance was granted at the request of Maidenbaum, who wanted to preempt Fischman's incorrect, but inevitable, arguments that the contempt proceeding was automatically stayed by Choshen's filing of this case.

16.     On August 10, 2023, Fischman filed this Chapter 13 case, *pro se*, automatically staying the contempt proceeding and his deposition and document production.

17.     Prior to Justice Cozzens April 25, 2023 contempt order, Fischman and his wife, Nina (who Maidenbaum also sought to depose) engaged in numerous bad faith tactics—too numerous to recount fully—to avoid Maidenbaum's discovery efforts in the collection proceeding.   For example, on April 11, 2022, Fischman's wife, Nina, was ordered to appear in Justice Murphy's Courtroom for her deposition after an obvious impostor wearing a hijab-type garment appeared in her place during a prior attempt to take her deposition by Zoom.   However, Nina did not appear in Justice Murphy's Courtroom, as ordered.     Instead, a process server entered the Courtroom and served Justice Murphy with a purported *pro se* complaint by Nina alleging that, in issuing the rulings adverse to her, Justice Murphy conspired with Maidenbaum and Maidenbaum's lawyers in violation of 42 U.S.C. §1983.   The complaint was of course promptly dismissed.   *See* August 19, 2021 Minute Order by Hon. Gary Brown, U.S.D.J. (**Exhibit G** hereto).   However, Fischman and Nina accomplished what they wanted since the suit caused Justice Murphy to recuse himself, which has enabled Nina to continue to avoid her deposition.   *See* June 2, 2021 recusal order of Justice Murphy, dated June 2, 2021 (**Exhibit H** hereto).

### 3.  Fischman's List Of Related Cases Shows That It Is Fischman, Not Maidenbaum, Who Is A Vexations Litigant

18.     The 15 proceedings cited by Fischman at pages 4-5 of his Stay Enforcement Motion, demonstrate that it is Fischman who has engaged in "scorched earth tactics" to obstruct, and avoid discovery in, the supplementary (collection) proceeding and that Maidenbaum's response to these tactics has been measured.

090302\1\170410514.v4

•*Maidenbaum v. Fischman*, Appellate Division, 2nd Dept 2022-01670 (No. 2 on Fischman's list), was an appeal noticed, but abandoned, by *Fischman* from an adverse ruling on a discovery issue.   It does not show excessive zeal on Maidenbaum's part.

•*Maidenbaum v. Fischman*, Appellate Division, 2nd Dept, 2023-04167 (No. 3 on Fischman's list), is an appeal *by Fischman*—not Maidenbaum—from Justice Cozzens April 25, 2023 order holding him in contempt.   It does not show excessive zeal on Maidenbaum's part.

•*Fischman v. Stein*, Supreme Court Nassau County, Index No. 608120/2022 (No. 5 on Fischman's list) is Fischman's frivolous attempt, described above, to vacate the six year old judgments based on the confessions of judgment he signed.

•*Maidenbaum v. Fischman*, District Court of Jerusalem Case No.   23366-09-18 and *Maideenbaum v. Fischman*, District Court of Jerusalem case number 56273-04-19) (Nos. 7 and 8 on Fischman's list) are the *pre-petition* Israeli proceedings in which Maidenbaum was entirely successful, long before Fischman filed any bankruptcy cases.

•*Maidenbaum v. Fischman*, District Court of Jerusalem case number, 23-35636-cgm [*sic*]" (No. 7 on Fischman's list).   Fischman describes this case as an "enforcement proceeding against the Debtor to sell the Israeli home."   It is uncertain what Fischman is referring to since he is using the case number for the Choshen bankruptcy case.[7]

•*People by Letitia James v. Fischman,* Supreme Court, Nassau County [*sic*], Index No. 452353/2018 (No. 10 on Fischman's list) is a reference to the *Attorney General's* civil action.   It is actually venued in New York County.    Maidenbaum has nothing to do with this case.

•*American Express Bank, FSB. v. Seth Rosenblatt*, Supreme Court Nassau County, 604610/2016 [No. 13 on Fischman's list], was not filed by Maidenbaum and does not name Fischman as a party.

•*Maidenbaum v. Ultimax Digital, Inc.*, Supreme Court, New York County, 160618/2022 (No. 1 on Fischman's list) and *Maidenbaum v. Nina Fischman*, Nassau Co. Index No.   601538/2021 (No. 4 on Fischman's list) are proceedings under CPLR 5225 and CPL 5227 to recover property that that Cardis and/or Fischman fraudulently conveyed to transferees. Maidenbaum has acquiesced in the stay of both matters, and they both involve remedies that the CPLR and Debtor and Creditor Law expressly afford judgment creditors.

---

[7] In any event, the Israeli Bank, not Fischman, commenced and prosecuted the Israeli Foreclosure Proceeding.

090302\1\170410514.v4

•*Maidenbaum v. Fischman*, 18 Civ. 02911 (NGG) (RER) (No. 13 on Fischman's list) included a RICO action and several ancillary state law claims.   While the RICO claim was dismissed under Rule 12(b)(6), the pendent state law claims were dismissed not on the merits, but for lack of federal subject matter jurisdiction.   Maidenbaum thereafter pursued his remedies as a creditor in state court.

•   *Fischman v. Hon. Jerome C Murphy*, 21-cv-03111-E.D.N.Y. (GRB) (ARL) (No. 15 on Fischman's list).   That was Nina Fischman's unsuccessful suit againt Justice Murphy, described above.   It shows that Nina Fischman—not Maidenbaum—is an excessively zealous litigant.

•   *Willington Savings Bank v. Fischman*, Supreme Court, Nassau County, Index No.   608260/2017 (No. 6 on Fischman's list.)   This is a bank foreclosure of the Fischman's primary residence in Woodmere, New York which is in Nassau, rather than Sullivan County, as Fischman's motion inexplicably alleges.   Maidenbaum was added to the proceedings as a necessary party since he is a judgment creditor of Fischman.

•*Vacation Village 18 LLC v. Nina Fischman*, Supreme Court, Sullivan County, E2022-795 (No. 12 on Fischman's list).   This is an action to relating to Maidenbaum' s successful bid at a Sheriff's sale in June 2021 for the Debtor's portion of the premises at Vacation Village which was purchased in the name of a Maidenbaum entity, to wit, Vacation Village 18, LLC (VV18) by a deed recorded in September of 2021.   The Debtor's wife Nina tried to block the sale unsuccessfully and thereafter, when VV18 requested access to the premises and was rebuffed, VV18 commenced an action in the S. Ct, Sullivan County, granted by default, awarding VV18 possession of the premises and a money judgment against the Debtor's wife.   There is currently a contempt motion pending against the wife.   In this matter, Maidenbaum appropriately pursued his rights as a creditor under state law.

•*Maidenbaum v. Marcus,* 23 Civ. 03039 (KAM) (ARL) This is an action in which Maidenbaum alleges that Seymour Marcus aided and abetted Fischman's efforts to avoid Maidenbaum's collection efforts by paying Fischman's legal fees in exchange for Fischman transferring to Marcus property (interests in Ultimax Digital, Inc.)   that Maidenbaum otherwise should have been able to execute upon.   On August 23, 2023, Judge Katsumoto noted, following a telephone conference:

> The parties discussed Defendants' anticipated motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), which the Court advised Defendants is unlikely to succeed in light of the sufficiency of the factual allegations in the Amended Complaint. Moreover, the arguments set forth in Defendants' Pre-Motion Conference letter and articulated by defense counsel during the

> Pre-Motion Conference ignore the standard of review in a 12(b)(6) motion to dismiss. The parties also discussed Defendants' anticipated motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. However, the defense arguments are unlikely to succeed given Defendants' contacts and actions in New York.

Minute order, entered August 23, 2023 (**Exhibit I** hereto).

19. Fischman's own list shows that he and/or his wife have sued Justice Murphy, noticed and then abandoned appeals from discovery orders, attacked six-year old judgments that are based on documents that Fischman himself signed, and failed to pay other creditors. Fischman's list also shows that Maidenbaum has only pursued the remedies typically afforded judgment creditors—discovery from the judgment debtor and witnesses and fraudulent conveyance claims against Cardis' and Fischman's transferees, and Maidenbaum's claims have been upheld by the Courts.

20. For the reasons stated herein and in Maidenbaum's accompanying submissions, the Debtor's Stay Enforcement Motion should be denied, the Debtor's Motion To Convert should be denied, and the Debtor's Chapter 13 case should be dismissed with prejudice.

Dated:  New York, New York          ___/s/Eric W. Berry_____
       October 24, 2023          Eric W. Berry

090302\1\170410514.v4

**EXHIBIT A**

# Southern District of New York
# Claims Register

## 23-35660-cgm Aaron Fischman

**Judge:** Cecelia G. Morris    **Chapter:** 13
**Office:** Poughkeepsie    **Last Date to file claims:** 10/19/2023
**Trustee:** Thomas C. Frost    **Last Date to file (Govt):**

| | | |
|---|---|---|
| *Creditor:* (8216435) New York State Department of Taxation & Finance Bankruptcy Section P O Box 5300 Albany New York 12205-0300 | **Claim No: 1** *Original Filed Date:* 08/14/2023 *Original Entered Date:* 08/14/2023 | *Status:* *Filed by:* CR *Entered by:* David M Pugliese *Modified:* |

  Amount claimed: $301126.86
  Secured claimed: $42978.88
  Priority claimed: $224845.23

*History:*

Details    1-1    08/14/2023 Claim #1 filed by New York State Department of Taxation & Finance, Amount claimed: $301126.86 (Pugliese, David)

*Description:* (1-1) pre petition proof of claim
*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (8219796) Educational Credit Management Corporation P.O. Box 16408 St. Paul, MN 55116-0408 | **Claim No: 2** *Original Filed Date:* 08/28/2023 *Original Entered Date:* 08/28/2023 | *Status:* *Filed by:* CR *Entered by:* Admin. *Modified:* |

  Amount claimed: $3084.28

*History:*

Details    2-1    08/28/2023 Claim #2 filed by Educational Credit Management Corporation, Amount claimed: $3084.28 (Admin.)

*Description:*
*Remarks:* (2-1) Account Number (last 4 digits):3873

| | | |
|---|---|---|
| *Creditor:* (8227560) Kasowitz Benson Torres LLP 1633 Broadway United States New York, NY 10019 | **Claim No: 3** *Original Filed Date:* 09/29/2023 *Original Entered Date:* 09/29/2023 | *Status:* *Filed by:* CR *Entered by:* Admin. *Modified:* |

  Amount claimed: $557759.79

*History:*

Details    3-1    09/29/2023 Claim #3 filed by Kasowitz Benson Torres LLP, Amount claimed: $557759.79 (Admin.)

*Description:*
*Remarks:* (3-1) Account Number (last 4 digits):3385

*Creditor:*      (8230631)          **Claim No: 4**              *Status:*
Rushmore Servicing                  *Original Filed*             *Filed by:* CR
P.O. Box 619096                     *Date:* 10/12/2023           *Entered by:* Kathy McCullough McCullough
Dallas, TX 75261                    *Original Entered*           Day
                                    *Date:* 10/12/2023           *Modified:*

  Amount  claimed: $312790.88

  Secured claimed: $312790.88

*History:*

Details      4-1   10/12/2023 Claim #4 filed by Rushmore Servicing, Amount claimed: $312790.88 (McCullough Day,
                   Kathy)

*Description:* (4-1) Note/Mortgage

*Remarks:*


*Creditor:*      (8232003)          **Claim No: 5**              *Status:*
Shalom Maidenbaum                   *Original Filed*             *Filed by:* CR
c/o Berry Law PLLC                  *Date:* 10/18/2023           *Entered by:* Michael Z. Brownstein
745 Fifth Avenue, 5th Floor         *Original Entered*           *Modified:*
New York, New York 10151            *Date:* 10/18/2023
Attn: Eric W. Berry, Esq.

  Amount claimed: $5562113.20

*History:*

Details      5-1   10/18/2023 Claim #5 filed by Shalom Maidenbaum, Amount claimed: $5562113.20 (Brownstein, Michael)

*Description:*

*Remarks:*


*Creditor:*      (8232240)   History   **Claim No: 6**           *Status:*
Shalom Maidenbaum                   *Original Filed*             *Filed by:* CR
c/o Berry Law PLLC                  *Date:* 10/19/2023           *Entered by:* Michael Z. Brownstein
attn: Eric W. Berry, Esq.           *Original Entered*           *Modified:*
745 Fifth Ave, 5th Floor            *Date:* 10/19/2023
New York, NY 10151

  Amount claimed: $900000.00

*History:*

Details      6-1   10/19/2023 Claim #6 filed by Shalom Maidenbaum, Amount claimed: $900000.00 (Brownstein, Michael)

*Description:*

*Remarks:*


# Claims Register Summary

**Case Name:** Aaron Fischman
**Case Number:** 23-35660-cgm
**Chapter:** 13
**Date Filed:** 08/10/2023
**Total Number Of Claims:** 6

| | |
|---|---|
| **Total Amount Claimed*** | $7636875.01 |
| **Total Amount Allowed*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

|  | Claimed | Allowed |
|---|---|---|
| **Secured** | $355769.76 |  |
| **Priority** | $224845.23 |  |
| **Administrative** |  |  |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/24/2023 13:44:49 | | | |
| **PACER Login:** | TK000132 | **Client Code:** | 90302-1 |
| **Description:** | Claims Register | **Search Criteria:** | 23-35660-cgm Filed or Entered From: 1/1/2023 Filed or Entered To: 10/24/2023 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**EXHIBIT B**

**Fill in this information to identify the case:**

Debtor 1          Aaron Fischman

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Southern District of New York

Case number    23-35660

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. | **Who is the current creditor?** | Shalom Maidenbaum |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| | | |
| --- | --- | --- |
| 2. | **Has this claim been acquired from someone else?** | ☑ No |
| | | ☐ Yes.  From whom? |

| | | | |
| --- | --- | --- | --- |
| 3. | **Where should notices and payments to the creditor be sent?** | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Eric W. Berry, Esq. / Berry Law PLLC | |
| | | Name | Name |
| | | 745 Fifth Avenue, 5th Floor | |
| | | Number      Street | Number      Street |
| | | New York          NY          10151 | |
| | | City          State          ZIP Code | City          State          ZIP Code |
| | | Contact phone  (212) 355-0777 | Contact phone |
| | | Contact email  berrylawpllc@gmail.com | Contact email |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | | __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |

| | | |
| --- | --- | --- |
| 4. | **Does this claim amend one already filed?** | ☑ No |
| | | ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____ MM / DD / YYYY |

| | | |
| --- | --- | --- |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No |
| | | ☐ Yes.  Who made the earlier filing? |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**   $_____ 5,562,113.20 . **Does this amount include interest or other charges?**

See attached Rider

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached Rider

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe: _____

**Basis for perfection:**    See attached Rider

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410                            **Proof of Claim**                                   page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _10__18____2023_____
                  MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Eric | W. | Berry |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | _____ |
|---|---|

| Company | Berry Law PLLC |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 745 Fifth Avenue, 5th Floor |
|---|---|
| | Number         Street |
| | New York                              NY         10151 |
| | City                              State       ZIP Code |

| Contact phone | (212) 355-0777 | Email | berrylawpllc@gmail.com |
|---|---|---|---|

In re Aaron Fischman
Case No. 23-35660 (CGM)

## RIDER TO PROOF OF CLAIM OF SHALOM MAIDENBAUM

Shalom Maidenbaum ("<u>Maidenbaum</u>") attaches this Rider to his Proof of Claim against Aaron Fischman (the "<u>Debtor</u>" or "<u>Fischman</u>") in this Chapter 13 case, Case No. 23-35660 (CGM).

## A.  <u>Basis For Claim</u>

1.    Maidenbaum submits this Proof of Claim against the Debtor asserting a claim in the total amount of **$5,562,113.20 plus interest through the August 10, 2023 Petition Date on Judgment No. 5 below (the "Claim")**.  This Claim is established by five Judgments against the Debtor, as follows:

<u>Judgment No. 1</u>: a Judgment By Confession against Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), Inc., Choshen Israel LLC, and the Debtor, jointly and severally, recorded on June 21, 2016 in *Maidenbaum v. Cardis Enterprises International, B.V., et. al.*, Index No. 604610/2016 (S. Ct. Nassau Cty) in the amount of $2,576,442.78 (see **Exhibit 1**).  The total amount owed by the Debtor on this Judgment as of the 8/10/23 Petition Date, including post judgment interest through the 8/10/23 Petition Date, is as follows:

| | |
|---|---|
| Amount of Judgment | $2,576,442.78 |
| Post Judgment interest at 9% per annum statutory rate through the 8/10/23 Petition Date | $1,654,923.45 |
| Total amount owed by Debtor on Judgment through the 8/10/23 Petition Date | **$4,231,366.23** |

<u>Judgment No. 2</u>: a Judgment By Confession against Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), Inc., Choshen Israel LLC, and the Debtor, jointly and severally, recorded on June 28, 2016 in *Maidenbaum v. Cardis Enterprises International, B.V., et. al.*, Index No. 604766/2016 (S. Ct. Nassau Cty) in the amount of $355,542.98 (see **Exhibit 2**).  The total amount owed by the Debtor on this Judgment as of the 8/10/23 Petition Date, including post judgment interest through the 8/10/23 Petition Date, is as follows:

| | |
|---|---|
| Amount of Judgment | $355,542.98 |
| Post Judgment interest at 9% per annum statutory rate through the 8/10/23 Petition | $227,763.22 |

| Date | |
|---|---|
| Total amount owed by Debtor on Judgment through the 8/10/23 Petition Date | **$583,306.20** |

**Judgment No. 3**: a Judgment By Confession against the Debtor recorded on June 28, 2016 in *Maidenbaum v. Fischman*, Index No. 604768/2016 (S. Ct. Nassau Cty) in the amount of $57,054.85 (see **Exhibit 3**). The total amount owed by the Debtor on this Judgment as of the 8/10/23 Petition Date, including post judgment interest through the 8/10/23 Petition Date, is as follows:

| Amount of Judgment | $57,054.85 |
|---|---|
| Post Judgment interest at 9% per annum statutory rate through the 8/10/23 Petition Date | $36,549.66 |
| Total amount owed by Debtor on Judgment through the 8/10/23 Petition Date | **$93,604.51** |

**Judgment No. 4**: a *Judgment* By Confession against the Debtor recorded on June 28, 2016 in *Maidenbaum v. Fischman*, Index No. 604767/2016 (S. Ct. Nassau Cty) in the amount of $285,500.17 (see **Exhibit 4**). The total amount owed by the Debtor on this Judgment as of the 8/10/23 Petition Date, including post judgment interest through the 8/10/23 Petition Date, is as follows:

| Amount of Judgment | $285,500.17 |
|---|---|
| Post Judgment interest at 9% per annum statutory rate through the 8/10/23 Petition Date | $182,892.34 |
| Total amount owed by Debtor on Judgment through the 8/10/23 Petition Date | **$468,392.51** |

**Judgment No. 5**: a Judgment dated and entered in the Jerusalem District Court on January 11, 2023 which awarded Maidenbaum (a) ILS 75,000 for attorneys' fees as of September 2, 2022 (On that date, based upon the then exchange rate this sum was equal to $22,234.70 U.S. Dollars), and (b) legal disbursements in the amount of ILS 562,409.5 as of December 1, 2022 (On that date, based upon the exchange rate, this sum was equal to $163,204.00 U.S. Dollars). Thus, the total amount of this Judgment as of the dates set forth in the Judgment is **$185,443.70**. See **Exhibit 5**.

2.     The total amount of Maidenbaum's Claim against the Debtor, as of the Petition Date, as established by Maidenbaum's five Judgments against the Debtor, is $5,562,113.20 plus interest on Judgment No. 5 through the 8/10/23 Petition Date.

3.     Maidenbaum's Claim is secured to the extent allowed by applicable New York State law, Federal law and/or Israeli law.  This is without prejudice to Maidenbaum's assertions that any obligation of the Debtor to Maidenbaum continues to accrue interest and/or other charges.

## B.  Nondischargeability of the Claim

4.     Maidenbaum contends the Claim is nondischargeable under Bankruptcy Code section 523(a), and intends to file a complaint objecting to the dischargeability of the Claim pursuant to sections 523(a)(2), (a)(4) and (a)(6) based on, *inter alia*, the following facts:

5.     Maidenbaum invested nearly $2Million in the Cardis technology promoted by Fischman.  In addition to the investments, Maidenbaum also loaned money to Cardis and Fischman all of which was earmarked for use in the Cardis technology.

6.     Only later did Maidenbaum learn, from one of Fischman's former employees, Seth Rosenblatt, that Fischman conveyed (as he handed Mr. Rosenblatt checks from Mr. Maidenbaum to be deposited) that "Shalom [Maidenbaum] must be crazy if he thinks I'm ever going to pay any of this money back."

7.     In her Complaint and Amended Complaint against Fischman, the New York Attorney General alleged that all of the monies raised by Fischman for Cardis, was part of an elaborate fraudulent scheme.

8.     As stated in the Attorney General's Amended complaint:

86.  While Cardis raised tens of millions of dollars based on its fraudulent misrepresentations, Defendant Fischman treated the Company as his own personal piggy bank.

87.  First, Defendant Fischman, with the assistance of Defendant Katz, who controlled the principal Cardis bank account, siphoned off huge sums to enrich Defendant Fischman personally.

88.  Cardis and Defendant Fischman represented, and investors understood, that investor funds were needed, and were to be utilized, for the development of Cardis' technology and third-party relationships.

89.  They failed to disclose, however, that Defendant Fischman was receiving huge sums to manage the Company, receiving at least $3 million through his closely-controlled company, Defendant Choshen, from January 2011 to present.

90. There is no written agreement between Choshen and Cardis that would justify these payments, and the payments are irregular in amount, frequency, and timing. Upon information and belief, Defendant Fischman simply disbursed moneys to himself as necessary to support his own lifestyle.

9. On December 15, 2022, Fischman plead guilty to two felony counts of grand larceny related to his activities with respect to raising funds for the Cardis technology and stock. He admitted that between on or about January 24, 2013 and December 27, 2017, in the County of Nassau, State of New York and elsewhere, he intentionally engaged in a scheme constituting a systematic ongoing course of conduct with the intent to obtain property from ten or more persons by false pretenses, representations or promises. This covers the time when the transactions involving the promissory notes and confessions of judgment between Maidenbaum and Fischman occurred.

10. Copies of the New York Attorney General's indictment of Fischman, Plea Transcript, and Amended Complaint are annexed hereto as **Exhibits 6, 7, and 8** respectively.

C. **Notices**

11. Any notices or communications regarding this Proof of Claim should be sent to the addresses set forth below:

> Shalom Maidenbaum
> 132 Spruce St
> Cedarhurst, New York 11516
>
> And
>
> Eric W. Berry, Esq.
> Berry Law PLLC
> 745 Fifth Avenue, 5th Floor
> New York, New York 10151
> Phone: (212) 355-0777
> berrylawpllc@gmail.com

D. **Reservation of Rights**

12. Maidenbaum reserves the right to (i) amend, update and/or supplement this Proof of Claim at any time and in any respect, including with respect to any right of indemnity, (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents and/or (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507.

13. Maidenbaum reserves his right to seek the dismissal of any bankruptcy cases of the Debtor and to assert any other rights and remedies available to Maidenbaum under the provisions of the Bankruptcy Code and Bankruptcy Rules or otherwise as provided by applicable

law, including to seek a declaration by the Bankruptcy Court that any debt owed by the Debtor to Maidenbaum is nondischargeable.

14.    This Proof of Claim is filed without prejudice to the right of Maidenbaum, or his successors and assigns to file additional proofs of claim with respect to any other liability or indebtedness of the Debtor.

15.    The filing of this Proof of Claim is not: (a) a waiver or release of Maidenbaum's rights against any person, entity or property, (b) a consent by Maidenbaum to the jurisdiction of this Court with respect to the subject matter of this claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Maidenbaum, (c) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of this claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Maidenbaum, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Maidenbaum, or (d) an election of remedy.  All rights, remedies and claims of Maidenbaum are specifically reserved and preserved and nothing herein shall constitute a waiver of any of the aforesaid.

16.    Maidenbaum preserves all of his procedural and substantive defenses and rights with respect to any claim that may be asserted against Maidenbaum by the Debtor and his estate, the Chapter 13 trustee or any successor Chapter 13 trustee appointed in the Debtor's case, any non-debtor entity, any other party in interest in the bankruptcy case, or any other person or entity whatsoever.

5

**EXHIBIT 1**



**Maureen OConnell**
**County Clerk**
**Mineola, NY 11501**

Ref ID#: EC 16 604610       Instrument Number: 2016- 00145264
As

## JE1 - ELECT JUDG SUPREME COURT MONEY

Recorded On: June 21, 2016
Parties: MAIDENBAUM SHALOM

    TO CARDIS ENTERPRISES INTERNATIONAL NV            Num Of Pages: 3
Recorded By: COURT                              Comment:

---

### ** Examined and Charged as Follows: **

JE1 - ELECT JUDG SUPREME CC      0.00

     Recording Charge:     0.00

---

### ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For: Nassau County, NY

**File Information:**                  **Record and Return To:**

    Document Number: 2016- 00145264
    Receipt Number: 302744
    Recorded Date/Time: June 21, 2016 04:15:05P
    Book-Vol/Pg: Bk-K Vl-76 Pg-1
    Cashier / Station: 0 MEM / NCCL-JCVKBP2



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

----------------------------------------------------------------------------x

SHALOM S. MAIDENBAUM,

                              Plaintiff,

           -against-

CARDIS ENTERPRISES INTERNATIONAL, B.V.,
CARDIS ENTERPRISES INTERNATIONAL, N.V.,
CARDIS ENTERPRISES INTERNATIONAL (USA), INC.,
CHOSHEN ISRAEL LLC and AARON FISCHMAN,

                             Defendants.

----------------------------------------------------------------------------x

Index No. 604610/16

**JUDGMENT
BY CONFESSION**

      **ON READING AND FILING,** the annexed Affidavit of Confession of Judgment made by

Aaron Fischman, as CEO and Director of defendants Cardis Enterprises International, B.V. and

Cardis Enterprises International, N.V., and as President and CEO of defendant Cardis Enterprises

International (USA), Inc., and as Managing Member of defendant Choshen Israel LLC, and as

individual guarantor of a certain 2 Million Dollar Note dated February 23, 2015, and on motion of

Jonathan A. Stein, P.C., attorney for the plaintiff, it is hereby

132 Spruce St  Cedarhurst  NY 11516

      ~~ORDERED~~, ADJUDGED ~~AND DECREED~~, that Shalom S. Maidenbaum, the above-

named plaintiff, with offices c/o Jonathan A. Stein, P.C., 132 Spruce Street, Cedarhurst, New York

11516-1915, recover from Cardis Enterprises International, B V., Cardis Enterprises International,

N.V., Cardis Enterprises International (USA), Inc. and Choshen Israel LLC the above named

defendants, having offices at 445 Central Avenue, Cedarhurst, New York 11516, and Aaron

Fischman, resding at 703 Carlyle Avenue, Woodmere, New York 11598, the above named individual

defendant, jointly and severally, the sum of Two Million Dollars ($2,000,000.00), with interest at

from February 23, 2015 through April 30, 2015 at a rate of eight percent (8%) for total accrued

interest for said period at $ _29,777.48_ , and thereafter with interest at a default rate

of twenty-four percent (24%) up to the date of the entry of judgment for a total accrued interest of

$ _546,665.30_ , without costs and disbursements, amounting in all to the sum of

$ _2,576,442.78_ , and that the plaintiff have execution therefor.

JUDGMENT signed this _21st_ day of June, 2016.

_Maureen O'Connell_
CLERK

J:\Private\Jon\Documents\Cardis\Fischman Loan\Judgment By Confession.wpd    2

FILED: NASSAU COUNTY CLERK 06/21/2016 10:54 AM    INDEX NO. 604610/2016

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/21/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------------x
SHALOM S. MAIDENBAUM,                                    Index No.

                                        Plaintiff,

                  -against-                              **AFFIDAVIT OF
                                                        CONFESSION OF
                                                        <u>JUDGMENT</u>**

CARDIS ENTERPRISES INTERNATIONAL, B.V.,
CARDIS ENTERPRISES INTERNATIONAL, N.V.,
CARDIS ENTERPRISES INTERNATIONAL (USA), INC.,
CHOSHEN ISRAEL LLC and AARON FISCHMAN,

                                        Defendants.
-------------------------------------------------------------------------x

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

        AARON FISCHMAN, being duly sworn, depose and say:

        1.      I am the individual named defendant. I am also the Chief Executive Officer ("CEO")

and Director of defendants Cardis Enterprises International, B.V. ("Cardis BV") and Cardis

Enterprises International, N.V. ("Cardis NV"). I am also the President and CEO of defendant Cardis

Enterprises International (USA), Inc. ("Cardis USA") and I am the Managing Member of defendant

Choshen Israel LLC ("Choshen"). I submit this confession of judgment for the purpose of entry of

judgment against Cardis BV, Cardis NV, Cardis USA, Choshen and myself. Cardis BV, Cardis NV,

Cardis USA and Choshen have offices at 445 Central Avenue, Cedarhurst, New York 11516, located

in the County of Nassau, State of New York. I personally reside at 703 Carlyle Avenue, Woodmere,

New York 11598, which is located in the County of Nassau, State of New York.

        2.      This confession of judgment is for a debt justly due to the plaintiff Shalom S.

Maidenbaum, arising from a promissory note (the "Note") executed by Cardis BV, Cardis NV,

Cardis USA and Choshen on February 23, 2015 and personally guaranteed by me on the same date, with interest at an annual percentage rate of eight percent (8%).

3.      The Note was due and payable on April 30, 2015, and upon default in payment, began to accrue interest at the rate of twenty-four percent (24%) or the maximum amount permitted by law, whichever sum is less.

4.      Currently, Cardis BV, Cardis NV, Cardis USA and Choshen are in default under their obligations under the note and I am personally responsible for their default under the terms of the guaranty.

5.      Neither Choshen, nor Cardis nor I has any defense to the payment of the obligations in the Notes. Accordingly, we hereby confess judgment, jointly and severally, pursuant to CPLR § 3218, in favor of Shalom S. Maidenbaum in the sum of Two Million Dollars ($2,000,000.00) with interest at the rate of twelve percent (8%) from February 23, 2015 to and including April 30, 2015, and thereafter, at the rate of twenty-four percent (24%), until such time as judgment is entered, and thereafter, at the statutory rate of nine percent (9%) until such time as the entire obligation is paid in full.

6.      On behalf of myself, Choshen and Cardis, I hereby authorize plaintiff, Shalom S. Maidenbaum, his attorneys, agents, representatives, and assigns to enter judgment therefor against us in the Supreme Court of the State of New York, County of Nassau, for the total amount due.

7.      We admit that we are unconditionally, and jointly and severally, liable to plaintiff Shalom S. Maidenbaum for the total amount set forth herein, and that we do not have any defense, offset or claim against plaintiff.

2

8.    We also admit that we have consulted with and shown this confession of judgment to an attorney and have no defense to the debt acknowledged herein.

9.    This Confession of Judgment is not prohibited by CPLR § 3201.

10.    This Confession of Judgment is not for the purpose of securing Shalom S. Maidenbaum against a contingent liability.

**AARON FISCHMAN**
**Individually, and as Managing Member**
**of Choshen Israel, LLC, and as**
**CEO and Director of**
**Cardis Enterpirses International, B.V. and**
**Cardis Enterprises Inernational, N.V.**
**and as President and CEO of**
**Cardis Enterpirses International (USA) Inc.**

Sworn to before me this
4th day of May 2015

Notary Public

JONATHAN A. STEIN
Notary Public, State of New York
No. 02ST4755192
Qualified in Nassau County
Commission Expires February 28, 20 _16_

J:\Private\Jon\Documents\Cardis\Fischman Loan\Confession of Judgment 2Mil.wpd        3

**EXHIBIT 2**



**Maureen OConnell**
**County Clerk**
**Mineola, NY 11501**

---

Ref ID#: EC 16 604766            Instrument Number: 2016- 00150026
                                            As
                **JE1 - ELECT JUDG SUPREME COURT MONEY**

Recorded On:  June 28, 2016

Parties:  MAIDENBAUM SHALOM S

   TO CARDIS ENTERPISESES INTERNATIONAL BV                         Num Of Pages: 3

Recorded By:  COURT                                                Comment:

---

            ** Examined and Charged as Follows: **

JE1 - ELECT JUDG SUPREME CC        0.00

   Recording Charge:        0.00

---

            ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Nassau County, NY

**File Information:**                          **Record and Return To:**

   Document Number:  2016- 00150026
   Receipt Number:  308935
Recorded Date/Time:  June 28, 2016 09:54:41A
   Book-Vol/Pg:  Bk-K VI-76 Pg-182
   Cashier / Station:  0 MEM / NCCL-JCVKBP2

---



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------------x

SHALOM S. MAIDENBAUM,

                                 Plaintiff,

             -against-

CARDIS ENTERPRISES INTERNATIONAL, B.V.,
CARDIS ENTERPRISES INTERNATIONAL, N.V.,
CARDIS ENTERPRISES INTERNATIONAL (USA), INC.,
CHOSHEN ISRAEL LLC and AARON FISCHMAN,

                               Defendants.
-------------------------------------------------------------------------x

Index No. 604766/16

**JUDGMENT
BY CONFESSION**

**ON READING AND FILING,** the annexed Affidavit of Confession of Judgment made by Aaron Fischman, as CEO and Director of defendants Cardis Enterprises International, B.V. and Cardis Enterprises International, N.V., and as President and CEO of defendant Cardis Enterprises International (USA), Inc., and as Managing Member of defendant Choshen Israel LLC, and as individual guarantor of a certain $275,000.00 Note dated February 23, 2015, and on motion of Jonathan A. Stein, P.C., having an office at 132 Spruce Street, Cedarhurst, New York 11516, attorney for the plaintiff, it is hereby

**ADJUDGED AND DECREED**, that Shalom S. Maidenbaum, the above-named plaintiff, with offices c/o Jonathan A. Stein, P.C., 132 Spruce Street, Cedarhurst, New York  11516-1915, recover from Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), Inc. and Choshen Israel LLC the above named defendants, having offices at 445 Central Avenue, Cedarhurst, New York 11516, and Aaron Fischman, resding at 703 Carlyle Avenue, Woodmere, New York 11598, the above named individual defendant, jointly and severally, the sum of Two Hundred Seventy-Five Thousand Dollars ($275,000.00), with interest at

from February 23, 2015 through April 30, 2015 at a rate of eight percent (8%) for total accrued interest for said period at $ 4,094.37 , and thereafter with interest at a default rate of twenty-four percent (24%) up to the date of the entry of judgment for a total accrued interest of $ 76,448.61 , without costs and disbursements, amounting in all to the sum of $ 355,542.98 , and that the plaintiff have execution therefor.

    **JUDGMENT** signed this 28th day of June, 2016.

Maureen O'Connell

           CLERK

J:\Private\Jon\Documents\Cardis\Fischman Loan\Judgment By Confession 275K.wpd

FILED: NASSAU COUNTY CLERK 06/23/2016 12:59 PM    INDEX NO. 604766/2016
NYSCEF DOC. NO. 1                                                RECEIVED NYSCEF: 06/23/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------x

SHALOM S. MAIDENBAUM,                                    Index No.

                                        Plaintiff,

                                                        **AFFIDAVIT OF**
            -against-                                    **CONFESSION OF**
                                                        **JUDGMENT**

CARDIS ENTERPRISES INTERNATIONAL, B.V.,
CARDIS ENTERPRISES INTERNATIONAL, N.V.,
CARDIS ENTERPRISES INTERNATIONAL (USA), INC.,
CHOSHEN ISRAEL LLC and AARON FISCHMAN,

                                        Defendants.
------------------------------------------------------------------x

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NASSAU         )

        AARON FISCHMAN, being duly sworn, depose and say:

        1.      I am the individual named defendant. I am also the Chief Executive Officer ("CEO")

and Director of defendants Cardis Enterprises International, B.V. ("Cardis BV") and Cardis

Enterprises International, N.V. ("Cardis NV"). I am also the President and CEO of defendant Cardis

Enterprises International (USA), Inc. ("Cardis USA") and I am the Managing Member of defendant

Choshen Israel LLC ("Choshen").  I submit this confession of judgment for the purpose of entry of

judgment against Cardis BV, Cardis NV, Cardis USA, Choshen and myself.  Cardis BV, Cardis NV,

Cardis USA and Choshen have offices at 445 Central Avenue, Cedarhurst, New York 11516, located

in the County of Nassau, State of New York. I personally reside at 703 Carlyle Avenue, Woodmere,

New York 11598, which is located in the County of Nassau, State of New York.

        2.      This confession of judgment is for a debt justly due to the plaintiff Shalom S.

Maidenbaum, arising from a promissory note (the "Note") executed by Cardis BV, Cardis NV,

Cardis USA and Choshen on February 23, 2015 and personally guaranteed by me on the same date, with interest at an annual percentage rate of eight percent (8%).

3.     The Note was due and payable on April 30, 2015, and upon default in payment, began to accrue interest at the rate of twenty-four percent (24%) or the maximum amount permitted by law, whichever sum is less.

4.     Currently, Cardis BV, Cardis NV, Cardis USA and Choshen are in default under their obligations under the note and I am personally responsible for their default under the terms of the guaranty.

5.     Neither Choshen, nor Cardis nor I has any defense to the payment of the obligations in the Notes. Accordingly, we hereby confess judgment, jointly and severally, pursuant to CPLR § 3218, in favor of Shalom S. Maidenbaum in the sum of Two Hundred Seventy-Five Thousand Dollars ($275,000.00) with interest at the rate of twelve percent (8%) from February 23, 2015 to and including April 30, 2015, and thereafter, at the rate of twenty-four percent (24%), until such time as judgment is entered, and thereafter, at the statutory rate of nine percent (9%) until such time as the entire obligation is paid in full.

6.     On behalf of myself, Choshen and Cardis, I hereby authorize plaintiff, Shalom S. Maidenbaum, his attorneys, agents, representatives, and assigns to enter judgment therefor against us in the Supreme Court of the State of New York, County of Nassau, for the total amount due.

7.     We admit that we are unconditionally, and jointly and severally, liable to plaintiff Shalom S. Maidenbaum for the total amount set forth herein, and that we do not have any defense, offset or claim against plaintiff.

2

8.    We also admit that we have consulted with and shown this confession of judgment to an attorney and have no defense to the debt acknowledged herein.

9.    This Confession of Judgment is not prohibited by CPLR § 3201.

10.    This Confession of Judgment is not for the purpose of securing Shalom S. Maidenbaum against a contingent liability.

_____

**AARON FISCHMAN**
**Individually, and as Managing Member**
**of Choshen Israel, LLC, and as**
**CEO and Director of**
**Cardis Enterpirses International, B.V. and**
**Cardis Enterpises Inernational, N.V.**
**and as President and CEO of**
**Cardis Enterpirses International (USA) Inc.**

Sworn to before me this
4th day of May 2015

_____
Notary Public

JONATHAN A. STEIN
Notary Public, State of New York
No. 02ST4755192
Qualified in Nassau County
Commission Expires February 28, 20 18

**EXHIBIT 3**



**Maureen OConnell**
**County Clerk**
**Mineola, NY 11501**

---

Ref ID#: EC 16 604768                Instrument Number: 2016- 00150024
                                                    As
                        **JE1 - ELECT JUDG SUPREME COURT MONEY**

Recorded On:  June 28, 2016

Parties:  MAIDENBAUM SHALOM S

    TO  FISCHMAN AARON                                    Num Of Pages: 2

Recorded By:  COURT                                        Comment:

---

**** Examined and Charged as Follows: ****

JE1 - ELECT JUDG SUPREME CC          0.00

    Recording Charge:          0.00

---

**** THIS PAGE IS PART OF THE INSTRUMENT ****

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Nassau County, NY

**File Information:**                        **Record and Return To:**

    Document Number:  2016- 00150024
    Receipt Number:  308935
    Recorded Date/Time:  June 28, 2016 09:54:41A
    Book-Vol/Pg:  Bk-K Vl-76 Pg-178
    Cashier / Station:  0 MEM / NCCL-JCVKBP2

---



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

1 of 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------x

SHALOM S. MAIDENBAUM,

                           Plaintiff,

          -against-

AARON FISCHMAN,

                          Defendant.
-------------------------------------------------------------------x

Index No. 604768/16

**JUDGMENT
BY CONFESSION**

    **ON READING AND FILING,** the annexed Affidavit of Confession of Judgment made by Aaron Fischman regarding his obligations under a certain promissory note ("Note") dated June 19, 2015, and on motion of Jonathan A. Stein, P.C., having an office at 132 Spruce Street, Cedarhurst, New York 11516, attorney for the plaintiff, it is hereby

    **ADJUDGED,** that Shalom S. Maidenbaum, the above-named plaintiff, with offices c/o Jonathan A. Stein, P.C., 132 Spruce Street, Cedarhurst, New York 11516-1915, recover from Aaron Fischman, residing at 703 Carlyle Avenue, Woodmere, New York 11598, the above named defendant, the sum of Fifty Thousand Dollars ($50,000.00), with interest at from June 19, 2015 through September 30, 2015 at a rate of eight percent (8%) for total accrued interest for said period at $ 1,122.11, and thereafter with interest at a default rate of sixteen percent (16%) or the maximum rate allowable by law, whichever is less, up to the date of the entry of judgment for a total accrued interest of $ 5932.74, without costs and disbursements, amounting in all to the sum of $ 57,054.85, and that the plaintiff have execution therefor.

    **JUDGMENT** signed this 28TH day of June, 2016.

                                     Maureen O Connell
                                       CLERK

23-35660-cgm   Claim 5   Filed 10/18/23   Pg 26 of 139

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
----------------------------------------------------------------x

SHALOM S. MAIDENBAUM,                                    Index No.

                                      Plaintiff,

                                                        **AFFIDAVIT OF**
        -against-                                       **CONFESSION OF**
                                                        **JUDGMENT**

AARON FISCHMAN,

                                      Defendant.
----------------------------------------------------------------x

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NASSAU       )

        AARON FISCHMAN, being duly sworn, depose and say:

        1.      I am the individual named defendant. I personally reside at 703 Carlyle Avenue,

Woodmere, New York 11598, which is located in the County of Nassau, State of New York.

        2.      This confession of judgment is for a debt justly due to the plaintiff Shalom S.

Maidenbaum, arising from a promissory note (the "Note") executed by me on May 4, 2015, with

interest at an annual percentage rate of eight percent (8%).

        3.      The Note was due and payable on July 31, 2015, and upon default in payment, began

to accrue interest at the rate of sixteen percent (16%) or the maximum amount permitted by law,

whichever sum is less.

        4.      Currently, I am in default under my obligations under the Note.

        5.      I have no defense to the payment of the obligations in the Note. Accordingly, I hereby

confess judgment, pursuant to CPLR § 3218, in favor of Shalom S. Maidenbaum in the sum of

Fifty Thousand Dollars ($50,000.00) with interest at the rate of eight percent (8%) from June 19,

2015 to and including September 30, 2015, and thereafter, at the rate of sixteen percent

(16%), until such time as judgment is entered, and thereafter, at the statutory rate of nine percent (9%) until such time as the entire obligation is paid in full.

6.      On behalf of myself, I hereby authorize plaintiff, Shalom S. Maidenbaum, his attorneys, agents, representatives, and assigns to enter judgment therefor against us in the Supreme Court of the State of New York, County of Nassau, for the total amount due.

7.      I admit that we are unconditionally, and jointly and severally, liable to plaintiff Shalom S. Maidenbaum for the total amount set forth herein, and that we do not have any defense, offset or claim against plaintiff.

8.      I also admit that I have consulted with and shown this confession of judgment to an attorney and have no defense to the debt acknowledged herein.

9.      This Confession of Judgment is not prohibited by CPLR § 3201.

10.     This Confession of Judgment is not for the purpose of securing Shalom S. Maidenbaum against a contingent liability.

**AARON FISCHMAN**

Sworn to before me this
2 4 th day of December, 2015

Notary Public

JONATHAN A. STEIN
Notary Public, State of New York
No. 02ST4755192
Qualified in Nassau County
Commission Expires February 28, 20 1 8

**EXHIBIT 4**



**Maureen OConnell**
**County Clerk**
**Mineola, NY 11501**

Ref ID#: EC 16 604767

Instrument Number: 2016- 00150025
As
**JE1 - ELECT JUDG SUPREME COURT MONEY**

Recorded On:  June 28, 2016

Parties:  MAIDENBAUM SHALOM S

    TO  FISCHMAN AARON

Num Of Pages: 2

Recorded By:  COURT

Comment:

---

## ** Examined and Charged as Follows: **

JE1 - ELECT JUDG SUPREME CC      0.00

    Recording Charge:      0.00

---

## ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Nassau County, NY

**File Information:**

    Document Number:  2016- 00150025

    Receipt Number:  308935

    Recorded Date/Time:  June 28, 2016 09:54:41A

    Book-Vol/Pg:  Bk-K Vl-76 Pg-180

    Cashier / Station:  0 MEM  /  NCCL-JCVKBP2

**Record and Return To:**



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------x

SHALOM S. MAIDENBAUM,

                              Plaintiff,

          -against-

AARON FISCHMAN,

                              Defendant.
------------------------------------------------------------------------x

Index No. 604767/16

**JUDGMENT
BY CONFESSION**

      **ON READING AND FILING,** the annexed Affidavit of Confession of Judgment made by

Aaron Fischman regarding his obligations under a certain promissory note ("Note") dated May 4,

2015, and on motion of Jonathan A. Stein, P.C., having an office at 132 Spruce Street, Cedarhurst,

New York 11516, attorney for the plaintiff, it is hereby

      **ADJUDGED,** that Shalom S. Maidenbaum, the above-named plaintiff, with offices c/o

Jonathan A. Stein, P.C., 132 Spruce Street, Cedarhurst, New York 11516-1915, recover from Aaron

Fischman, residing at 703 Carlyle Avenue, Woodmere, New York 11598, the above named

defendant, the sum of Two Hundred Fifty Thousand Dollars ($250,000.00), with interest at from

May 4, 2015 through July 31, 2015 at a rate of eight percent (8%) for total accrued interest for said

period at $ 5833.80 , and thereafter with interest at a default rate of sixteen percent

(16%) or the maximum rate allowable by law, whichever is less, up to the date of the entry of

judgment for a total accrued interest of $ 29,666.37 , without costs and disbursements,

amounting in all to the sum of $ 285,500.17 , and that the plaintiff have

execution therefor.

      **JUDGMENT** signed this 28th day of June, 2016.

                                    *Maureen O'Connell*
                                        CLERK

J:\Private\Jon\Documents\Cardis\Fischman Loan\Judgment By Confession 250K.wpd

FILED: NASSAU COUNTY CLERK 06/24/2016 11:30 AM    INDEX NO. 604767/2016

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/24/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-----------------------------------------------------------------------x

SHALOM S. MAIDENBAUM,                                    Index No.

                                    Plaintiff,

                                                         **AFFIDAVIT OF**
        -against-                                        **CONFESSION OF**
                                                         **JUDGMENT**

AARON FISCHMAN,

                                    Defendant.

-----------------------------------------------------------------------x

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

        AARON FISCHMAN, being duly sworn, depose and say:

        1.      I am the individual named defendant.  I personally reside at 703 Carlyle Avenue, Woodmere, New York 11598, which is located in the County of Nassau, State of New York.

        2.      This confession of judgment is for a debt justly due to the plaintiff Shalom S. Maidenbaum, arising from a promissory note (the "Note") executed by me on May 4, 2015, with interest at an annual percentage rate of eight percent (8%).

        3.      The Note was due and payable on July 31, 2015, and upon default in payment, began to accrue interest at the rate of sixteen percent (16%) or the maximum amount permitted by law, whichever sum is less.

        4.      Currently, I am in default under my obligations under the Note.

        5.      I have no defense to the payment of the obligations in the Note. Accordingly, I hereby confess judgment, pursuant to CPLR § 3218, in favor of Shalom S. Maidenbaum in the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) with interest at the rate of eight percent (8%) from June 19, 2015 to and including September 30, 2015, and thereafter, at the rate of sixteen percent

(16%), until such time as judgment is entered, and thereafter, at the statutory rate of nine percent (9%) until such time as the entire obligation is paid in full.

6.    On behalf of myself, I hereby authorize plaintiff, Shalom S. Maidenbaum, his attorneys, agents, representatives, and assigns to enter judgment therefor against us in the Supreme Court of the State of New York, County of Nassau, for the total amount due.

7.    I admit that we are unconditionally, and jointly and severally, liable to plaintiff Shalom S. Maidenbaum for the total amount set forth herein, and that we do not have any defense, offset or claim against plaintiff.

8.    I also admit that I have consulted with and shown this confession of judgment to an attorney and have no defense to the debt acknowledged herein.

9.    This Confession of Judgment is not prohibited by CPLR § 3201.

10.    This Confession of Judgment is not for the purpose of securing Shalom S. Maidenbaum against a contingent liability.

**AARON FISCHMAN**

Sworn to before me this
24th day of December, 2015

Notary Public

JONATHAN A. STEIN
Notary Public, State of New York
No. 02ST4755192
Qualified in Nassau County
Commission Expires February 28, 2018

**EXHIBIT 5**

Serial No. 512/2023
Form No. 7

## CERTIFICATION OF TRANSLATION

I, the undersigned, **Eliezer Avrech**, Notary holding license no. 217300, of Technology Park, Bldg. 1, Manahat, Jerusalem, hereby certify that I am fluent in the Hebrew and English languages, and that the document attached to this certification and marked with the letter "**A**" is a translation to the English language of the original document drawn up in the Hebrew language attached to this certification and marked with the letter "**B**".

In witness whereof, I hereby certify the faithfulness of said translation by my own signature and seal, this day 12.01.2023.

Notary fees for certification of one original document and one copy in the amount of NIS **650** plus VAT

מספר סידורי 512/2023
טופס מס' 7

## אישור נכונות תרגום

אני החי"מ, **אליעזר אברך**, נוטריון בעל רישיון מספר 217300, מחגן הטכנולוגי מלחה, בנין 1, ירושלים, מצהיר בזה, כי אני שולט היטב בשפות העברית והאנגלית, וכי המסמך המצורף לאישור זה והמסומן באות "**A**" הוא תרגום לשפה האנגלית של מסמך המקור הערוך בשפה העברית, המצורף לאישורי זה והמסומן באות "**B**".

לראיה אני מאשר את דיוק התרגום האמור בחתימת ידי ובחותמי, היום 12.01.2023.

שכר נוטריון בעבור אישור מקורי אחד ועותק אחד בסך **650** שקלים חדשים, בתוספת מע"מ.



Signature                Notary's Seal          חותם הנוטריון              חתימה

# APOSTILLE

(Convention de la Haye du 5 Octobre 1961)

| | |
|---|---|
| **1. STATE OF ISRAEL** | ‏1. מדינת ישראל |
| This public document | ‏מסמך ציבורי זה |
| 2. Has been signed by | ‏2. נחתם בידי |
| Advocate _____ | ‏עו״ד _____ |
| 3. Acting in capacity of Notary | ‏3. המכהן בתור נוטריון. |
| 4. Bears the seal/stamp of | ‏4. נושא את החותם/החותמת |
| the above Notary | ‏של הנוטריון הנ״ל |
| **Certified** | **אושר** |
| 5. At the Magistrates Court of Jerusalem | ‏5. בבית משפט השלום בירושלים |
| 6. Date _____ | ‏6. ביום _____ |
| 7. By an official appointed by | ‏7. על ידי מי שמונה בידי שר |
| Minister of Justice under the | ‏המשפטים לפי חוק הנוטריונים, |
| Notaries Law, 1976 | ‏התשל״ו - 1976 |
| 8. Serial number _____ | ‏8. מס׳ סידורי _____ |
| 9. Seal/Stamp _____ | ‏9. החותם / החותמת _____ |
| 10. Signature _____ | ‏10. חתומה. _____ |

n the Dist
erusalem
n Re

**A**

Civil Claim 56273-04-19

In Re

**Shalom Maidenbaum, American passport 558296414**
Represented by counsel, Adv. Shai Ganor and/or Adv. Ofek
Brook of E.S. Shimron, I. Molho, Persky & Co.
Platinum Tower, 21 HaArba'a Street, Tel Aviv 6473921
Tel: +972 3 685 3685 Fax: +972 3 685 3853
Email: sganor@smplaw.co.il
And by Adv. Joshua Lieberman of Yigal Arnon & Co.
31 Hillel Street, Jerusalem, 9458131
Tel: +972 2 623 9239 Fax: +972 2 623 9233
Email: JoshuaL@arnon.co.il

Plaintiff

-versus-

**1. Aaron Fischman, US passport 112259169**
**2. Nina Nima Fischman, US passport 211450225**
Represented by counsel, Advs. Tamar Rubin and Morris
Rubin of 7/2 Gaza Street, Jerusalem, 9238104
Tel: +972 2 563 7768 Fax: +972 2 563 4098
**3. Bank of Jerusalem Ltd.**
Represented by counsel, Adv. Emanuel Zentler and others
of 6 Hillel Street, Jerusalem, 9458106
Tel: +972 2 624 3020 Fax: +972 2 624 3556
Email: ez@zegolaw.co.il

Defendants

## Amended Order for Monetary Awards (replacing Section 4 of the Order dated 27.10.2022)

In accordance with my judgement of September 2nd, 2022, and my subsequent decision of December 1st, 2022, I hereby order as follow:

1. The Defendants 1 and 2 will pay Plaintiff's attorney fees, in the amount of ILS 75,000, as of September 2nd, 2022.

2. In addition, the Defendants 1 and 2 will pay Plaintiff, jointly and severally, for legal disbursements in the amount of ILS 562,409.5, as of December 1st, 2022.

_____
Date

| |
|---|
| 18th of Tevet 5783  01-11-2023    Decision |
| Case No. 56273-04-19 |
| Shoshana Leibovich, Judge |
| The order has been singed, as requested. |
| **Signed Digitally** |

**ב**

**ת.א. 19-04-56273**

בבית המשפט המחוזי
בירושלים
בעניין:

שלום מיידנבאום, דרכון ארה"ב 558296414
ע"י ב"כ עו"ד שי גנור ו/או עו"ד אופק ברוק
ממשרד א.ש. שמרון, י. מלכו, פרסקי ושות',
עורכי דין מרח' הארבעה 21, מגדל פלטינום,
תל אביב 6473921
טל': 03-6853685; פקס: 03-6853853
דוא"ל: sganor@smplaw.co.il
ותע"י ב"כ עו"ד יהושע ליברמן ממשרד עו"ד
יגאל ארנון ושות' רח' הלל 31, ירושלים
94581 טל': 02-6239300 פקס: -02
6239314
דוא"ל: Joshual@arnon.co.il

התובע

- נגד -

ובעניין:

1. אהרון פישמן, דרכון ארה"ב 112259169
2. **גינה נימה פישמן, דרכון ארה"ב**
**211450225**
ע"י ב"כ עוה"ד תמר רובין ו/או מוריס
רובין מדרך עוזה 7/2 ירושלים – 9238104
טל: 02-5634098; פקס: 02-5637768
דוא"ל: rubin_nm@netvision.net.il

3. **בנק ירושלים בע"מ ח.צ. 520025636**
ע"י ב"כ עוה"י עמנואל צוקלר ואח'
מרח' הלל 6, ירושלים 9458106
טל: 02-6243020; פקס: 02-6243556
דוא"ל: ez@zegolaw.co.il

הנתבעים

## פסיקתא הנוגעת לחוב כספי (חלף סע' 4 לפסיקתא מתאריך 27.10.2022)

בהתאם לפסק הדין שניתן על ידי ביום 2.9.2022, ולהחלטותי מיום 1.12.2022, אני מורה, כדלקמן:

1 הנתבעים 1 ו-2 ישאו בשכר טרחת התובע בסך 75,000 ₪, נכון ליום 2.9.2022.

2 בנוסף, על הנתבעים 1 ו-2 לשלם לתובע, ביחד ולחוד, הוצאות משפט בסך של 562,409.5 ₪,
נכון ליום 1.12.2022.

| | תאריך |
|---|---|
| י"ח טבת תשפ"ג, 11/01/2023    החלטה | |
| תיק 19-04-56273 | |
| שו' שושנה ליבוביץ | |
| הפסיקתא נחתמה, כמבוקש. | |
| *** נחתם דיגיטאלית *** | |

**EXHIBIT 6**

# INDICTMENT

## SUPREME COURT OF THE STATE OF NEW YORK

### COUNTY OF NASSAU

-----------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

              -against-

AARON FISCHMAN,

                            Defendant.

-----------------------------------------------------------X

FILED: August 18, 2020
INDICTMENT NO. 636N-20

COUNTS

| | |
|---|---|
| P.L. § 155.42 | GRAND LARCENY IN THE FIRST DEGREE (1 COUNT) |
| P.L. § 155.40(1) | GRAND LARCENY IN THE SECOND DEGREE (4 COUNTS) |
| P.L. § 155.35(1) | GRAND LARCENY IN THE THIRD DEGREE (4 COUNTS) |
| P.L. § 470.15(1)(b)(ii)(A)(iii) | MONEY LAUNDERING IN THE SECOND DEGREE (1 COUNT) |
| G.B.L. § 352-c(6) | VIOLATION OF GENERAL BUSINESS LAW SECTION 352-c(6) ARTICLE 23-A (9 COUNTS) |
| P.L. § 190.65(1)(b) | SCHEME TO DEFRAUD IN THE FIRST DEGREE (1 COUNT) |

LETITIA JAMES
ATTORNEY GENERAL
STATE OF NEW YORK
by: Stephanie Swartz

1

## COUNT ONE

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE FIRST DEGREE, in violation of Section 155.42 of the Penal Law, committed as follows:

The defendant, between on or about January 24, 2013 and November 24, 2015, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding one million dollars from a person known to the grand jury, hereinafter referred to as Witness One.

## COUNT TWO

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE SECOND DEGREE, in violation of Section 155.40(1) of the Penal Law, committed as follows:

The defendant, between on or about October 9, 2013 and June 18, 2015, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding fifty thousand dollars from a person known to the grand jury, hereinafter referred to as Witness Two.

## COUNT THREE

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE SECOND DEGREE, in violation of Section 155.40(1) of the Penal Law, committed as follows:

The defendant, between on or about February 22, 2013 and June 22, 2016, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding fifty thousand dollars from a person known to the grand jury, hereinafter referred to as Witness Three.

## COUNT FOUR

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE SECOND DEGREE, in violation of Section 155.40(1) of the Penal Law, committed as follows:

The defendant, between on or about May 3, 2013 and September 26, 2016, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding fifty thousand dollars from a person known to the grand jury, hereinafter referred to as Witness Four.

2

### COUNT FIVE

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE SECOND DEGREE, in violation of Section 155.40(1) of the Penal Law, committed as follows:

The defendant, between on or about May 8, 2013 and October 19, 2016, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding fifty thousand dollars from a person known to the grand jury, hereinafter referred to as Witness Five.

### COUNT SIX

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE THIRD DEGREE, in violation of Section 155.35(1) of the Penal Law, committed as follows:

The defendant, between on or about November 23, 2015 and October 20, 2016, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding three thousand dollars from a person known to the grand jury, hereinafter referred to as Witness Six.

### COUNT SEVEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE THIRD DEGREE, in violation of Section 155.35(1) of the Penal Law, committed as follows:

The defendant, on or about December 22, 2016, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding three thousand dollars from a person known to the grand jury, hereinafter referred to as Witness Seven.

### COUNT EIGHT

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE THIRD DEGREE, in violation of Section 155.35(1) of the Penal Law, committed as follows:

The defendant, on or about September 12, 2016, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding three thousand dollars from a person known to the grand jury, hereinafter referred to as Witness Eight.

3

## COUNT NINE

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GRAND LARCENY IN THE THIRD DEGREE, in violation of Section 155.35(1) of the Penal Law, committed as follows:

The defendant, on or about September 12, 2016, in the County of Nassau and elsewhere, stole property having an aggregate value exceeding three thousand dollars from a person known to the grand jury, hereinafter referred to as Witness Nine.

## COUNT TEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of MONEY LAUNDERING IN THE SECOND DEGREE, in violation of Section 470.15(1)(b)(ii)(A)(iii) of the Penal Law, committed as follows:

.       The defendant, between on or about June 12, 2013 and December 27, 2016, in the County of Nassau and elsewhere, knowing that the property involved in one or more financial transactions represented the proceeds of specified criminal conduct, conducted one or more financial transactions which in fact involved the proceeds of specified criminal conduct with knowledge that the transaction or transactions in whole or in part were designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of this criminal conduct, and the total value of the property involved in such financial transaction or transactions exceeded one hundred thousand dollars.

## COUNT ELEVEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, between on or about January 24, 2013 and November 24, 2015, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness One.

4

## COUNT TWELVE

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, between on or about October 9, 2013 and June 18, 2015, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness Two.

## COUNT THIRTEEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, between on or about February 22, 2013 and June 22, 2016, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness Three.

## COUNT FOURTEEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, between on or about May 3, 2013 and September 26, 2016, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or

5

statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness Four.

## COUNT FIFTEEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, between on or about May 8, 2013 and October 19, 2016, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness Five.

## COUNT SIXTEEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, between on or about November 23, 2015 and October 20, 2016, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness Six.

6

## COUNT SEVENTEEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, on or about December 22, 2016, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness Seven.

## COUNT EIGHTEEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, on or about September 12, 2016, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or statement with intent to deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness Eight.

## COUNT NINETEEN

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of GENERAL BUSINESS LAW SECTION 352-c(6), ARTICLE 23-A, committed as follows:

The defendant, on or about September 12, 2016, in the County of Nassau and elsewhere, intentionally engaged in fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale, or made any material false representation, or statement with intent to

deceive or defraud, while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation, or purchase within and from this state of any securities or commodities, as defined in Article 23 of the General Business Law, and thereby wrongfully obtained property of a value in excess of two hundred fifty dollars from Witness Nine.

## COUNT TWENTY

THE GRAND JURY OF NASSAU COUNTY, by this indictment, accuses the defendant AARON FISCHMAN of the crime of SCHEME TO DEFRAUD IN THE FIRST DEGREE, in violation of Section 190.65(1)(b) of the Penal Law, committed as follows:

The defendant, between on or about January 24, 2013 and December 27, 2016, in the County of Nassau and elsewhere, engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtained property with a value in excess of one thousand dollars from one or more such persons.

LETITIA JAMES

Attorney General
New York State

8

**EXHIBIT 7**

1 SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU:  CRIMINAL TERM PART 90
2 - - - - - - - - - - - - - - - - - - - -x
THE PEOPLE OF THE STATE OF NEW YORK,
3
        -against-                        Indictment No.
4                                        70327-20/001
                                         00636N-2020
5 AARON D. FISCHMANN,
                        Defendant.
6 - - - - - - - - - - - - - - - - - - - -x

7                       December 15, 2022

8                       262 Old Country Road
                        Mineola, New York
9
B E F O R E:
10
              HONORABLE FRAN RICIGLIANO
11            Acting Supreme Court Justice

12
A P P E A R A N C E S:
13
              STATE OF NEW YORK OFFICE OF THE
14            ATTORNEY GENERAL LETITIA JAMES
              Criminal Enforcement & Financial
15            Crimes Bureau
              28 Liberty Street
16            New York, New York 10005
         BY: DAVID A. VARGAS, Assistant Attorney General
17            HUGH McLEAN, Assistant Attorney General

18
              KASOWITZ BENSON TORRES, LLP
19            Attorneys for the Defendant
              1633 Broadway
20            New York, New York 10019
         BY: EDWARD McNALLY, ESQ.
21            DANIEL J. KOEVARY, ESQ.

22
              LEVI HUEBNER & ASSOCIATES, PC
23            Attorneys for the Defendant
              488 Empire Boulevard, Suite 100
24            Brooklyn, New York 11225
         BY: LEVI HUEBNER, ESQ.
25
                    Mickey Brymer, RPR, Senior Court Reporter

1            THE CLERK:  We are on the record with

2    indictment 70327-20, which covers indictment 636N-20, as

3    well as docket number CR 021052-22 NA, the People versus

4    Aaron Fischmann.

5            Appearances, please, for the record.

6            MR. VARGAS:  David Vargas for the Office of

7    the New York State Attorney General.

8            MR. McLEAN:  Also from the New York State

9    Attorney General, Hugh L. McLean.

10            MR. McNALLY:  Edward McNally for the defendant

11    Aaron Fischmann, who's present in court.

12            MR. KOEVARY:  Also for Mr. Fischmann, Daniel

13    Koevary, Kasowitz Benson Torres.

14            Good afternoon, your Honor.

15            THE COURT:  Good afternoon.

16            MR. HUEBNER:  Also for the defendant, Levi

17    Huebner, Levi Huebner & Associates, PC, for Aaron

18    Fischmann.

19            Good afternoon, your Honor.

20            THE COURT:  Good afternoon.

21            Are you Aaron Fischmann?

22            THE DEFENDANT:  I am.

23            THE CLERK:  A new accusatory instrument has

24    been filed and we will arraign the defendant on it.

25            Mr. Fischmann, you have the right to the aid

1    of counsel in every stage of these proceedings.

2              You're entitled to communicate free of charge

3    in order to obtain a lawyer or inform a relative or

4    friend that you have been charged with an offense.

5              If you wish the aid of a lawyer, your case

6    will be adjourned in order for you to obtain a lawyer.

7    If you wish the aid of a lawyer and cannot afford one,

8    you will be screened by the Court.

9              An attorney is here today to assist you with

10   your arraignment and bail application.  Those released

11   on bail are on their own recognizance or in the custody

12   of another.  You are advised if you fail to appear when

13   the Court so directs, you may be subject to additional

14   charges and the case may proceed in your absence.

15             In the event you commit a crime while you are

16   out on bail or at liberty, the Court may revoke your

17   bail or liberty pending a hearing.

18             The New York State Office of the Attorney

19   General has filed a felony complaint against you for the

20   crimes of fraudulent practices in respect to stocks,

21   bonds and other securities, in violation of General

22   Business Law Section 352-c(5).

23             How do you plead; guilty or not guilty.

24             MR. McNALLY:  The defendant pleads guilty.

25             THE COURT:  Let's go off the record.

1          MR. McNALLY:  The defendant pleads not guilty.

2          THE COURT:  Let's not go off the record.

3          THE CLERK:  Aaron Fischmann, I have been

4    instructed by the Honorable Fran Ricigliano, sitting as

5    a local criminal court judge, to advise you that you

6    have the right to a felony hearing on the charges

7    contained in this felony complaint.

8          Do you waive the right to that felony

9    examination and consent to this case being held for the

10   action of the grand jury?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  Waiver is accepted.

13         THE CLERK:  The New York State Office of the

14   Attorney General has filed a superior court information

15   against you.  Under the Constitution of the State of

16   New York you have the right to be prosecuted by

17   indictment.  Do you wish to waive that right and proceed

18   by superior court information?

19         THE DEFENDANT:  Yes, I do.

20         THE CLERK:  I will ask you to sign it.

21         Let the record reflect the waiver of

22   indictment has been signed by the defendant and counsel.

23         THE COURT:  Sir, you've indicated you want to

24   proceed by way of a superior court information,

25   otherwise known as an SCI, rather than an indictment.

1         An SCI and an indictment are the same, in that each is a

2         written document which charges a person with a crime.

3         The difference between the two is that an indictment is

4         issued by a grand jury after the jury has received

5         testimony and other evidence establishing that a person

6         committed a crime, an SCI is issued by the district

7         attorney on the consent of a defendant.

8                   Do you understand?

9                   THE DEFENDANT:  I do.

10                   THE COURT:  Have you spoken with your lawyer

11         about your case, about waiving your right to be

12         prosecuted by indictment and about consenting to be

13         prosecuted by an SCI?

14                   THE DEFENDANT:  I have.

15                   THE COURT:  Are you satisfied with the

16         services of your lawyer?

17                   THE DEFENDANT:  I am.

18                   THE COURT:  Upon waiving prosecution by

19         indictment and agreeing to be prosecuted by an SCI, you

20         will be permitted a plea agreement which I understand is

21         about to be placed on the record.

22                   Do you understand that?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  I have before me a document

25         entitled "Waiver of Indictment."  This waiver form in

1       essence specifies you have the right to consent to be

2       prosecuted by indictment, that you waive such right and

3       consent to be prosecuted by SCI, that the SCI will have

4       the same force and effect as an indictment, and that the

5       SCI will charge you with the crime of fraudulent

6       practice in respect to stocks, bonds and other

7       securities.  That's a violation of Section 362-c(5) of

8       the General Business Law of the State of New York.

9                 Do you understand?

10                THE DEFENDANT:  I do.

11                THE COURT:  Is that your signature on this

12      waiver of indictment form?

13                THE DEFENDANT:  It is.

14                THE COURT:  Have you gone through it with your

15      attorney?

16                THE DEFENDANT:  Yes, I have.

17                THE COURT:  Let the record show the defendant

18      has signed the waiver of indictment form here in open

19      court.

20                Mr. McNally, have you witnessed that

21      signature?

22                MR. McNALLY:  Yes, I did.

23                THE COURT:  Other than the plea agreement has

24      anyone made any other promise, commitment or

25      representation of any kind to get you to consent to

1       prosecution by SCI?

2                    THE DEFENDANT:  No.

3                    THE COURT:  Has anyone threatened or forced

4       you to consent against your will?

5                    THE DEFENDANT:  No.

6                    THE COURT:  Have I, a lawyer or anyone else

7       said anything to you to have you consent against your

8       will?

9                    THE DEFENDANT:  No.

10                   THE COURT:  Are you consenting, therefore,

11      voluntarily, of your own free will and choice?

12                   THE DEFENDANT:  I am.

13                   THE COURT:  The Court being satisfied that the

14      waiver complies with the law and that the defendant's

15      waiver is knowing, intelligent and voluntary, the Court

16      approves the waiver and signs the order accordingly.

17                   THE CLERK:  Aaron Fischmann, the

18      New York State Office of the Attorney General has filed

19      superior court information 1569N-22 for the crime of

20      fraudulent practice in respect to stocks, bonds and

21      other securities in violation of General Business Law

22      Section 352-c(5).

23                   You're advised of your right to counsel

24      throughout all stages of these proceedings and you're

25      also advised that if you have any prior felony

1        convictions, you may be subject to a mandatory term of

2        imprisonment.

3                    How do you plead; guilty or not guilty?

4                    THE DEFENDANT:  I plead guilty -- not guilty.

5                    THE CLERK:  Do the People have an application?

6                    MR. VARGAS:  Your Honor, at this --

7                    THE COURT:  One second.  Off the record.

8                    (Discussion held off the record.)

9                    THE COURT:  Let's go back on the record.

10                   MR. McNALLY:  Your Honor, we would now like to

11       make a motion pursuant to CPL Section 200.20 to

12       consolidate the superior court information number

13       SCI 1569N of '22 with indictment 636 of 2020.

14                   THE COURT:  Any objection to that?

15                   MR. VARGAS:  No, your Honor.

16                   THE COURT:  Okay.  The motion is granted and

17       the SCI is consolidated and made count 21.

18                   People, do you have any applications?

19                   MR. VARGAS:  Yes, your Honor.

20                   The People and the defense have come to an

21       agreement which we request the Court to accept, which

22       includes the defendant pleading guilty to the crimes of

23       grand larceny in the third degree, a class D felony --

24                   THE COURT:  I'm sorry to interrupt Mr. Vargas.

25       I apologize.

1              Before we move forward, as I indicated to

2       counsel, my chambers received a call from Mr. Gordon,

3       who had indicated that -- he asked the Court if it had

4       received a victim impact statement.  Is Mr. Gordon a

5       victim in this case?

6              MR. VARGAS:  Mr. Gordon is not a victim in

7       this case.

8              THE COURT:  Do the People have any impact

9       statements that they wish to furnish at this time?

10             MR. VARGAS:  We do not.

11             THE COURT:  Just to be clear, Mr. Gordon is

12      not one of the complainants in this criminal action?

13             MR. VARGAS:  Mr. Gordon is not a complainant

14      in this criminal matter.

15             THE COURT:  Okay.  Please proceed.

16             MR. VARGAS:  The People and the defense have

17      come to an agreement which we ask the Court to accept,

18      which includes the defendant pleading guilty to the

19      crimes of grand larceny in the third degree, a class D

20      felony, a lesser included offense of count four on the

21      indictment, which is grand larceny in the second degree

22      and fraudulent practices in respect to stocks, bonds and

23      other securities, a class E felony, also known as a

24      Martin Act Scheme charge, which is count 21, in full

25      satisfaction of indictment 636N-20.

1              The People and the defendant have reached a

2    global resolution with the Attorney General's Office.

3    The defendant and the Attorney General's Investor

4    Protection Veto agreed the civil enforcement action

5    captioned "The People of the State of New York versus

6    Aaron D. Fischmann et al.," currently pending against

7    the defendant in New York State Supreme Court, New York

8    County, under index number 452343/2018, has been

9    resolved with the defendant consenting to the entry of

10   an order and judgment, including a five-year ban from

11   the securities industry in New York State.

12              If I may --

13              THE COURT:   Sure.

14              MR. VARGAS:   -- continue?

15              At the time of the defendant's sentencing in

16   the criminal case, according to the plea terms, the

17   New York Attorney General's Office and defendant will

18   make sentencing recommendation to the Court that the

19   defendant be sentenced to a conditional discharge for a

20   term of three years, including special conditions that

21   the defendant make restitution in the total amount of

22   two million dollars, and the defendant consents to being

23   enjoined from participating in any capacity in the

24   securities industry in New York State for the period of

25   three years, commencing on the date of defendant's

1       sentence.

2              Your Honor, if I may, the People would like to

3       make an application for the Court to consider sentencing

4       the defendant to a conditional discharge.

5              THE COURT:  Why are you seeking to have this

6       defendant sentenced to a conditional discharge rather

7       than a probationary sentence or incarceration sentence?

8              MR. VARGAS:  Your Honor, the People urge the

9       Court to sentence the defendant to a conditional

10      discharge because the People believe that consideration

11      of the defendant's lack of criminal history and our

12      review of the facts, case law and pending motions in

13      front of your Honor, which have called into issue the

14      availability of all of the counts in the indictment

15      available at trial, as well as the uncertainty of trial,

16      and, in addition, one million dollars in restitution is

17      being paid today by the defendant which will be

18      immediately available to the Attorney General's Office

19      to distribute pro rata to the complainants in both the

20      criminal and civil action.

21             This initial payment, the initial restitution

22      payment has been thoroughly vetted by the Attorney

23      General's Office by way of reviewing financial records

24      and conducting interviews of witnesses that defense

25      counsel has provided to our office.

1             Under all of those circumstances that the

2    People view this case in, we now urge the Court sentence

3    the defendant to a conditional discharge with the

4    special conditions previously stated.

5             Just to be clear, the restitution payment, the

6    funds for this initial restitution payment has been

7    vetted by our office and we found the monies -- the

8    funds are not from the crime that is alleged to have

9    been committed in this case.

10            THE COURT:  You had said two million dollars

11   and one million dollars today.  What about the other

12   million?

13            MR. VARGAS:  Yes, your Honor.  The defendant

14   will make restitution -- I'm sorry, the defendant will

15   consent to pay a restitution order for two million

16   dollars, payable as follows:

17            Defendant will make the initial restitution

18   payment in the amount of one million today, the day of

19   sentencing -- the defendant will make additional

20   restitution payment in the amount of one million dollars

21   within three years, commencing on the date the defendant

22   is sentenced under this indictment and the terms of the

23   conditional discharge that's being considered.

24            Defendant's restitution payments will be paid

25   by either bank check or attorney escrow account check

1       made payable to Office of the New York State Attorney

2       General and delivered by hand or overnight delivery to

3       Assistant Attorney General David Vargas, the 14th floor,

4       28 Liberty Street, New York 10005.

5                THE COURT:  Is there a signed restitution

6       agreement by the defendant to pay in accordance with

7       that schedule and under those terms?

8                MR. VARGAS:  There is not a signed agreement,

9       but defense counsel and the Attorney General's Office

10      are in agreement with that restitution payment.

11               Mr. McNALLY:  That is correct, your Honor.

12               MR. VARGAS:  We would also like to add if the

13      defendant fails to make that restitution payment, the

14      conditional discharge sentence may be revoked and he

15      faces time of imprisonment.  That same revocation and

16      possible term of imprisonment also applies to the other

17      special condition regarding the securities ban.

18               THE COURT:  Is there any waivers to the right

19      to appeal?

20               MR. VARGAS:  Yes, your Honor.

21               THE COURT:  Have the People certified

22      discovery in this case?

23               MR. VARGAS:  Yes, your Honor, People certified

24      discovery in December 2020 and filed a statement of

25      readiness.

1              THE COURT:  Can counsel approach, please.

2              (Off-the-record discussion held at the bench.)

3              THE COURT:  Does the defense acknowledge that

4       certification?

5              MR. McNALLY:  We do, your Honor.

6              THE COURT:  Do you contest it in any way?

7              MR. McNALLY:  We do not, your Honor.

8              THE COURT:  Anything else?

9              MR. VARGAS:  Just for the record, the

10      two million dollars in restitution, the total amount

11      will be distributed by the Attorney General's Office

12      pro rata to eligible investors in both the criminal

13      indictment 63N-20 and civil complaint under index

14      452343/2018.

15             THE COURT:  And does the defense join in that

16      application?

17             MR. McNALLY:  We do, your Honor.

18             MR. HUEBNER:  We do, your Honor.

19             (The defendant was duly sworn/affirmed by the

20      Court.)

21             THE COURT:  Do you swear and affirm everything

22      you said so far is true?

23             THE DEFENDANT:  I do.

24             THE COURT:  What is your name and address?

25             THE DEFENDANT:  Aaron Fischmann, 703 Carlisle

1    Street, Woodmere, New York 11598.

2              THE COURT:  Does defense counsel withdraw all

3    motions pending or previously ruled upon in this

4    proceeding?

5              MR. McNALLY:  We do, your Honor.

6              MR. HUEBNER:  We do, your Honor.

7              THE COURT:  Mr. Fischmann, I will be asking

8    you additional questions.  If at any time you do not

9    understand my questions, let me know you don't

10   understand, okay.

11             THE DEFENDANT:  Yes.

12             THE COURT:  You can stop me and ask me or your

13   attorney questions during the course of my questioning

14   at any time.

15             Do you understand that?

16             THE DEFENDANT:  I do.

17             THE COURT:  Have you fully discussed the facts

18   of this case with your attorneys?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Counsel, have those discussions in

21   fact taken place?

22             MR. McNALLY:  Yes, they have, your Honor.

23             MR. HUEBNER:  Yes, your Honor.

24             THE COURT:  How old are you, sir?

25             THE DEFENDANT:  I'm sorry.

Proceedings                                 16

1                    THE COURT:  How old are you?

2                    THE DEFENDANT:  I'm 60 years old.

3                    THE COURT:  What is the highest grade level

4          you have completed in school?

5                    THE DEFENDANT:  Fourth year college.

6                    THE COURT:  Do you read and write English?

7                    THE DEFENDANT:  I do.

8                    THE COURT:  Are you a United States citizen?

9                    THE DEFENDANT:  I am.

10                   THE COURT:  Do you feel like you're in good

11         physical and mental health as you sit here today?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  Have you had any alcohol or drugs

14         within the last 24 hours?

15                   THE DEFENDANT:  No.

16                   THE COURT:  Have you had enough time to speak

17         with your attorney before pleading guilty here today?

18                   THE DEFENDANT:  Yes, I have.

19                   THE COURT:  Are you satisfied with the manner

20         in which your attorney has represented you?

21                   THE DEFENDANT:  I am.

22                   THE COURT:  Now, do you understand that you

23         have the right to a trial by jury with the assistance of

24         your attorney and the district attorney would have to

25         prove your guilt beyond a reasonable doubt?

1              THE DEFENDANT:  I do.

2              THE COURT:  And that you have the right to

3       listen to the witnesses against you and to have your

4       attorney cross-examine those witnesses.

5              THE DEFENDANT:  Yes.

6              THE COURT:  And that you would not have to

7       take the stand and testify.

8              THE DEFENDANT:  Yes.

9              THE COURT:  And that you have no burden in

10      this case.  It is the People' burden to prove your guilt

11      beyond a reasonable doubt to each and every element of

12      the charged crimes and you are presumed innocent

13      throughout the trial.

14             THE DEFENDANT:  Yes.

15             THE COURT:  And that you have the right to

16      bring in your own witnesses to testify on your behalf.

17             THE DEFENDANT:  Yes.

18             THE COURT:  And that by pleading guilty you

19      give up these rights.

20             THE DEFENDANT:  Yes.

21             THE COURT:  And that a plea of guilty is the

22      same as a conviction after trial.

23             THE DEFENDANT:  Yes.

24             THE COURT:  Has anyone made any threats or in

25      any way tried to force you to plead guilty?

1              THE DEFENDANT:  No.

2              THE COURT:  Now, a defendant ordinarily

3     retains the right to appeal even after pleading guilty.

4     But in this case, as a condition of the plea agreement,

5     you're being asked to waive your right to an appeal.

6              THE DEFENDANT:  Yes.

7              THE COURT:  An appeal is a proceeding before a

8     higher court, an appellate court.  If a defendant can't

9     afford the costs of an appeal or of a lawyer, the State

10    will pay the costs on an appeal.

11             The defendant may normally through his or her

12    lawyer argue an error took place in the court which

13    requires a modification or reversal of conviction.  A

14    reversal would require either new proceedings in this

15    court or a dismissal.

16             Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  By waiving your right to appeal

19    you don't give up your right to take an appeal by filing

20    a notice of appeal with this Court and the district

21    attorney within 30 days of sentence.  But if you take an

22    appeal, you are by this waiver giving up the right to

23    have an appellate court consider most claims of error

24    and whether the sentence imposed, whatever it may be, is

25    excessive and should be modified.  As a result, a

1     conviction by this plea and sentence will normally be

2     final.

3            Do you understand that?

4            THE DEFENDANT:  I do.

5            THE COURT:  Have you spoken with your attorney

6     about waiving your right to appeal?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Are you willing to do so in return

9     for the plea and sentence agreement?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you waive your right to appeal

12     voluntarily and of your own free will and choice?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And, defense counsel, do you have

15     or have you received adequate information through

16     discovery and otherwise to intelligently advise your

17     client in this matter?

18           MR. McNALLY:  Yes, your Honor, we have.

19           MR. HUEBNER:  Yes, your Honor, we have.

20           THE COURT:  Sir, have you previously been

21     convicted of a felony?

22           THE DEFENDANT:  No.

23           THE COURT:  Do you understand you're pleading

24     guilty to a felony here today and if you're convicted of

25     a new felony under the New York State Penal Law at any

1       time within the next ten years, the court must impose a

2       mandatory term of imprisonment?

3                   THE DEFENDANT:  Yes.

4                   THE COURT:  Are you currently on probation or

5       parole?

6                   THE DEFENDANT:  No.

7                   THE COURT:  Under this indictment that's now

8       been consolidated with the SCI you're charged with the

9       following crimes:  These are the original charges, not

10      the reduced charges that the Attorney General just

11      stated.  The original charges.

12                  One count of grand larceny in the first

13      degree, a B felony, which carries a maximum jail

14      sentence of 25 years;

15                  Four counts of grand larceny in the second

16      degree, these are C felonies, maximum jail 15 years;

17                  Four counts of grand larceny in the third

18      degree, these are D felonies, maximum jail sentence

19      seven years;

20                  One count of money laundering in the second

21      degree, this is a C felony, maximum jail sentence 15

22      years;

23                  Nine counts of violation of General Business

24      Law Section 3502-c(6).  These are each A misdemeanors.

25                  Off the record.

1           (Discussion held off the record.)

2           THE COURT:  I misspoke, I'm sorry.

3           Nine counts of violation of General Business

4    Law 352-c(6).  These are each E felonies that carry

5    maximum jail sentences of four years.

6           One count of scheme to defraud in the first

7    degree, E felonies, maximum jail four years;

8           And, finally, consolidated count, violation of

9    General Business Law 352-c(5), and that is an E felony

10   with a maximum jail sentence of four years.

11          Do you understand the original charges and the

12   jail that would normally be accompanying those original

13   charges?

14          THE DEFENDANT:  I do.

15          THE COURT:  The Attorney General has made a

16   plea offer wherein they are reducing those original

17   charges, they are dismissing all of the charges except

18   the one count of grand larceny in the third degree,

19   which is a D felony that carries maximum jail sentence

20   of seven years and one count of General Business Law

21   352-c(5), which is an E felony which is a maximum jail

22   sentence of four years.

23          Were you to accept that plea, the Attorney

24   General has asked me under these exceptional

25   circumstances to sentence you to a conditional discharge

1          with two million dollars in restitution paid in the

2          forms set forth and in accordance with the requirements

3          set forth by Mr. Vargas.

4                    There would also be a five-year ban --

5                    MR. HUEBNER:  Three in the criminal case, your

6          Honor, and five in the civil case.

7                    THE COURT:  Okay.  In this case there would be

8          a three-year ban, in the criminal case, from being

9          associated with any broker-dealer, investment adviser,

10         municipal securities dealer, municipal adviser, transfer

11         agent or nationally recognized statistical rating

12         organization in the sale of securities or commodities

13         within or from the State of New York in any capacity.

14                   There would also be applicable surcharges and

15         a DNA fee.

16                   Do you understand this commitment as to your

17         sentence?

18                   THE DEFENDANT:  I do.

19                   THE COURT:  On the basis of the statements

20         made by the Attorney General, including the statements

21         concerning proof issues and the amount of money being

22         paid in this case and the ban on the securities, the

23         Court will agree to the request that you be sentenced in

24         this fashion.

25                   Other than this commitment, has anyone made

1      any different promises to you?

2                  THE DEFENDANT:  No, sir.

3                  THE COURT:  Do you also understand that if you

4      don't pay the restitution in the manner set forth by the

5      Assistant Attorney General Mr. Vargas within the three

6      year conditional discharge period, you will violate that

7      conditional discharge?  If you are found to have

8      violated that conditional discharge, you will be

9      sentenced to seven years incarceration.

10                 Do you understand that?

11                 THE DEFENDANT:  I do.

12                 THE COURT:  Do you also understand if you

13     violate the agreement and the part of the conditional

14     discharge dealing with your securities ban I just went

15     through with you, you will be sentenced to seven years,

16     if you are found to have violated that?

17                 Do you understand that?

18                 THE DEFENDANT:  Yes.

19                 THE COURT:  Is all that acceptable to you?

20                 THE DEFENDANT:  It is.

21                 THE COURT:  Other than these promises, has

22     anyone made any different promises to you?

23                 THE DEFENDANT:  No, your Honor.

24                 MR. HUEBNER:  Your Honor, may we approach?

25                 MR. KOEVARY:  Your Honor, may we approach for

1          a moment?

2                    THE COURT:  Sure.

3                    (Off-the-record discussion held at the bench.)

4                    THE COURT:  Sir, I indicated if you violate

5          the conditional discharge you would be sentenced to

6          seven years.  You would be sentenced to up to seven

7          years.

8                    Do you understand that?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  I suggest really strongly you

11         don't violate the conditional discharge.

12                   Do you understand that?

13                   THE DEFENDANT:  I do.

14                   THE COURT:  Which count is the grand larceny

15         count?

16                   MR. VARGAS:  It is count four.

17                   THE COURT:  Between on or about May 3rd, 2013

18         and September 26, 2016, in the County of Nassau, State

19         of New York and elsewhere, did you wrongfully take and

20         steal property from Thomas Eisenberg?

21                   THE DEFENDANT:  I did.

22                   THE COURT:  Did you intend to deprive Thomas

23         Eisenberg of that property?

24                   THE DEFENDANT:  I did.

25                   THE COURT:  Did that property exceed $3,000?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And was that stolen property money

3     invested into Cardis?

4          THE DEFENDANT:  Yes.

5          THE COURT:  As to what's now count 21, between

6     on or about January 24, 2013 and December 27, 2017, in

7     the County of Nassau, State of New York and elsewhere,

8     did you intentionally engage in a scheme constituting a

9     systematic ongoing course of conduct with the intent to

10    obtain property from ten or more persons by false

11    pretenses, representations or promises?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Did those ten or more persons

14    include Leslie Edelman, Kimber Manufacturing,

15    A. Edelman Trust, H. Edelman Trust, S. Edelman Trust,

16    Charles Alpert, Cam Co., David Kippen, Barry McDonald,

17    Thomas Eisenberg, Benjamin Brafman, Alpine Vista Fund,

18    Laurence Sorkin, Matthew Ackerman/Knott Direct Inc.,

19    John Wagner, Lawrence Rein, Elie Rieder/V-1 LLC, Daniel

20    Feinberg, and Brian LeBlanc, among others?

21         THE DEFENDANT:  Yes.

22         THE COURT:  In engaging in such scheme did you

23    use false pretenses, representations or promises?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Using such means did you obtain

1         property from one or more persons while engaged in

2         inducing or promoting the issuance, distribution,

3         exchange, sale, negotiation or purchase of any

4         securities or commodities?

5                   THE DEFENDANT:  Yes.

6                   THE COURT:  Was Thomas Eisenberg one such

7         person from whom you obtained property?

8                   THE DEFENDANT:  Yes.

9                   THE COURT:  Now, everything you told me today

10        has been under oath.  Is everything you said the truth?

11                  THE DEFENDANT:  Yes.

12                  THE COURT:  The Court is satisfied that the

13        defendant understands the nature of the charges, the

14        nature of the plea and the possible consequences of the

15        plea, that he's discussed his legal rights with his

16        attorney and that he understands he's waiving his

17        constitutional rights.

18                  The Court is further satisfied the defendant

19        has acknowledged his guilt and the Court believes that

20        it is in the interest of justice to accept this plea

21        from this defendant.

22                  THE CLERK:  Aaron Fischmann, do you now wish

23        to withdraw your previously entered plea of not guilty

24        and enter a plea of guilty to grand larceny in the third

25        degree and now added count 21, fraudulent practices in

```
 1          respect to stocks, bonds and other securities, in full

 2          satisfaction of indictment 70327-20?

 3                    THE DEFENDANT:  Yes.

 4                    THE CLERK:  How do you plead?

 5                    THE DEFENDANT:  Guilty.

 6                    THE CLERK:  Guilty plea is entered.

 7                    THE COURT:  Are the People asking the Court to

 8          order a presentence report?

 9                    MR. VARGAS:  No, your Honor.  The People are

10          requesting that the presentence report be waived.

11                    THE COURT:  Defense, are you requesting I

12          order a presentence report?

13                    MR. McNALLY:  We are not, your Honor.

14                    MR. HUEBNER:  No, your Honor.

15                    THE COURT:  In as much as both sides have

16          waived the presentence report, do the People wish to be

17          heard before I impose sentence?

18                    MR. VARGAS:  No, your Honor.  Just want to

19          bring to the Court's attention the waiver of appeal.

20                    THE COURT:  He waived his appeal on the

21          record.  If you want to execute a document, you can do

22          that as well.

23                    MR. VARGAS:  Handing to counsel.

24                    THE COURT:  While counsel is looking at that,

25          just so that the record is clear, I advised counsel off
```

mb

1          the record of the fact that Mr. Gordon called chambers.

2          I didn't speak to him, he spoke to my chambers, and I

3          did not receive any correspondence to show counsel or

4          any statement to show counsel.  I just told them in

5          court.

6                    Acknowledged?

7                    MR. VARGAS:  Yes, acknowledged.

8                    MR. McNALLY:  That's the defendant's

9          understanding, your Honor.

10                   MR. HUEBNER:  Thank you.

11                   THE COURT:  Do the People wish to be heard any

12         further?

13                   MR. VARGAS:  Just to place on the record that

14         I have received the two-page waiver of appeal and it

15         appears that it has been executed by Mr. Fischmann and

16         his attorneys Mr. McNally and Mr. Huebner.

17                   I'm not sure if your Honor will go over this

18         in regards to the restitution order, but just that the

19         defendant will agree to waive restitution hearing since

20         we have an agreement in regards to the restitution

21         payment.

22                   THE COURT:  Sir, do you waive any restitution

23         hearing?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  And agree to pay this restitution

mb

1        in the manner you've set forth?

2                    THE DEFENDANT:  I do.

3                    MR. HUEBNER:  Your Honor, I would like to

4        place on the record I'm now handing attorney escrow --

5                    THE COURT:  I haven't sentenced him yet in the

6        first instance.

7                    MR. HUEBNER:  Sorry.  Thank you.

8                    THE COURT:  Does defense counsel wish to be

9        heard?

10                    MR. McNALLY:  No, your Honor.

11                    THE COURT:  Would you like to be heard,

12        Mr. Huebner, before I ask the client if he wants to be

13        heard?

14                    MR. HUEBNER:  No, your Honor.

15                    THE COURT:  Sir, do you wish to be heard

16        before I impose sentence on you?

17                    THE DEFENDANT:  No.

18                    THE COURT:  Sentence is as follows:

19                    On count one, three-year conditional discharge

20        with two million dollars in restitution.  One million

21        dollars to be paid today to the Attorney General's

22        Office, one million dollars to be paid over the course

23        of the conditional discharge in the manner set forth by

24        Mr. Vargas.

25                    There is also a three-year ban.  The defendant

1       during the terms of the conditional discharge is

2       enjoined from acting as or being associated with any

3       broker-dealer, investment adviser, municipal securities

4       dealer, municipal adviser, transfer agent or nationally

5       recognized statistical rating organization in the sale

6       of securities or commodities within or from the State of

7       New York in any capacity for a period of three years

8       from today.  That's on count four.

9               There's also a $300 surcharge, $25 CVA, $50

10      DNA fee.  Defendant has until February 14, 2023 to make

11      those surcharge payments.

12              On count 21 there is a three-year conditional

13      discharge.  Also, as part of that conditional discharge,

14      the same restitution paid in the same manner and the

15      same surcharge payment.

16              Failure to pay the restitution in that manner,

17      failure to abide by the securities ban in that manner,

18      failure to obey any of the other conditions of the

19      conditional discharges will result in a violation of the

20      conditional discharge.  And they run concurrent.

21      Conditional discharge and all the associated obligations

22      run concurrent.

23              Finally, Mr. Fischmann, do you own or possess

24      any guns, rifles or firearms?

25              THE DEFENDANT:  No, I don't.

1                  THE COURT:  There is a $50 DNA fee, there is a

2       court order for DNA which I've signed.

3                  MR. HUEBNER:  Your Honor --

4                  THE COURT:  Go ahead.

5                  MR. HUEBNER:  Your Honor, if I may, I will

6       present in open court from my attorney trust account the

7       funds that the Attorney General vetted that have been

8       placed in my attorney trust account and those funds are

9       in the sum of one million dollars.  I am now handing

10      over to the People by check from my attorney escrow

11      account in the amount of one million dollars, payable to

12      the Office of the New York State Attorney General, check

13      dated today, December 15, 2022, for restitution, the

14      first branch of Mr. Fischmann's restitution on this

15      matter, your Honor, indictment 636N of 2020.  I'm

16      handing it over to Mr. Vargas.

17                 Mr. Vargas, can you please acknowledge this.

18                 MR. VARGAS:  Yes, your Honor.

19                 Briefly, for the record I'm acknowledging

20      receipt of check number 2353, which is drawn from a

21      J.P. Morgan Chase Bank IOLA trust account for the amount

22      of one million dollars, dated December 15, 2022, from

23      Levi Huebner & Associates, made out to the Office of the

24      New York State Attorney General.

25                 THE CLERK:  Let the record reflect the

1     defendant has signed and received a copy of the sentence

2     order for conditional discharge.

3             MR. HUEBNER:  Does your Honor need to make an

4     order regarding the release of the bail funds?

5             THE COURT:  No.  It is by operation of law.

6             MR. HUEBNER:  I would like to thank your

7     Honor's staff and your Honor for going past the court

8     hours.  It is after five o'clock, and I wanted to thank

9     everybody very much, sincerely.

10            MR. McNALLY:  Your Honor, as I understand bail

11    is exonerated and Mr. Fischmann's passport will be

12    released.

13           THE COURT:  It is by operation of law.

14           (Proceedings concluded.)

15         *   *   *   *   *   *   *

16         I hereby certify the foregoing transcript is a

17    true and accurate transcription from my stenographic

18    notes.

19

20                 *Mickey Brymer*
                  Mickey Brymer, RPR

21                Senior Court Reporter

22

23

24

25

**EXHIBIT 8**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES,
Attorney General of the State of New York,

                            Plaintiff,

                -against-

AARON D. FISCHMAN, STEPHEN BROWN,
STEVEN HOFFMAN, LAWRENCE KATZ,
SETH ROSENBLATT, CARDIS ENTERPRISES
INTERNATIONAL N.V., CARDIS ENTERPRISES
INTERNATIONAL (U.S.A.) INC.,
CARDIS ENTERPRISES INTERNATIONAL B.V.,
CHOSHEN ISRAEL LLC, LAW OFFICES OF
LAWRENCE KATZ, ESQ. PLLC, LAW OFFICES OF
LAWRENCE KATZ P.C., and ZERP LLC,

                        Defendants,

                -and-

NINA FISCHMAN, RAFAELA FISCHMAN,
ALEXANDER FISCHMAN, STUART FISCHMAN,
ANNE SHIMANOVICH, and ETHEL WEISSMAN,

                        Relief Defendants.

-------------------------------------------------------------------X

**FIRST AMENDED
COMPLAINT**

Index No. 452353/2018

1.      Plaintiff, The People of the State of New York, by Letitia James, Attorney

General of the State of New York, alleges the following against:  (a) Defendants Aaron D.

Fischman, Stephen Brown, Steven Hoffman, Lawrence Katz, Seth Rosenblatt, Cardis Enterprises

International N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises

International BV, Choshen Israel, LLC, Law Offices of Lawrence Katz, Esq. PLLC, Law Offices

of Lawrence Katz P.C., and Zerp LLC (the "Defendants"); and (b) Relief Defendants Nina

Fischman, Rafaela Fischman, Alexander Fischman, Stuart Fischman, Anne Shimanovich, and

Ethel Weissman (the "Relief Defendants").

## NATURE OF THE ACTION

2.      From 1998 to present, Defendant Aaron D. Fischman operated the Cardis entities

– Defendant Cardis Enterprises International N.V. ("Cardis NV"), Defendant Cardis Enterprises

International BV ("Cardis BV"), and Defendant Cardis Enterprises International (U.S.A.) Inc.

("Cardis USA") (together, "Cardis" or the "Company").

3.      Cardis claimed to possess patented and proprietary technology to make low-value

credit card transactions less expensive for merchants.  Credit card transactions include a fixed

fee, regardless of the size of the transaction, which has the effect of severely depressing margins

on low-value transactions.  For example, a $1 credit card purchase at a convenience store might

incur a fixed processing cost of $0.10 for the store.  Cardis claimed that its technology allowed

merchants to aggregate low-value transactions, so that this fixed fee would be incurred less

frequently.

4.      Cardis solicited tens of millions of dollars from investors by selling stock in

Cardis NV.  Although Cardis did not maintain full shareholder records, Defendant Fischman has

represented that Cardis raised over $70 million, and a Cardis-maintained share registry reflects at

least $30 million in stock sales since 2011.  Cardis also raised significant funds through loans.

5.      Cardis was a fraud.  It raised money through a steady drumbeat of false

representations that:  (1) it was on the verge of monetizing its technology through agreements

with prominent companies; and (2) an initial public offering ("IPO") or buyout of Cardis was on

the horizon.  All the while, Defendant Fischman diverted investor moneys to enrich himself,

family members, and favored charities.  While the particulars of the fraud varied, these acts and

practices were part of a single, continuing scheme to deceive investors and enrich Defendant Fischman. Defendant Fischman was aided in these efforts by the other Defendants.

6.     Many Cardis investors were particularly vulnerable to Defendants' fraud because they were members of a close-knit religious community, to which many of the Defendants also belonged, located in the New York metropolitan area.

7.     Although centered in New York, Cardis' fraud was far-reaching. It ensnared investors with relatively modest means, as well as individuals with substantial fortunes. Cardis deceived investors of all levels of sophistication, including highly sophisticated business people and attorneys. And it lured many investors to make repeat investments in the Company.

## PARTIES

8.     Plaintiff brings this action by and through Attorney General Letitia James.

9.     The Attorney General is the chief law enforcement officer of the State of New York and is charged by law with protecting the integrity of the business and securities markets within New York, as well as the economic health and well-being of investors who reside or transact business in the State.

10.     The Attorney General is authorized to bring this action and to assert the causes of action set forth below pursuant to General Business Law § 352 et seq. (the "Martin Act") and Executive Law § 63(12), and under the common law pursuant to the Attorney General's *parens patriae* authority.

11.     Defendant Cardis BV was incorporated in the Netherlands in 1996.

12.     Defendant Cardis NV was incorporated in Curaçao under the former laws of the Netherlands Antilles in or around 2006. The principal place of business of Cardis NV is the

Country of Curaçao, a Lesser Antilles island that is a constituent country of the Kingdom of the
Netherlands.

13.    Defendant Cardis USA was incorporated in Delaware on June 20, 2013 and
registered to do business in New York State on June 27, 2013.  At all relevant times, its principal
place of business was located at 445 Central Avenue, Cedarhurst, New York, 11516, and it was a
wholly owned subsidiary of Cardis NV.  The current entity status of Cardis USA for the conduct
of business in New York State is "suspended," according to the website of the Division of
Corporations of the New York State Department of State.

14.    The Cardis entities did not observe customary corporate formalities.  Instead,
they:  (1) had no independent capitalization; (2) shared personnel; (3) were dominated by
Defendant Fischman, who controlled the terms of deals with investors, the use of the proceeds,
and Cardis' third-party relationships; and (4) were employed to further the fraud conceived by
Defendant Fischman.  For that reason, the Cardis entities are simply referred to as "Cardis"
throughout this Complaint.

15.    Defendant Choshen Israel LLC ("Choshen") is a New York limited liability
company formed on January 4, 1999, with its principal place of business at relevant times at 445
Central Avenue, Cedarhurst, New York 11516.  Choshen is controlled by Defendant Fischman,
and Defendant Fischman received payments from Cardis through Choshen.  Many investors'
investments in Cardis were through subscription agreements with Choshen.

16.    Defendant Law Offices of Lawrence Katz, Esq. PLLC is a New York professional
service limited liability company formed on February 29, 2012 by Defendant Katz for his
practice of law.  Prior to becoming inactive on January 25, 2012, Law Offices of Lawrence Katz

P.C. was the law firm through which Defendant Katz engaged in the fraudulent and illegal acts and practices described herein.

17.     Defendant Zerp LLC is a New York limited liability company, formed by Defendant Steven Hoffman and registered to his home in Lawrence, New York.  It received payments on Defendant Hoffman's behalf.

18.     Defendant Aaron D. Fischman was, at all relevant times, a principal, officer, director, and/or control person of Cardis NV, Cardis USA, and Cardis BV.  Defendant Fischman formally served as Cardis' Chief Executive Officer until 2016 but continued to exercise control over Cardis thereafter.

19.     Defendant Stephen Brown was, at relevant times, the most senior financial executive at Cardis and was variously described as its Chief Financial Officer, Vice President of Finance, and/or Senior Financial Executive.

20.     Defendant Seth Rosenblatt was, at relevant times, a director of a Cardis subsidiary, Cardis R&D Ltd., and a director of Choshen.

21.     Defendant Steven Hoffman was, at relevant times, an agent of Cardis NV authorized by that company to offer and sell its securities to the public in and from New York State.

22.     Defendant Lawrence Katz, Esq. is, and was at relevant times, a member of the bar of the State of New York.  At relevant times, Defendant Katz maintained Interest on Lawyer Account ("IOLA") bank accounts for the benefit of Defendants Cardis NV and Cardis USA. Defendant Katz deposited investor moneys into his firms' bank accounts in connection with his participation in the fraudulent investment schemes described herein.

23.     Relief Defendant Nina Fischman is the spouse of Defendant Fischman.

24.     Upon information and belief, the other Relief Defendants – Rafaela Fischman,

Alexander Fischman, Stuart Fischman, Anne Shimanovich, and Ethel Weissman – are all family

members of Defendant Fischman.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over the subject matter of this action, personal

jurisdiction over the Defendants and Relief Defendants, and authority to grant the relief

requested pursuant to General Business Law § 352 et seq., Executive Law § 63(12), and the

common law.

26.     Pursuant to C.P.L.R. § 503, venue is proper in New York County, because

Plaintiff resides in that county, and because a substantial part of the events and omissions giving

rise to the claims occurred in that county.

## FACTUAL ALLEGATIONS

27.     Since 1998, Cardis obtained tens of millions of dollars from investors through

sales of stock, warrants, and convertible notes – all of which are securities under GBL § 352(1).

Cardis offered and sold these securities to more than one hundred investors.

28.     Cardis was tightly controlled by Defendants Fischman, Brown, Katz, Hoffman,

and Rosenblatt, who worked together in a small office space, on a single floor, in Cedarhurst,

New York.

29.     Defendant Fischman was a founder of Cardis and ran it through his own

company, Defendant Choshen.  Defendant Fischman personally raised significant funds for

Cardis based on false representations and omissions, prepared key investor marketing materials

that were also false, and was the primary decision maker in Cardis' pursuit of revenue generating

third-party relationships.

6

23-35660-cgm    Claim 5    Filed 10/18/23    Pg 87 of 139

30.     Defendant Katz was Cardis' in-house counsel and controlled a number of Cardis

bank accounts, including Cardis' principal bank account, which was in the name of his law firm.

Defendant Katz abused this role by aiding in Defendant Fischman's theft from the Company and

by diverting Company moneys to himself.

31.     Defendant Brown was Cardis' senior financial officer.  His principal role at

Cardis was to draft and send investor update letters, which contained a host of false statements

and omissions, based on information provided by Defendant Fischman.  Many Cardis investors

made additional investments in Cardis in reliance on these letters.

32.     Defendant Hoffman was one of Cardis' principal fundraisers raising, upon

information and belief, over $20 million from investors.  Defendant Hoffman operated on a

commission basis with investment-based commissions directed to him or his company,

Defendant Zerp LLC.  Defendant Hoffman relied on the investor updates prepared by Defendant

Brown and information from Defendant Fischman – both of which contained material

misstatements and omissions – in making his pitches to investors.

33.     Defendant Rosenblatt operated under the direction of Defendant Fischman and

had significant responsibilities in interacting with investors.  Defendant Rosenblatt distributed

false investor update letters prepared by Defendant Brown, which Defendant Rosenblatt was also

on the distribution list to receive.  Defendant Rosenblatt also frequently interacted with investors

via email and telephone.

34.     Cardis induced investors to purchase shares of stock in Defendant Cardis NV by

means of material misstatements and omissions of material facts in both oral and written

communications, including, but not limited to, emails, text messages, telephone calls,

PowerPoint presentations, investor update letters, subscription agreements, and private

7

placement memoranda.

35.     These misrepresentations and omissions centered on:  (1) Cardis' business prospects; (2) Defendant Fischman's exploitation of Cardis for personal benefit; and (3) Cardis' key personnel.

36.     The Defendants were obligated, and failed, to correct or update these misleading statements and omissions.  Instead, since at least 2012 and continuing to the present, Defendants reaffirmed their false statements and omissions and covered up their malfeasance, even when confronted by concerned investors.

## I.     Defendants' Misrepresentations and Omissions Concerning Cardis' Business Prospects

37.     As detailed below, Cardis misrepresented its business prospects in two principal respects:  (1) Cardis falsely claimed it was on the verge of revenue-generating relationships; and (2) Cardis falsely claimed that an IPO or buyout was on the horizon.

### A.     Cardis' Third-Party Relationships

38.     As discussed above, Cardis claimed to possess proprietary technology to aggregate low-value credit card transactions.

39.     Cardis' business plan generally centered on generating revenue from third parties who participated in low-value transactions – either in the financial services industry (like banks and credit card companies) or as merchants (like convenience stores).

40.     These parties could potentially benefit from the ability of Cardis' technology lower the costs of low-value transactions in two principal ways:  (a) through increased

acceptance and use of credit cards, resulting in a net benefit to the financial services industry;
and (b) through benefits to merchants by lowering their direct costs.

41.     In turn, these third parties could compensate Cardis based on the revenue or
savings generated by Cardis' technology.  Because Cardis' technology was focused on saving
pennies on small dollar transactions, for Cardis to be successful, it would need to achieve large
scale use of its technology.

42.     Consistent with this premise, Cardis sought to develop partnerships with
prominent companies that operated on a large scale and were regularly involved in low-value
transactions, including businesses involving financial services, vending machines, online music,
parking, and convenience stores.

43.     The potential to generate revenue through these types of partnerships was equally
central in Cardis' pitch to investors.

44.     From at least 2011 to present, Cardis has presented itself to investors as being on
the verge of monetizing its technology through these types of partnerships.

45.     During that period, Cardis touted at least 15 partnerships – many with brand-name
companies – and led investors to believe that it was on the precipice of earning enormous profits.

46.     In fact, Cardis repeatedly overstated the strength of its third-party relationships,
which Cardis' business model depended upon, many of which did not advance beyond
preliminary discussions.

47.     The third parties included:  Raiffeisen Bank (Austrian Bank); Sberbank (Russian
Bank); Mastercard (financial services company); Spindle (smart vending machine company);
Roc Nation (entertainment company); LISNR (technology company); PrimaryWave
(entertainment company); PureSolo (music mobile application); All Def Digital (media

company); ByStorm Entertainment (media company); Sony Music (music company); Warner

Music (music company); Universal Music (music company); Municipal Parking Services

(provider of smart parking meter apps and other parking-related services); and Cumberland

Farms (chain of convenience stores and gas stations).

48.     Defendants' written material misstatements and omissions, which generally

tracked Defendants' oral representations, included statements concerning each of these third

parties.

49.     *Raiffeisen, Sberbank, and Others*.  On December 12, 2012, a Cardis employee

emailed a prospective investor, noting that Cardis had signed a "commercial contract with

Raiffiesen [sic] for implementation in Austria in 2012."  Cardis also stated that it had a "[s]igned

LOI" (letter of intent) and was in "contract negotiations with Sberbank – Russia (2012

implementation)."  Cardis stated further that it was in discussions or engaged with a number of

other companies.  Cardis juxtaposed these relationships with a projected profit and loss

summary, prepared by Defendant Brown, which estimated over $9 million in revenue in 2013,

$18 million in 2014, and over $1 billion in revenue by 2023.

50.     In actuality, there was no basis for these projections based on Cardis' then-

existing relationships, which were entirely preliminary in nature.  For example, Cardis'

relationship with Raiffeisen never advanced beyond a pilot program.

51.     *Spindle*.  On August 15, 2013, in a letter to investors, Defendant Brown

represented the following:  "Cardis expects to be seeing revenues from the vending machine

opportunity in its joint venture with Spindle as early as January 2014.  To understand the

enormity of this one specific opportunity, Spindle's contacts in the vending machine business

alone can give Cardis access to over one million vending machines by 2015 with Cardis' share of

the potential profit from these machines being in excess of $25M of free cash flow per year."

52.     In actuality, at the time of the letter, there was no joint venture.  Nor was there ever a joint venture between Cardis and Spindle.  Cardis and Spindle had only entered into a mutual confidentiality agreement and letter of intent.  Moreover, no work had been done to integrate Cardis' technology, and Cardis' technology was never incorporated into Spindle.

53.     *Roc Nation/LISNR.*  From February 2014 through June 2016, Defendants repeatedly represented that:  (1) Cardis had agreements with both Roc Nation and LISNR; (2) LISNR would host a Roc Nation mobile store that would embed Cardis' technology; and (3) the Roc Nation store would soon be rolled out.

54.     For example, on December 24, 2014, Defendant Rosenblatt and another Cardis employee emailed to investors a letter written by Defendant Brown, based on information originally provided by Defendant Fischman, which represented the following:  "ROC NATION - expected to go live January/February 2015 . . . Cardis is to be the official payment system for Roc Nation's on-line store and mobile apps showcasing 20 of Roc Nation's artists, including Rianna [sic] and JCole.  We have done a Beta Pilot of the site and we recently received a demo which has been successfully reviewed by our technical staff.  We received comments from Roc Nation on the final contract are [sic] we are close to finalizing."

55.     In actuality, Cardis never signed any agreement with Roc Nation, and its agreement with LISNR was solely a statement of work to create a mobile application.  Neither LISNR nor Roc Nation ever agreed that LISNR would host a Roc Nation mobile store.  The Roc Nation/Cardis store was never close to launching.  LISNR never even released the application to Cardis because Cardis failed to pay LISNR for its work.

56.     *Sony, Warner, and Universal.*  From March 2014 to December 2014, Defendants

represented in written communications that Cardis would soon finalize agreements with each of the three major music labels: Sony, Warner, and Universal. For example, in May 2014, Defendant Brown claimed that Cardis would be finalizing its agreement with all three major labels within the following 30 to 60 days.

57.    In actuality, Cardis did not advance beyond high-level preliminary discussions with these music labels, and there was no basis to represent that Cardis would soon finalize agreements with the labels. For example, at the time of Defendant Brown's representation, only one introductory meeting between Cardis and each music company had taken place, and the parties had not even executed non-disclosure agreements.

58.    *Mastercard.* From March 2014 through December 2014, Defendants repeatedly represented in written communications that Cardis' technology would be integrated into Mastercard, that Mastercard believed that Cardis was central to its ambitions in the music industry, and that Mastercard was contemplating a significant investment in Cardis.

59.    For example, on May 6, 2014, Defendant Fischman wrote: "The head of MC global endorsements told me that music is the cornerstone of MC's global strategy and that Cardis is strategy [sic] to achieve this . . . We got something hot!!"

60.    In actuality, Cardis and Mastercard never materially advanced beyond technical discussions as to the feasibility of integrating Cardis' technology into Mastercard. Mastercard did not view Cardis as key to its strategy in the music industry. In fact, a partnership with Cardis could have jeopardized Mastercard's significant relationship with Apple because Cardis sought to create a Roc Nation music store that would compete with Apple's iTunes store. Mastercard never contemplated a financial investment in Cardis.

61.    *PureSolo.* In November and December 2014, Defendants Brown and Rosenblatt

12

sent letters to investors reporting that Cardis was finalizing an agreement with PureSolo – a karaoke mobile application company. The letters represented that Cardis would be "the exclusive payment system for PureSolo who projects to sell a minimum of 12 Million recordings per annum at a price of $1.95 per transaction."

62. In actuality, these representations were false. First, there was no agreement between Cardis and PureSolo for Cardis to be "the exclusive payment system for PureSolo." PureSolo was only obligated to use Cardis' technology in PureSolo applications to the extent that Cardis was providing the marketing funds for that particular application. Additionally, the agreement only covered Android devices and did not include Apple IOS devices. Second, PureSolo's planned price point was $0.99 per transaction, not $1.95 per transaction, as Defendant Brown falsely represented. Third, PureSolo did not project a figure as high as 12 million sales per year.

63. *ByStorm*. In November and December 2014, Defendants Brown and Rosenblatt sent letters to investors stating that Cardis was finalizing an agreement with ByStorm Entertainment to be its exclusive payment system and would "go live in late January 2015."

64. In actuality, Cardis was not finalizing any agreement with ByStorm to be its exclusive payment system. The companies only had one introductory meeting.

65. *PrimaryWave*. In November and December 2014, Defendants Brown and Rosenblatt sent letters to investors reporting: "Cardis is in advanced negotiations to become the payment processor for Primary Wave."

66. In actuality, PrimaryWave never entered into any negotiations with Cardis. At the time of these representations, Cardis and PrimaryWave had held only a single meeting, and PrimaryWave was waiting for Cardis to demonstrate Cardis' technology to PrimaryWave. That

13

demonstration never occurred, and there are no e-mails between the parties after November 7, 2014.

67.    *All Def Digital*.  On or about December 24, 2014, Defendant Rosenblatt emailed to investors a letter written by Defendant Brown, representing the following:  "ALL DEF DIGITAL (ADD) – expected to go live in February 2015[.]  Cardis is finalizing its agreement to be the exclusive payment system for All Def Digital, who is the pioneer record label in its revolutionary approach to market digital videos online."

68.    In actuality, nothing was expected to go live in the next two months, and Cardis was not finalizing any agreement with All Def Digital.  All Def Digital was not even in the retail business.

69.    *Municipal Parking Services.*  From June 2016 through September 2016, Defendants Fischman and Hoffman made written representations that Cardis' technology would soon be, or had already been, embedded in Municipal Parking Services' smart parking meters in Cedarhurst, New York.  For example, on September 6, 2016, in an email to a Cardis investor, Defendant Fischman wrote:  "The meters go live within 30 days so revenue will begin."

70.    In actuality, Cardis never rolled out its technology in Cedarhurst parking meters and was never on the verge of doing so, particularly because the town never approved the use of Cardis' technology and because MPS required, and Cardis failed to obtain, compliance with a payment industry protocol called PCI.

71.    *Cumberland Farms*.  From August 2016 to January 2017, Defendants Fischman, Brown, and Hoffman represented that Cardis would soon enter into a revenue-generating relationship with Cumberland Farms.

72.    In actuality, Defendants had no basis in August 2016 – or ever – to represent that

14

a deal with Cumberland Farms was in an advanced stage.  Cardis had only a single meeting with Cumberland Farms, which did not occur until November 30, 2016.  Thereafter, Cumberland Farms did not pursue a deal with Cardis.

73.     These third-party relationships were material to investors because, as described above, Cardis' business model depended on:  (a) partnering with third parties; (b) those third parties generating revenue or savings through the use of Cardis' technology; and (c) Cardis earning revenue based on the performance of these third parties.

**B.     IPO or Buyout**

74.     In addition to misrepresenting its prospects of revenue-generating partnerships, Cardis also falsely represented that an IPO or buyout of Cardis was on the near-term horizon.

75.     From in or around 2011 to present, Defendants repeatedly represented that an exit opportunity was around the corner, including by offering specific estimates that an exit was expected, with estimates ranging from a few months to 12 months to two years.

76.     On October 18, 2013, Defendant Rosenblatt wrote the following to an investor:  "We [Cardis] now believe that the company will be doing an IPO within the next twelve months."

77.     On January 22, 2014, Defendant Brown wrote the following:  "The exit strategy remains the same – an IPO or merger.  Just becoming a major process in the music and mobile payment industry alone can give us a multiple billion dollar valuation and is very achievable.  We think we can become a major force in the industry by the end of 2014."

78.     In February 2014, Defendant Fischman told an investor that he expected an IPO in 12 months at 10 to 30 times the value at which Cardis stock was then being sold.

79.     On May 25, 2014, Defendant Brown wrote the following to an investor:  "Most

important to our long term shareholders, the expanding opportunity with Mastercard can lead to the most diverse and greatest opportunities both business-wise and to a possible investment which hopefully can lead to a final exit down the road."

80.     In August 2018, Defendant Fischman texted an investor that an IPO would occur in the next week.

81.     In fact, there was never an exit opportunity on the horizon.  Moreover, the notion of an exit opportunity was far-fetched for several reasons.

82.     First, Cardis failed to maintain appropriate books and records that would be necessary for these types of transactions.  Cardis did not maintain a comprehensive share registry beyond an incomplete handwritten shareholder registry on a legal notepad.  Many Cardis investors never even received stock certificates.  Similarly, Cardis failed to maintain consolidated company financial statements, or even a simple revenue and expense ledger.

83.     Second, Cardis generally failed to develop ongoing revenue streams and was instead dependent on new investor moneys.

84.     Third, any exit transaction would likely necessitate a more thorough review of Cardis' business.  That review would demonstrate that Cardis' representations about its relationships were false and that Defendant Fischman was siphoning huge sums of money for himself.

85.     These misrepresentations concerning exit opportunities were material to Cardis investors because they represented an opportunity for the investors to profit from their investments.

16

## II.     Defendant Fischman's Exploitation of Cardis

86.     While Cardis raised tens of millions of dollars based on its fraudulent misrepresentations, Defendant Fischman treated the Company as his own personal piggy bank.

87.     First, Defendant Fischman, with the assistance of Defendant Katz, who controlled the principal Cardis bank account, siphoned off huge sums to enrich Defendant Fischman personally.

88.     Cardis and Defendant Fischman represented, and investors understood, that investor funds were needed, and were to be utilized, for the development of Cardis' technology and third-party relationships.

89.     They failed to disclose, however, that Defendant Fischman was receiving huge sums to manage the Company, receiving at least $3 million through his closely-controlled company, Defendant Choshen, from January 2011 to present.

90.     There is no written agreement between Choshen and Cardis that would justify these payments, and the payments are irregular in amount, frequency, and timing.  Upon information and belief, Defendant Fischman simply disbursed moneys to himself as necessary to support his own lifestyle.

91.     Second, Cardis, Choshen, Defendant Fischman, Defendant Rosenblatt, and Defendant Hoffman were all aware of, and failed to disclose that, Defendant Fischman repeatedly gave away Cardis stock to placate disgruntled investors in other failing companies backed by Defendant Fischman, thereby diluting the value of Cardis investors' stock without their knowledge.

92.     For example, Defendant Fischman gave his movie production partner $40,000 worth of Cardis shares in exchange for the partner's $40,000 investment in the movie, which failed at the box office.

93.     Similarly, Defendant Fischman directed Defendant Hoffman to tell an investor that Defendant Fischman would give the investor free Cardis stock in exchange for the investor's failed investment in another Fischman-related company.

94.     Likewise, on March 25, 2014, Defendant Fischman gave a Cardis investor nearly two million Cardis shares for zero consideration in exchange for the investor's June 2008 investment in another Fischman-related company, which ultimately failed.

95.     And, on August 28, 2016, a Cardis investor emailed Defendant Fischman, asking the following:  "[R]egardless of a new investment, [are you] willing to offer the equivalent shares in Cardis to cover our disappointing investment in" another Fischman-related company. Defendant Fischman responded as follows:  "We will issue the replacement equity for [the company], need to determine price."

96.     Third, Defendant Fischman and Defendant Katz diverted Cardis moneys to pay for Defendant Fischman's personal credit card expenses, which were substantial, and catering expenses for Defendant Fischman's personal events.   Defendant Rosenblatt was aware of Defendant Fischman's use of a corporate credit card for personal purposes because the card was issued in Defendant Rosenblatt's name.

97.     Fourth, Defendant Fischman and Defendant Katz engaged in the conversion of investor funds by fraudulently and illegally taking Cardis moneys and distributing them to others who had no right to the money.

98.    This includes the Relief Defendants who, upon information and belief, are Defendant Fischman's family members.

99.    Relief Defendant Nina Fischman received at least $2 million of Cardis' investor moneys.

100.    Relief Defendant Stuart Fischman received at least $71,000 of Cardis' investor moneys.

101.    Relief Defendant Rafaela Fischman received least $19,000 of Cardis' investor moneys.

102.    Relief Defendant Alexander Fischman received at least $36,500 of Cardis' investor moneys.

103.    Relief Defendant Anne Shimanovich received at least $280,000 of Cardis' investor moneys.

104.    Relief Defendant Ethel Weissman received at least $129,000 of Cardis' investor moneys.

105.    Furthermore, Defendants Fischman and Katz directed more than $1 million in investor moneys to religious charitable organizations.

106.    Finally, in addition to aiding and abetting Defendant Fischman's conversion of investor funds, Defendant Katz also converted investor funds for his own benefit.

107.    From in or about March 2011 to in or about May 2016, Defendant Katz transferred more than $2.5 million from a Defendant Katz-controlled IOLA account at Bank of America, in which Cardis' investor moneys were deposited, to Defendant Katz's accounts maintained at Signature Bank, JPMorgan Chase, and HSBC Bank USA.  The transfers included: (1) $50,000 to a Defendant Katz-controlled account at Signature Bank; (2) more than $750,000

to Defendant Katz-controlled accounts at JPMorgan Chase; and (3) more than $1.7 million to

Defendant Katz-controlled accounts at HSBC Bank USA. These transfers were frequently used

to fund Defendant Katz's own personal expenses such as groceries, restaurants, and clothes.

108.     These misrepresentations and omissions were material to investors because they

bore on the integrity of key Company personnel, the mismanagement of the company and lack of

meaningful financial controls, and because investors believed their moneys were going towards

the development of the Company and not the personal enrichment of its personnel.

**III.     Defendants' Key Personnel**

109.     Defendants also made misrepresentations and omissions concerning key Cardis

personnel.

110.     First, Defendants Cardis, Choshen, and Fischman failed to disclose Defendant

Fischman's problematic history in the securities industry.

111.     Specifically, they failed to disclose that, in 1995, Defendant Fischman was

permanently barred by the National Association of Securities Dealers ("NASD") from

associating with any member of NASD in any capacity.[1]  At that time, NASD was a securities

industry self-regulatory organization and was one of the predecessors of the Financial Industry

Regulatory Authority, Inc. ("FINRA").  Defendant Fischman's bar was part of a settlement of

NASD allegations that he had:  manipulated the price of a penny stock; failed to provide required

risk disclosure statements to customers prior to effecting trades in that penny stock; failed to

provide the inside bid and ask quotations for the penny stock; failed to disclose the compensation

to be received by his firm and his firm's associated persons; and failed to appear and provide

testimony in connection with the investigation.

---

[1] *See* https://files.brokercheck.finra.org/individual/individual_1391938.pdf.

112.    This information would have been significant to investors because it bore on the integrity of Cardis' principal officer and because Cardis was itself a penny stock.

113.    Second, Defendants Cardis, Fischman, Brown, Hoffman, and Rosenblatt also misrepresented the status of Defendant Brown.

114.    Defendant Brown was variously touted as serving as the Chief Financial Officer, Vice President of Finance, and/or Senior Financial Executive, but he did not perform many of the core duties generally associated with these senior finance positions.  For example, Cardis did not maintain:  (i) a formal share registry; (ii) a basic income statement; or (iii) comprehensive records of its debts and obligations.

115.    Defendant Brown's true role would have been significant to an investor. Defendant Brown was personally highly regarded for his prior work as a senior executive at a major public company, as well as for being a significant charitable donor in the Long Island communities in which Defendants lived and transacted business.  Defendant Brown's titles created the impression that he was highly involved with Cardis' finances, although he was not, and that Cardis was observing traditional corporate financial formalities, which it was not.

## IV.    Defendants' Failure to Correct or Update

116.    Defendants failed to correct or update these misleading statements and omissions. Cardis never told investors the truth that these third-party relationships were not as advanced as claimed, that Cardis was not on the verge of monetization, and that no exit opportunity was on the horizon.  Nor did Defendants disclose Defendant Fischman's improper use of Company moneys.  In fact, on multiple occasions, when confronted with claims of malfeasance, Defendants reaffirmed the misrepresentations and omissions.

21

117.    In summer 2012, Cardis investors raised concern as to "what funds have been
spent to date trying to get the Company off the ground," including "[w]hat compensation" was
received by the officers, the "hype that [investors] received at the time of investment," and that
Cardis was a "ponzi scheme." Defendant Brown, Defendant Rosenblatt, and others met with
Cardis investors to dissuade them from these concerns.

118.    In July 2014, a Cardis investor wrote Defendant Fischman, Defendant Hoffman,
and Defendant Rosenblatt, raising his concern that multiple investors had called him "to inquire
about whether I know anything about the operation you guys are running, implying that they
believe that you guys are involved in a real fraud." The investor noted that "[t]hese people are
getting very restless . . . because . . . you guys have been telling them you are very close to a
great deal for many years now and they no longer believe you."

119.    Defendant Brown, Defendant Rosenblatt, and Defendant Fischman then
coordinated a response dismissing the concerns as the product of a "few, minority, [sic] investors
who continue to be angry at us, mostly because their investment has not been realized to date."
They went on to reject "accusations of a PONZI scheme" as "absurd on every level." They
affirmed the accuracy of their past representations and also made additional misrepresentations
about Cardis' business prospects.

120.    On September 24, 2015, a Cardis investor emailed Defendant Brown asking for
the "latest on Cardis" and whether it was "a complete loss," while mentioning a recent investor
lawsuit. Defendant Brown, copying Defendant Rosenblatt, responded that the lawsuit claiming
fraud was "frivolous," while claiming that Cardis' relationship with Roc Nation was
"developing" and ongoing. In fact, the lawsuit had merit, and Cardis' relationship with Roc
Nation was long over.

22

121.    On February 28, 2018, a Cardis investor recorded a telephone conversation with Defendant Brown. The investor asked "what happened to the cash" investors put into Cardis. Defendant Brown responded by detailing the Company's large budget and staff, while failing to disclose the substantial misuse of investor funds. The investor also questioned Defendant Brown about various investor lawsuits against Cardis and its principals. The investor asked: "After reading those lawsuits, why should we think that the company has any future?" In response, Defendant Brown told the investor "the lawsuits were not the most credible lawsuits," attributing them to "angry investors." Defendant Brown later told the investor "none of those lawsuits have any merit to them." In fact, there was substantial merit to the investor lawsuits.

122.    These misrepresentations and omissions were material to investors because they bore directly on Cardis' viability.

## V.    INDIVIDUAL ALLEGATIONS

123.    We detail below allegations as to the key Cardis individuals.

### A.    Defendant Fischman

124.    Defendant Fischman was the mastermind behind the Cardis scheme.

125.    As described above (*see supra* at ¶¶ 28-29), Defendant Fischman controlled Cardis, along with Defendants Brown, Katz, Hoffman, and Rosenblatt. Defendant Fischman contributed to the Cardis fraud in a number of ways.

126.    First, Defendant Fischman was the overall orchestrator of the fraud. Defendant Fischman set the terms of securities transactions with investors, directed the preparation of the false content in Defendant Brown's investor update letters, and arranged for others, like Defendant Hoffman, to fraudulently solicit investors.

127.     Second, as described below, Defendant Fischman personally solicited many investors and regularly made materially false representations and omissions.

a.     Defendant Fischman regularly falsely told investors that Cardis would soon go public.  For example:

i.     Defendant Fischman induced an investor to invest $3 million by representing that Defendant Fischman would take Cardis public within six months of his investment when, in fact, there was no plan in place to take Cardis public within six months of that investment.

ii.     In February 2014, Defendant Fischman told an investor that Defendant Fischman expected an IPO in 12 months at 10 to 30 times the value at which Cardis stock was then being sold.

iii.     On August 28, 2018, a Cardis investor, with others copied, sent a text message to Defendant Fischman, asking "Aaron, now that [it] is August 28th, did we go public per our last discussion on August 20th [?]"  Defendant Fischman did not respond to the text message.  On August 30, the same Cardis investor sent Defendant Fischman another text message, asking, "Aaron, any news?"  Later that day, Defendant Fischman responded, "Trying guys.  Close !!"  The Cardis investor then asked in a text message to Defendant Fischman, "How close to going public?"  The next day, not having received a response from Defendant Fischman, the Cardis investor asked, "Any news?"  Defendant Fischman never responded to the Cardis investor.

b.     Defendant Fischman regularly falsely overstated Cardis' third-party relationships with false statements and omissions consistent with those in Defendant Brown's investor update letters.  For example:

i. On January 7, 2014, Defendant Brown e-mailed an investor, on Defendant Fischman's instruction, falsely representing that Cardis expected to close a deal with Roc Nation that month.

ii. On May 6, 2014, Defendant Fischman sent an email to a Cardis investor, stating: "The head of MC [MasterCard] global endorsements told me that music is the cornerstone of MC's global strategy and that Cardis is [the] strategy to achieve this…We got something hot!!" In actuality, Cardis and Mastercard never materially advanced beyond technical discussions as to the feasibility of integrating Cardis' technology into Mastercard. Mastercard did not view Cardis as key to its strategy in the music industry. In fact, a partnership with Cardis could have jeopardized Mastercard's significant relationship with Apple because Cardis sought to create a Roc Nation music store that would compete with Apple's iTunes store. Mastercard never contemplated a financial investment in Cardis.

iii. On October 29, 2014, Defendant Fischman e-mailed an investor with a "summary of Cardis' most advanced projects." The summary falsely claimed that a deal with RocNation would "go live" in January 2015 and that deals with ByStorm Entertainment, Primary Wave, and All Def Digital would similarly go live in the coming months. The e-mail also falsely claimed that Cardis would be "the exclusive payment system for PureSolo who projects to sell a minimum of 12 Million recordings per annum at a price of $1.95 per transaction." Each of these representations was false for the reasons discussed above.

iv. On January 5, 2015, Defendant Fischman falsely represented to an investor that "The Mastercard contract is being sent to Roc Nation for signing and this is expected to be completed within 2 weeks."

v.      On February 1, 2015, Defendant Fischman falsely represented that
"Tomorrow we are hopefully completing Master Card , Roc Nation
contract, there is even more enthusiasm from MC then [sic] before
for reasons I'll share tomorrow."  This was false because Cardis
could not reasonably expect to complete these deals in that, or any
similar, time frame.

vi.     In May 2016, Defendant Fischman falsely told an investor that
Municipal Parking Service would be rolling out Cardis-enabled
parking meters in June 2016.

vii.    On September 6, 2016, Defendant Fischman received an email
from a Cardis investor concerning the adoption of Cardis'
technology in Municipal Parking Services' smart parking meters in
Cedarhurst, New York.  The investor asked: "[D]o you expect any
revenue to come in over this six month period and if not when do
you expect revenue / cash flow positivity to commence?"  In
response, Defendant Fischman wrote the following:  "The meters
go live within 30 days so revenue will begin."  Similarly on
January 19, 2017, Defendant Fischman e-mailed the same investor
claiming that  the meters would go "live" the next week.  In reality,
Cardis never rolled out its technology in Cedarhurst parking meters
and was never on the verge of doing so, particularly because the
town never approved the use of Cardis' technology and because
MPS required, and Cardis failed to obtain, compliance with a
payment industry protocol called PCI.

viii.   On September 6, 2016, on the instruction of Defendant Fischman,
Defendant Brown sent an investor an e-mail asserting that Cardis
was "looking to raise $1M to cover [its] operating budget for the
next six months as [it] start[s] [its] deployment with MPS and
finalize[s] the Cumberland deal and start[s] its deployment."   In

26

actuality, Defendant Fischman had no basis to represent that a deal with Cumberland Farms was in an advanced stage as claimed in the e-mail. Cardis had only a single meeting with Cumberland Farms, which did not occur until November 30, 2016. Thereafter, Cumberland Farms did not pursue a deal with Cardis.

ix. On February 17, 2017, Defendant Fischman falsely conveyed to an investor that the "rollout" with Municipal Parking Services was "estimated" to result in "$25 million per annum revenue to Cardis."

c. Defendant Fischman failed to disclose to Cardis' investors that he was converting investor funds for his own benefit and for the benefit of his family members and favored charities. This information was material to investors.

i. Defendant Fischman represented, and investors understood, that investor funds were needed, and were to be utilized, for the development of Cardis' technology and third-party relationships.

ii. However, in reality, Defendant Fischman, with the assistance of Defendant Katz, who controlled the principal Cardis bank account, siphoned off huge sums of investor monies to enrich Defendant Fischman, his family members, and various charities.

1. From January 2011 to November 2015, Defendant Fischman received at least $3 million through his closely-controlled company, Defendant Choshen, in order to support his lifestyle.

2. Defendant Fischman diverted substantial investor moneys to pay for his personal credit card expenses, which were significant, and for his catering expenses for his personal events.

27

3.      Between January 2011 and May 2016, Defendant Fischman
diverted investor moneys to his family members as follows:

a.      Relief Defendant Nina Fischman received at least
$2 million of Cardis' investor moneys.

b.      Relief Defendant Stuart Fischman received at least
$71,000 of Cardis' investor moneys.

c.      Relief Defendant Rafaela Fischman received least
$19,000 of Cardis' investor moneys.

d.      Relief Defendant Alexander Fischman received at
least $36,500 of Cardis' investor moneys.

e.      Relief Defendant Anne Shimanovich received at
least $280,000 of Cardis' investor moneys.

f.      Relief Defendant Ethel Weissman received at least
$129,000 of Cardis' investor moneys.

4.      Between January 2011 and May 2016, Defendant Fischman
directed more than $1 million worth of investor moneys to
religious charitable organizations.

128.     Third, Defendant Fischman failed to disclose to Cardis investors and potential

investors that, in 1995, he and another one of Cardis' founders were permanently barred by the

National Association of Securities Dealers, Inc. ("NASD") from associating with any member of

NASD in any capacity.  At that time, NASD was a securities industry self-regulatory

organization and was one of the predecessors of the Financial Industry Regulatory Authority,

Inc. ("FINRA").  Defendant Fischman's bar was part of a settlement of NASD allegations that he

had:  manipulated the price of a penny stock; failed to provide required risk disclosure statements

to customers prior to effecting trades in that penny stock; failed to provide the inside bid and ask

quotations for the penny stock; failed to disclose the compensation to be received by his firm and

his firm's associated persons; and failed to appear and provide testimony in connection with the

investigation. This information would have been material to investors because it bore on the

integrity of Cardis' principal officer and because Cardis was itself a penny stock.

129.    Fourth, Defendant Fischman failed to disclose that he repeatedly gave away

Cardis stock to placate disgruntled investors in other failing companies backed by Defendant

Fischman, thereby diluting the value of Cardis investors' stock without their knowledge.  For

example:

a.    Defendant Fischman gave his movie production partner $40,000 worth of
Cardis shares in exchange for the partner's $40,000 investment in the
movie, which failed at the box office.

b.    Defendant Fischman directed Defendant Hoffman to tell an investor that
Defendant Fischman would give the investor free Cardis stock in
exchange for the investor's failed investment in another Fischman-related
company.

c.    On March 25, 2014, Defendant Fischman gave a Cardis investor nearly
two million Cardis shares for zero consideration in exchange for the
investor's June 2008 investment in another Fischman-related company,
which ultimately failed.

d.    On August 28, 2016, a Cardis investor emailed Defendant Fischman,
asking the following:  "[R]egardless of a new investment, [are you]
willing to offer the equivalent shares in Cardis to cover our disappointing
investment in" another Fischman-related company.  Defendant Fischman
responded as follows:  "We will issue the replacement equity for [the
company], need to determine price."

130.    Defendant Fischman personally solicited numerous investors.  These investors relied on Defendant Fischman's false representations and omissions, described above, in investing in Cardis.  Defendant Fischman was also responsible, as the orchestrator of the Cardis fraud, for misstatements made by others, like Defendant Hoffman, on which investors relied.

**B.    Defendant Brown**

131.    Defendant Brown contributed to the Cardis scheme in a number of ways.

132.    First, as discussed above (*see supra* at ¶ 49), Defendant Brown prepared fraudulent projections that he distributed, or caused to be distributed to others.

a.    On October 7, 2011, Defendant Brown e-mailed his subordinate, who reported to Defendant Brown and acted at his direction, with a sample letter and investor information package that Cardis sent "to any new potential investor."  The package included false financial projections prepared by Defendant Brown.

b.    On December 9, 2011, Defendant Brown e-mailed a prospective investor with the same false financial projections.

c.    On January 4, 2012, Defendant Brown again e-mailed prospective investors with false financial projections.

d.    On May 18, 2012, Defendant Brown again provided his subordinate with the fraudulent projections as "introductary [sic] info [he] share[d] with new potential investors."

e.    On December 12, 2012, Defendant Brown's subordinate emailed a prospective investor with the same fraudulent projections.

f.    On February 20, 2013, Defendant Brown's subordinate e-mailed a prospective investor with updated projections that were fraudulent for the same reasons as the earlier version.

30

g.    On February 27, 2013, Defendant Brown again supplied his subordinate with a fraudulent projections table to be sent to prospective investors.

h.    On April 22, 2013, Defendant Brown again supplied his subordinate with fraudulent projections to be sent to prospective investors.

i.    On May 3, 2013, Defendant Brown's subordinate sent fraudulent projections to a prospective investor.

j.    On August 27, 2013, Defendant Brown provided his subordinate with the same fraudulent projections to be sent to a new group of potential investors.

k.    On August 28, 2013, Defendant Brown's subordinate e-mailed a prospective investor an investor deck, which contained Defendant Brown's false projections.

l.    On November 8, 2013, Defendant Brown's subordinate e-mailed a prospective investor a "New Investors Packet," which contained Defendant Brown's false projections.

m.    On December 8, 2014, Defendant Brown sent fraudulent financial projections to a prospective business partner.

n.    On December 9, 2014, Defendant Brown e-mailed updated fraudulent projections to a brokerage firm.

133.    Second, as discussed above (*see supra* at ¶ 31), Defendant Brown contributed to Cardis' fraud by preparing and directing the distribution of fraudulent investor update letters.

134.    Defendant Brown helped author, and signed, these investor update letters. Defendant Brown understood that these letters would be sent to a distribution list of current Cardis investors.  For example:

a.    On August 1, 2012, Defendant Brown e-mailed other Cardis personnel an investor update letter directing that a subordinate add certain investors to his distribution list and distribute the letter the following day.

b.    On March 18, 2013, Defendant Brown e-mailed other Cardis personnel with an update he "would like to send out."  That same day, Defendant Brown specifically directed a subordinate to "make sure that" individuals that were copied on the e-mail were included in investor communications.

c.    On August 14, 2013, Defendant Brown circulated a revised update for approval noting it was "ready for [another Cardis employee] to distribute."

d.    On March 29, 2014, Defendant Brown e-mailed other Cardis personnel a "Cardis update," which they were "free to share with investors."

e.    On August 5, 2014, Defendant Brown circulated for distribution an "Updated letter to investors."

f.    On December 24, 2014, Defendant Brown circulated for distribution another investor update letter.

g.    On October 27, 2015, Defendant Brown circulated for distribution another investor update letter.

135.    Below, we detail specific fraudulent statements from these update letters:

a.    In an August 15, 2013 letter, Defendant Brown wrote:  "Cardis expects to be seeing revenues from the vending machine opportunity in its joint venture with Spindle as early as January 2014.  To understand the enormity of this one specific opportunity, Spindle's contacts in the vending machine business alone can give Cardis access to over one million vending machines by 2015 with Cardis' share of the potential profit from these machines being in excess of $25M of free cash flow per year."  In actuality, at the time of the letter, there was no joint venture.  Nor was there ever a joint venture between Cardis and Spindle.  Cardis

32

and Spindle had only entered into a mutual confidentiality agreement and letter of intent. Moreover, no work had been done to integrate Cardis' technology, and Cardis' technology was never incorporated into Spindle.

b.      In a March 3, 2014 letter, Defendant Brown wrote: "Together with RocNation, Cardis will be launching games centered on sports figures and music artists associated with RocNation. These sports figures and artists have a fan base of many millions of people." This was false because there were no plans for Cardis to launch games with RocNation.

c.      In a May 25, 2014 letter, Defendant Brown claimed that Cardis would be finalizing its agreements with all three major music labels within the next 30 to 60 days. In actuality, Cardis did not advance beyond high-level preliminary discussions with these music labels, and there was no basis to represent that Cardis would soon finalize agreements with the labels. For example, at the time of Defendant Brown's representation, only one introductory meeting between Cardis and each music company had taken place, and the parties had not even executed non-disclosure agreements.

d.      In a December 24, 2014 letter, Defendant Brown wrote: "ROC NATION - expected to go live January/February 2015 . . . Cardis is to be the official payment system for Roc Nation's on-line store and mobile apps showcasing 20 of Roc Nation's artists, including Rianna [sic] and JCole. We have done a Beta Pilot of the site and we recently received a demo which has been successfully reviewed by our technical staff. We received comments from Roc Nation on the final contract are [sic] we are close to finalizing." In actuality, the Roc Nation/Cardis store was not expected to go live in January/February 2015, as claimed, and the final contract was not "close to finalizing."

e.      In letters dated November 11, 2014 and December 24, 2014, Defendant Brown wrote to investors that Cardis was finalizing an agreement with PureSolo – a karaoke mobile application company. The letters

represented that Cardis would be "the exclusive payment system for PureSolo who projects to sell a minimum of 12 Million recordings per annum at a price of $1.95 per transaction." In actuality, these representations were false. First, there was no agreement between Cardis and PureSolo for Cardis to be "the exclusive payment system for PureSolo." PureSolo was only obligated to use Cardis' technology in PureSolo applications to the extent that Cardis was providing the marketing funds for that particular application. Additionally, the agreement only covered Android devices and did not include Apple IOS devices. Second, PureSolo's planned price point was $0.99 per transaction, not $1.95 per transaction, as Defendant Brown falsely represented. Third, PureSolo did not project a figure as high as 12 million sales per year.

f.    In letters dated November 11, 2014 and December 24, 2014, Defendant Brown wrote that Cardis was finalizing an agreement with ByStorm Entertainment to be its exclusive payment system and would "go live in late January 2015." In actuality, Cardis was not finalizing any agreement with ByStorm to be its exclusive payment system. The companies only had one introductory meeting.

g.    In letters dated November 11, 2014 and December 24, 2014, Defendants Brown wrote: "Cardis is in advanced negotiations to become the payment processor for Primary Wave." In actuality, PrimaryWave never entered into any negotiations with Cardis. At the time of these representations, Cardis and PrimaryWave had held only a single meeting, and PrimaryWave was waiting for Cardis to demonstrate the Cardis technology to PrimaryWave. That demonstration never occurred, and there are no e-mails between the parties after November 7, 2014.

h.    In a December 24, 2014 letter, Defendant Brown wrote: "ALL DEF DIGITAL (ADD) – expected to go live in February 2015[.] Cardis is

34

finalizing its agreement to be the exclusive payment system for All Def Digital, who is the pioneer record label in its revolutionary approach to market digital videos online." In actuality, nothing was expected to go live in the next two months, and Cardis was not finalizing any agreement with All Def Digital. All Def Digital was not even in the retail business.

    i.    Defendant Brown provided for distribution, an October 23, 2015 letter, signed by Defendant Fischman, which falsely represented that the relationship with Roc Nation was ongoing and Cardis "hope[d] to launch [its] payment app in the first quarter of 2016."

136.    Third, Defendant Brown made other false representations in one-to-one communications with investors.

    a.    On January 7, 2014, Defendant Brown e-mailed an investor, on Defendant Fischman's instruction, falsely representing that Cardis expected to close a deal with Roc Nation that month.

    b.    On January 22, 2014, Defendant Brown wrote the following: "The exit strategy remains the same – an IPO or merger. Just becoming a major process in the music and mobile payment industry alone can give us a multiple billion dollar valuation and is very achievable. We think we can become a major force in the industry by the end of 2014." This representation was false because "a multiple billion dollar valuation" was not "very achievable."

    c.    On May 25, 2014, Defendant Brown wrote the following to an investor: "Most important to our long term shareholders, the expanding opportunity with Mastercard can lead to the most diverse and greatest opportunities both business-wise and to a possible investment which hopefully can lead to a final exit down the road." This representation was false because there was no possibility of a Mastercard investment.

    d.    On November 4, 2014, Defendant Brown e-mailed an investor an October

2014 investor update letter that made materially false and misleading
representations that Cardis had "the actual signed and executed contracts
in hand" that would lead to "several live sites using Cardis' payments
platform and generating revenue for Cardis." Without any basis in fact,
the Cardis update letter represented that Roc Nation was expected to go
live in January 2015, PureSolo was expected to go live in December 2014,
ByStorm Entertainment was expected to go live in late November 2014,
All Def Digital was expected to go live in January 2014 (sic), and Primary
Wave was expected to go live in Q1 2015.

e.     On December 23, 2014, Defendant Brown prepared a schedule for use of
investment proceeds that was sent to a Cardis investor. The schedule was
materially false because it failed to disclose the substantial diversion of
investor moneys detailed above (*see supra* at ¶ 127(c)).

f.     On February 11, 2016, in response to an investor's question "Is there a
possibility for a 2016 tax write off loss?," Defendant Brown falsely
claimed that there was "[s]till much going on" and hoped to "send out a
good update" the following week. In fact, there was not "much going on"
and no information that would justify "a good update" the following week.

g.     On September 6, 2016, Defendant Brown solicited investors via e-mail
falsely representing that Cardis would be starting its "deployment with
MPS" and "finaliz[ing] the Cumberland deal." In fact, Cardis was not
starting its deployment with MS and was not finalizing the Cumberland
deal.

137.     Defendant Brown also contributed to Cardis' fraud by falsely holding himself out
as a senior financial officer of Cardis. Defendant Brown's true role would have been significant
to an investor. Defendant Brown was personally highly regarded for his prior work as a senior
executive at a major public company, as well as for being a significant charitable donor in the

Long Island communities in which Defendants lived and transacted business. Defendant Brown's titles created the impression that he was highly involved with Cardis' finances, although he was not. His titles also created the impression that Cardis was observing traditional corporate financial formalities, which it was not. For example:

a.  Defendant Brown alternatingly signed the investor update letters as "Senior Financial Executive" of "Cardis International, NV," "VP Finance," or "Financial Executive, Cardis" or "Financial Executive, Cardis International." A number of these letters simply indicated they were being issued from "Cardis" without greater specification, while some indicated they were from Cardis BV, the entity that issued Cardis shares. Below are screenshots from the December 24, 2014 letter to shareholders. They show that the letter used a Cardis logo on the front page, listed the source of the letter as Cardis BV (the entity that issued the shares), and described Defendant Brown as the VP, Finance.

 

December 24, 2014

Dear Investor

As we close out this year, the seeds planted in 2014 are ready to be harvested in 2015.
Our strategy to focus on digital content as the best avenue to introduce the advantages of Cardis'
technology in the digital payments world has taken hold and is not only gaining momentum in the
business world but has also attracted positive press for us.

Attached to this letter, we are enclosing a recent article from Billboard discussing how Cardis'
technology is going to revolutionize the music industry.
In addition we are attaching a recent press release from one of our new partners, ByStorm (see more
information below) discussing how the implementation of Cardis' technology will enhance their
business in 2015.

We are primed to start numerous deployments, discussed below, in the first quarter of 2015 and
become a revenue generating operation.

The following list details business updates with our most likely ventures to be implemented in the
next few months:

UNIVERSAL MUSIC –
Universal contacted our representative Seth Schachner to set up a meeting with Cardis as soon as
possible regarding their intention to launch their own live-streaming operation as a means to move
away from doing business with Spotify. This Universal-owned platform operation is to start in the UK
and branch out to the US shortly thereafter. We believe the other major labels will want to replicate
this business.
Universal is still in negotiations with Mastercard regarding its South American initiatives with
Mastercard and Cardis. The UK initiative will most likely not include Mastercard (at least initially)
because it is more time urgent, and the Mastercard process is a long process.

ROC NATION - expected to go live January/February 2015
  Roc Nation is a full-service entertainment company that generates revenues from its client base
through music publishing, touring, merchandising and provides management services to entertainers
and sports figures. Cardis is to be the official payment system for Roc Nation's on-line store and
mobile apps showcasing 20 of Roc Nation's artists, including Rianna and JCole.
We have done a Beta Pilot of the site and we recently received a demo which has been successfully
reviewed by our technical staff. We received comments from Roc Nation on the final contract are we
are close to finalizing.

Cardis Enterprises International B.V.
Prins Bernhardplein 200, Amsterdam 1097 JB,The Netherlands
E-mail: info@cardis-international.com
Phone: + 31 208 905 550
www.cardis-international.com

\*                    \*                    .          \*

Based on these developments, and the current momentum, we hope to have 25 Digital or Mobile App
stores up and running in the next six months, and plan to do a "full-court" press to pursue Digital
Game companies in 2015.

We continue to meet with Institutional Investors and have identified and started the investment
process with three of them, who have expressed strong interest.

Please stay posted for future updates as we start our rollouts next month.

Yours truly,
Steve Brown,
VP Finance

    b.    In September 2016, Defendant Brown continued to hold himself out as a Cardis financial executive by providing projections and other materials, in connection with the solicitation of an investor.

138.    Similarly, in a February 28, 2018 phone call with investors, Defendant Brown represented that he worked for Cardis over 60% of the time in 2011 to 2014, 35% of his time from 2014-2015, and "as needed" "thereafter" and that his "job always, you know was – my title was vice president of finance."

139.    Defendant Brown also contributed to Cardis' fraud by covering up Cardis' fraudulent activities.

    a.    In summer 2012, Cardis investors raised concern as to "what funds have been spent to date trying to get the Company off the ground," including "[w]hat compensation" was received by the officers, the "hype that [investors] received at the time of investment," and that Cardis was a "ponzi scheme." Defendant Brown, Defendant Rosenblatt, and others met with Cardis investors to dissuade them from these concerns, which had merit.

    b.    In July 2014, a Cardis investor wrote Defendant Fischman, Defendant Hoffman, and Defendant Rosenblatt, raising his concern that multiple investors had called him "to inquire about whether I know anything about the operation you guys are running, implying that they believe that you guys are involved in a real fraud." The investor noted that "[t]hese people are getting very restless . . . because . . . you guys have been telling them you are very close to a great deal for many years now and they no longer believe you." Defendant Brown then prepared a response dismissing the concerns as the product of a "few, minority, [sic] investors who continue to be angry at us, mostly because their investment has not been realized to date." The response went on to reject "accusations of a PONZI scheme" as "absurd on every level." It affirmed the accuracy of their past

representations and also made additional misrepresentations about Cardis' business prospects.

c.      On October 27, 2014, Defendant Brown e-mailed the same investor, stating "it is my responsibility to keep investors updated," and falsely claiming Cardis was "on the cusp of signing and implementing several key groundbreaking agreements." The e-mail went on to reiterate a number of false representations concerning Cardis' relationship with third parties.

d.      On September 24, 2015, a Cardis investor emailed Defendant Brown asking for the "latest on Cardis" and whether it was "a complete loss," while mentioning a recent investor lawsuit. Defendant Brown, copying Defendant Rosenblatt, responded that the lawsuit claiming fraud was "frivolous," while claiming that Cardis' relationship with Roc Nation was "developing" and ongoing. In fact, the lawsuit had merit, and Cardis' relationship with Roc Nation was long over.

e.      On February 28, 2018, a Cardis investor recorded a telephone conversation with Defendant Brown. The investor asked "what happened to the cash" investors put into Cardis. Defendant Brown responded by detailing the Company's large budget and staff, while failing to disclose the substantial misuse of investor funds. The investor also questioned Defendant Brown about various investor lawsuits against Cardis and its principals. The investor asked: "After reading those lawsuits, why should we think that the company has any future?" In response, Defendant Brown told the investor "the lawsuits were not the most credible lawsuits," attributing them to "angry investors." Defendant Brown later told the investor "none of those lawsuits have any merit to them." In fact, there was substantial merit to the investor lawsuits.

140.      Many Cardis investors directly relied on Defendant Brown's misrepresentations. For example:

40

a.      Defendant Brown's subordinate personally invested and invested on others' behalf based on Defendant Brown's involvement in Cardis as a senior financial officer and Defendant Brown's representations that Cardis was on the cusp of earning substantial revenue and realizing an IPO or buyout.

b.      Another investor repeatedly invested his own money and introduced others to the Cardis opportunity.  He regularly received Defendant Brown's updates and relied on them in choosing to invest in Cardis.

c.      An entity and several of its employees were repeat investors in Cardis with their most recent investments in 2016.  These investors relied on Defendant Brown's investor update letters when making their investments. These investors also relied on Defendant Brown's specific representation, in a September 6, 2016 e-mail, that Cardis would be deploying with MPS and Cumberland.

d.      Yet another investor relied on a January 7, 2014 e-mail from Defendant Brown that falsely claimed that Cardis expected to sign a deal with Roc Nation that month.

141.    Defendant Brown made these false statements recklessly, knowingly, or intentionally.  Defendant Brown failed to conduct a reasonable investigation concerning the statements he was relating.  Nor was it reasonable to rely on Defendant Fischman or others at Cardis.  There was no basis to believe these individuals were reliable, particularly because they never supplied Defendant Brown with materials that would corroborate Defendant Brown's representations.

142.    More broadly, Defendant Brown served a key role in the overarching fraudulent Cardis scheme and, as such, bears responsibility for the misstatements made by others in the scheme, on which investors relied.

C.      **Defendant Rosenblatt**

143.    Defendant Rosenblatt was an active participant in the Cardis scheme.  Defendant Rosenblatt contributed to the Cardis fraud in a number of ways.

144.    First, Defendant Rosenblatt participated in the dissemination of the false investor update letters described above.  This included the December 2014 and October 2015 investor update letter described above (*see supra* at ¶ 135), both of which were sent by Defendant Rosenblatt. Defendant Rosenblatt knew or should have known that these representations were false.

145.    Second, Defendant Rosenblatt had direct false communications with investors.

   a.      On October 18, 2013, Defendant Rosenblatt wrote the following to an investor: "We [Cardis] now believe that the company will be doing an IPO within the next twelve months, we are signing some more major contracts in the next coming weeks."  These statements were false because no IPO was on the horizon and Cardis did not expect to sign major contracts in the coming weeks.

   b.      On June 17, 2014, Defendant Rosenblatt forwarded an investor a copy of the false May 25, 2014 investor update letter described above.

   c.      On July 14, 2015, Defendant Rosenblatt falsely represented that Cardis was "dealing with some major companies."

   d.      On March 18, 2015, Defendant Rosenblatt falsely represented that Cardis was "finishing up the Roc Nation contract and should be signed by next week."

   e.      Defendant Rosenblatt knew or should have known that each of these representations were false.

146.    Third, Defendant Rosenblatt participated in efforts to cover up Cardis' fraud.

a.  In or about September 2012, Defendant Rosenblatt, Defendant Brown, and others met with Cardis investors to dissuade them from their concern that Cardis was a "ponzi scheme."

b.  In or about July 2014, Defendant Brown, Defendant Rosenblatt, and Defendant Fischman coordinated a response to a concerned investor who raised investor fear that Cardis was a "PONZI scheme."

c.  On or about September 24, 2015, Defendant Brown and Defendant Rosenblatt emailed a disgruntled investor that a lawsuit claiming fraud was "frivolous," while claiming that Cardis' relationship with Roc Nation was "developing" and ongoing.  In fact, the lawsuit had merit, and Cardis' relationship with Roc Nation was long over.

d.  Defendant Rosenblatt knew or should have known that each of these representations were false.

147.  Fourth, Defendant Rosenblatt was aware of, and failed to disclose that, Defendant Fischman repeatedly gave away Cardis stock to placate disgruntled investors in other failing companies backed by Defendant Fischman, thereby diluting the value of Cardis investors' stock without their knowledge.  For example, Defendant Rosenblatt knew that Defendant Fischman gave investors in Romlight, another Fischman-backed venture, free Cardis stock.

148.  Fifth, Defendant Rosenblatt was aware of, and failed to disclose that, Defendant Fischman used a corporate credit card for personal purposes.

149.  Finally, Defendant Rosenblatt misrepresented the status of Defendant Brown.  As discussed above, Defendant Rosenblatt disseminated investor update letters that falsely portrayed Defendant Brown as an active senior financial officer of Cardis.

150.  Defendant Rosenblatt made all of these false statements recklessly, knowingly, or intentionally.  Defendant Rosenblatt failed to conduct a reasonable investigation concerning the

43

statements he was relating. Nor was it reasonable to rely on Defendant Fischman or others at

Cardis. There was no basis to believe these individuals were reliable, particularly given that they

never supplied Defendant Rosenblatt with materials that would corroborate Defendant

Rosenblatt's representations.

151. Defendant Rosenblatt served a key role in the overarching fraudulent Cardis

scheme and, as such, bears responsibility for the misstatements made by others in the scheme, on

which investors relied.

### D.    Defendants Hoffman and Zerp LLC

152. Defendants Hoffman and Zerp LLC were key participants in the Cardis fraud,

being paid by Cardis until at least February 2017. Defendant Hoffman was one of Cardis'

principal fundraisers raising, upon information and belief, over $20 million from investors.

Defendant Hoffman operated on a commission basis with investment-based commissions

directed to him or his company, Defendant Zerp LLC. Defendants Hoffman and Zerp LLC

contributed to Cardis' fraud in two principal ways.

153. First, Defendants Hoffman and Zerp LLC, through Hoffman, made false

representations in their communications with investors.

154. These Defendants relied on the investor updates prepared by Defendant Brown

and information from Defendant Fischman – both of which contained material misstatements and

omissions – in making pitches to investors. They have admitted, in their Answer and Cross

Claim ("Answer"), that the information they conveyed was false.

155. For example, on July 26, 2016, Hoffman emailed an investor a copy of a press

release dated the same day titled, "MPS Signs Agreement with Cardis to Implement Low Value

Electronic Payments Solution in Their Smart Parking Meters." In a chain of emails from August

29 to 30, 2016, the investor asked Hoffman, "Should we invest more?"; Hoffman replied,

"100% yes?!!"; the investor then asked, "Because of [MPS parking] meters?"; and Hoffman

wrote back, "Yes and Cumberland stores." Defendant Hoffman knew or should have known that

this representation was false.

156.    Hoffman materially misrepresented the status of Cardis' business relationship

with MPS, and the likelihood that Cardis investors would ever receive a profit from their

investments in Cardis, because, in actuality, Cardis never rolled out its technology in Cedarhurst

parking meters and was never on the verge of doing so, particularly because the town never

approved the use of Cardis technology and because MPS required, and Cardis failed to obtain,

compliance with a payment industry protocol called PCI. Defendant Hoffman also materially

misrepresented that Cardis would soon enter into a revenue-generating relationship with

Cumberland Farms. Defendant Hoffman knew or should have known that this representation

was false. Defendant Hoffman had no basis in August 2016 – or ever – to represent that a deal

with Cumberland Farms was in an advanced stage. Cardis had only a single meeting with

Cumberland Farms, which did not occur until November 30, 2016. Thereafter, Cumberland

Farms did not pursue a deal with Cardis.

157.    Second, Defendants Hoffman and Zerp LLC were aware, and failed to disclose to

investors, that Defendant Fischman repeatedly gave away Cardis stock to placate disgruntled

investors in other failing companies backed by Defendant Fischman, thereby diluting the value

of Cardis investors' stock without their knowledge. For example, Defendant Fischman directed

Defendant Hoffman to tell, and Hoffman told, an investor that Defendant Fischman would give

the investor free Cardis stock in exchange for the investor's failed investment in another

Fischman-related company.

45

158.    Defendant Hoffman made these false statements recklessly, knowingly, or

intentionally.  Defendant Hoffman failed to conduct a reasonable investigation concerning the

statements he was relating.  By his own admission, Defendant Hoffman undertook no inquiry to

determine if the representations he made to investors were true and was locked out of

information regarding Cardis' true state.  Beyond that, there was no reasonable basis to rely on

Defendant Fischman or others at Cardis.  There was no basis to believe these individuals were

reliable, particularly given that they never supplied Defendant Hoffman with materials that

would corroborate Defendant Hoffman's representations.

159.    As discussed above, Defendants Hoffman and Zerp LLC directly solicited

investors and were responsible for, on information and belief, over $20 million in investments.

These investors relied on Defendant Hoffman and Zerp LLC's representations when investing in

Cardis.

### E.    The Katz Defendants

160.    As discussed above, Defendant Lawrence Katz, through his law firms Defendants

Law Offices of Lawrence Katz, Esq. PLLC and Law Offices of Lawrence Katz P.C. (the "Katz

Firms"), controlled the principal Cardis bank account –an IOLA account maintained at Bank of

America.  From this account, Defendant Katz and the Katz Firms siphoned off huge sums of

investor monies to enrich Defendant Fischman, his family members, and various charities.

161.    Defendant Katz and the Katz Firms knew, or were reckless in not knowing, that

these transfers were fraudulent based on the fact that they worked out of the Cardis offices,

closely alongside Cardis' principal Defendant Fischman, and therefore would have been aware

that these expenses were not Cardis-related.

162.    Defendant Katz and the Katz Firms' knowledge of the impropriety of these payments is also supported by the fact that, as described below, Defendant Katz and the Katz Firms themselves misappropriated investor money.

163.    From in or about March 2011 to in or about May 2016, Defendant Katz transferred more than $2.5 million from a Defendant Katz-controlled IOLA account at Bank of America, in which Cardis' investor moneys were deposited, to Defendant Katz's accounts maintained at Signature Bank, JPMorgan Chase, and HSBC Bank USA.  The transfers included: (1) $50,000 to a Defendant Katz-controlled account at Signature Bank; (2) more than $750,000 to Defendant Katz-controlled accounts at JPMorgan Chase; and (3) more than $1.7 million to Defendant Katz-controlled accounts at HSBC Bank USA.

164.    These transfers, and other transfers of Cardis investor money, were frequently used to fund Defendant Katz's own personal expenses such as groceries, restaurants, and clothes. For example:

    a.    In or about September 2014:

        i.    Defendant Katz transferred $40,000 from the Katz IOLA Account maintained at Bank of America into a JPMorgan Chase account, in the name of Law Offices of Lawrence Katz IOLA Trust Account, Account No. 7796.

        ii.    That same month, Katz transferred $25,000 from Account No. 7796 to a JPMorgan Chase account in the name of the Law Offices of Lawrence Katz IOLA Trust Account, Account No. 5614.

        iii.    That same month, Katz transferred $2,100 from Account No. 5614, to another JPMorgan Chase account, Account No. 0306, in the name of Law Offices of Lawrence Katz.

        iv.    Over the month, Defendant Katz spent or withdrew $2,624.19 from

47

the 0306 account, all of which appear to be for personal expenses. These include Trader Joe's, CVS, and Century 21.

b.  In or about October 2014:

  i.  Defendant Katz received $100,000 from a Cardis investor and deposited it into JPMorgan Chase Account No. 7796, in the name of Law Offices of Lawrence Katz IOLA Trust Account.

  ii.  Over the month, Katz transferred $7,000 from Account 7796 to Account No. 0306.

  iii.  Over the month, Defendant Katz spent or withdrew $5,840.81 from the 0306 account, all of which appear to be for personal expenses. These include Target, Costco, and a local supermarket.

c.  In or about June 2015:

  i.  Defendant Katz transferred $10,000 from the Katz IOLA Account maintained at Bank of America to a JPMorgan Chase account in the name of the Law Offices of Lawrence Katz IOLA Trust Account, Acct No. 5614.

  ii.  Over the month, Defendant Katz transferred $2,300 from that account to JPMorgan Chase Account No. 0306, in the name of Law Offices of Lawrence Katz.

  iii.  Over the month, Defendant Katz spent or withdrew $3,251.04 from the 0306 account, all of which appear to be for personal expenses. These expenses include purchases at Lord & Taylor, Gourmet Glatt in Cedarhurst, New York, and Target.

d.  In or about May 2016:

  i.  Defendant Katz transferred $50,000 from the Katz IOLA Account maintained at Bank of America to a Signature Bank Account

bearing the name Law Offices of Lawrence Katz, Esq, PLLC IOLA Account.

ii.     Over the month, Defendant Katz transferred $2,000 to a JPMorgan Chase Account, Account No. 2794, in the name of Law Offices of Lawrence Katz.

iii.     Over the month, Defendant Katz transferred $3,650 from Account No. 2794 to Account No. 0306.

iv.     Over the month, Defendant Katz spent or withdrew $3,778.64 from the 0306 account, all of which appear to be for personal expenses. These expenses include Urban Outfitters, Costco, and Victoria's Secret.

e.     There were no legitimate services provided in exchange for any of these payments, no invoices were issued, and there was no legitimate corporate reason to transfer the funds to Defendant Katz.

## FIRST CAUSE OF ACTION
Scheme or Artifice to Defraud &
Material Misrepresentations and Omissions - GBL §§ 352(1) and 352-c

(as against Defendants Aaron D. Fischman, Stephen Brown, Steven Hoffman, Seth Rosenblatt, Cardis Enterprises International N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises International BV, Choshen Israel, LLC, and Zerp LLC)

165.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

166.     The above-referenced Defendants together, and each of them individually, made materially false and misleading representations, statements, and promises, and omitted to state material information, to investors and potential investors about the nature of the securities, and the risks and potential returns of investing in those securities, issued, offered, and sold by these Defendants. These misrepresentations and omissions were part of a single continuing scheme to defraud investors.

49

167.    Specifically, as detailed above:

    a.    Defendants Cardis, Fischman and Choshen Israel, LLC defrauded investors by misrepresenting Cardis' third-party relationships, misrepresenting the prospects of an IPO or buyout, by failing to disclose Defendant Fischman's prior FINRA discipline, failing to disclose that Fischman gave away stock to placate disgruntled investors from other failed Fischman ventures, failing to disclose Defendant Fischman's use of a corporate credit card for personal purposes, misrepresenting Defendant Brown's role in Cardis, and by failing to correct or update investors.  (*see supra* at ¶¶ 124-130),

    b.    Defendant Brown defrauded investors by misrepresenting Cardis' third-party relationships, misrepresenting the prospects of an IPO or buyout, misrepresenting Defendant Brown's role in Cardis, and by failing to correct or update investors.  (*see supra* at ¶¶ 131-142).

    c.    Defendants Hoffman and Zerp defrauded investors by misrepresenting Cardis' third-party relationships, misrepresenting the prospects of an IPO or buyout, failing to disclose that Fischman gave away stock to placate disgruntled investors from other failed Fischman ventures, misrepresenting Defendant Brown's role in Cardis, and by failing to correct or update investors.  (*see supra* at ¶¶ 152-159).

    d.    Defendant Rosenblatt defrauded investors by Cardis' third-party relationships, misrepresenting the prospects of an IPO or buyout, failing to disclose that Fischman gave away stock to placate disgruntled investors from other failed Fischman ventures, failing to disclose Defendant Fischman's use of a corporate credit card for personal purposes, and misrepresenting Defendant Brown's role in Cardis, and by failing to correct or update investors.  (*see supra* at ¶¶ 143-151).

168.    The foregoing acts and practices of these Defendants and their agents and

employees, consisting of materially false and misleading oral and written representations,

statements, promises and omissions, constitute fraudulent acts and practices as defined in GBL

§§ 352(1) and 352-c, are illegal and prohibited acts and practices pursuant to GBL §§ 352-c and

359-g(2), and are subject to the equitable remedies of permanent injunctive relief and restitution

set forth in GBL § 353.

169.     Plaintiff and the public have been, and are being, irreparably harmed by the

aforesaid acts and practices and have no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Scheme or Artifice to Defraud – GBL §§ 352(1) and 352-c

(as against Defendants Aaron D. Fischman, Lawrence Katz, Cardis Enterprises International
N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises International BV,
Choshen Israel, LLC, Law Offices of Lawrence Katz, Esq. PLLC, and
Law Offices of Lawrence Katz P.C.)

170.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

171.     The above-referenced Defendants together, and each of them individually,

together engaged in a scheme or artifice to defraud investors by siphoning off investor money to

enrich these Defendants personally.

172.     Specifically, as detailed above (*see supra* at ¶¶ 124-130, 160-164):

    a.    Defendant Fischman, with Defendant Katz's assistance, siphoned off huge
sums of investor money, intended to benefit Cardis, to Defendant Choshen
and to enrich Defendant Fischman personally.

    b.    Defendant Fischman, with Defendant Katz's assistance, siphoned off huge
sums of money to Relief Defendants Nina Fischman, Rafaela Fischman,
Alexander Fischman, Stuart Fischman, Anne Shimanovich, and Ethel
Weissman, all of whom were family members of Defendant Fischman.

    c.    Defendant Fischman, with Defendant Katz's assistance, misappropriated
investor moneys to fund charitable contributions.

    d.     Defendant Katz misappropriated substantial Cardis money to his own accounts, which he then used for personal expenses.

173.    The foregoing acts and practices of these Defendants constitute fraudulent acts and practices as defined in GBL §§ 352(1) and 352-c, are illegal and prohibited acts and practices pursuant to GBL §§ 352-c and 359-g(2), and are subject to the equitable remedies of permanent injunctive relief and restitution set forth in GBL § 353.

174.    Plaintiff and the public have been, and are being, irreparably harmed by the aforesaid acts and practices and have no adequate remedy at law.

### THIRD CAUSE OF ACTION
Repeated and Persistent Fraud and Illegality – Executive Law § 63(12)

(as against Defendants Aaron D. Fischman, Stephen Brown, Steven Hoffman, Seth Rosenblatt, Cardis Enterprises International N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises International BV, Choshen Israel, LLC, and Zerp LLC)

175.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

176.    The acts and practices alleged herein of each Defendant referenced above constitute conduct proscribed by Executive Law § 63(12), in that these Defendants engaged in repeated fraudulent acts, in violation of GBL § 352(1), or repeated illegal acts, in violation of GBL § 352-c, or otherwise demonstrated persistent fraud or illegality in the carrying on, conducting, or transaction of business.  These fraudulent and illegal acts were part of a single continuing scheme to defraud investors.

177.    Specifically, these Defendants:

    a.     repeatedly violated the Martin Act, as detailed above in Count 1, by making materially false representations and omissions and engaging in a scheme or artifice to defraud investors.

    b.     repeatedly committed equitable fraud because investors justifiably and reasonably relied on their misrepresentations and omissions.

52

    c.    repeatedly committed actual fraud because investors justifiably and reasonably relied on relied on the misrepresentations and omissions, and because the fraud was conducted intentionally, knowingly, or recklessly.

178.    Plaintiff and the public have been, and are being, irreparably harmed by the aforesaid acts and practices and have no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### Repeated and Persistent Fraud and Illegality – Executive Law § 63(12)

**(as against Defendants Aaron D. Fischman, Lawrence Katz, Cardis Enterprises International N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises International BV, Choshen Israel, LLC, Law Offices of Lawrence Katz, Esq. PLLC, and Law Offices of Lawrence Katz P.C.)**

179.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

180.    The acts and practices alleged herein of each Defendant referenced above constitute conduct proscribed by Executive Law § 63(12), in that these Defendants engaged in repeated fraudulent acts, in violation of GBL § 352(1), or repeated illegal acts, in violation of GBL § 352-c, or otherwise demonstrated persistent fraud or illegality in the carrying on, conducting, or transaction of business. These fraudulent and illegal acts were part of a single continuing scheme to defraud investors.

    a.    Specifically, these Defendants: repeatedly violated the Martin Act, as detailed above in Count 2, by engaging in a scheme or artifice to defraud investors by siphoning off investor money to enrich these Defendants personally.

    b.    repeatedly committed equitable fraud because investors justifiably and reasonably relied on the premise that money invested in Cardis would be used for business purposes.

    c.    repeatedly committed actual fraud because investors justifiably and reasonably relied on the premise that money invested in Cardis would be

used for business purposes, and the fraud was conducted intentionally, knowingly, or recklessly.

## FIFTH CAUSE OF ACTION
### Actual Fraud

(as against Defendants Aaron D. Fischman, Stephen Brown, Steven Hoffman, Seth Rosenblatt, Cardis Enterprises International N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises International BV, Choshen Israel, LLC, and Zerp LLC)

181.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

182.    As alleged herein, and detailed in Counts 1 and 3, the above-referenced Defendants made material misrepresentations and omitted material facts as part of a single continuing scheme to deceive investors.

183.    The above-referenced Defendants made those material misrepresentations and omissions intentionally, knowingly, or recklessly.

184.    Upon information and belief, investors did in fact rely on the above-referenced Defendants' misrepresentations and omissions in making their investment and business decisions and such reliance was justifiable and reasonable.

185.    Investors suffered economic damages as a result.

186.    The above-referenced Defendants' conduct constitutes actual fraud under New York common law.

187.    Plaintiff and the public have been, and are being, irreparably harmed by the aforesaid acts and practices and have no adequate remedy at law.

## SIXTH CAUSE OF ACTION
### Equitable Fraud

(as against Defendants Aaron D. Fischman, Stephen Brown, Steven Hoffman, Seth Rosenblatt, Cardis Enterprises International N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises International BV, Choshen Israel, LLC, and Zerp LLC)

188.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

189.     As alleged herein, and detailed in Counts 1 and 3, the above-referenced

Defendants made material misrepresentations and omitted material facts as part of a single

continuing scheme to deceive investors.

190.     Upon information and belief, investors did in fact rely on the above-referenced

Defendants' misrepresentations and omissions in making their investment and business decisions

and such reliance was justifiable and reasonable.

191.     These misrepresentations and omissions of material facts as alleged herein

constitute equitable fraud under New York common law.

192.     Plaintiff and the public have been, and are being, irreparably harmed by the

aforesaid acts and practices and have no adequate remedy at law.

### SEVENTH CAUSE OF ACTION
### Actual Fraud

(as against Defendants Aaron D. Fischman, Lawrence Katz, Cardis Enterprises International
N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises International BV,
Choshen Israel, LLC, Law Offices of Lawrence Katz, Esq. PLLC, and
Law Offices of Lawrence Katz P.C.)

193.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

194.     As alleged herein, and detailed in Counts 2 and 4, the above-referenced

Defendants made material misrepresentations and omitted material facts as part of a single

continuing scheme to deceive investors.

195.     The above-referenced Defendants made those material misrepresentations and

omissions intentionally, knowingly, or recklessly.

196.     Upon information and belief, investors did in fact rely on the above-referenced

Defendants' misrepresentations and omissions in making their investment and business decisions

and such reliance was justifiable and reasonable.

23-35660-cgm    Claim 5    Filed 10/18/23    Pg 136 of 139

197.    Investors suffered economic damages as a result.

198.    The above-referenced Defendants' conduct constitutes actual fraud under New York common law.

199.    Plaintiff and the public have been, and are being, irreparably harmed by the aforesaid acts and practices and have no adequate remedy at law.

## EIGHTH CAUSE OF ACTION
### Equitable Fraud

(as against Defendants Aaron D. Fischman, Lawrence Katz, Cardis Enterprises International N.V., Cardis Enterprises International (U.S.A.) Inc., Cardis Enterprises International BV, Choshen Israel, LLC, Law Offices of Lawrence Katz, Esq. PLLC, and Law Offices of Lawrence Katz P.C.)

200.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

201.    As alleged herein, and detailed in Counts 2 and 4, the above-referenced Defendants made material misrepresentations and omitted material facts as part of a single continuing scheme to deceive investors.

202.    Upon information and belief, investors did in fact rely on the above-referenced Defendants' misrepresentations and omissions in making their investment and business decisions and such reliance was justifiable and reasonable.

203.    These misrepresentations and omissions of material facts as alleged herein constitute equitable fraud under New York common law.

204.    Plaintiff and the public have been, and are being, irreparably harmed by the aforesaid acts and practices and have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants and Relief Defendants

as follows:

A.       Permanently enjoining Defendants from directly or indirectly engaging or

attempting to engage in any manner in the issuance, exchange, sale, offer to sell, purchase, offer

to purchase, promotion, negotiation, advertisement, investment advice, investment management,

or distribution of any stocks, bonds, notes, evidences of interest or indebtedness, foreign

currency orders, calls or options, or any other securities or commodities within or from the State

of New York;

B.       Permanently enjoining Defendants from directly or indirectly engaging or

attempting to engage in any manner in the securities or commodities business within or from the

State of New York as a broker, dealer, issuer, investment adviser, or investment manager, or as

an officer, director, principal, controlling person, agent, affiliated person, consultant, or salesman

of a broker, dealer, issuer, investment adviser, or investment manager;

C.       Permanently enjoining Defendants from directly or indirectly engaging or

attempting to engage in any manner in the writing, publishing, preparing, selling, or distributing

any letter or other literature advising, suggesting, or in any other manner communicating advice

within or from the State of New York with respect to the purchase or sale of securities or

commodities; and from forecasting, advising, or in any other manner suggesting either orally or

in writing any method or methods to be used in connection with the purchase or sale of securities

or commodities;

23-35660-cgm   Claim 5   Filed 10/18/23   Pg 138 of 139

D.       Pursuant to GBL § 353(3), directing Defendants, jointly and severally, to make restitution to defrauded investors of all moneys and property obtained directly or indirectly by the fraudulent acts and practices complained of herein, in an amount to be determined;

E.       Pursuant to Executive Law § 63(12), directing Defendants, jointly and severally, to make restitution and pay damages to defrauded investors of all moneys and property obtained from them, directly or indirectly as a result of the fraudulent and illegal acts and practices complained of herein, in an amount to be determined;

F.       Pursuant to the common law of the State of New York, directing all Defendants, jointly and severally, to pay damages suffered by defrauded investors as a result of the fraudulent acts and practices complained of herein, in an amount to be determined;

G.       Pursuant to the Court's equitable powers, directing Relief Defendants to disgorge all moneys and property received directly or indirectly from Defendants, or any of them, that constituted ill-gotten gains resulting from Defendants' fraudulent acts and practices against the defrauded investors, and to which moneys and property Relief Defendants have no legitimate claim, in amounts to be determined at trial, so that such moneys and property can be restored to the defrauded investors;

H.       Pursuant to GBL § 353-a, directing the appointment of a receiver to receive, for the benefit of defrauded investors, to take title to, and liquidate for the benefit of defrauded investors, all moneys and property derived by Defendants and Relief Defendants, or any of them, by means of any of the fraudulent acts and practices alleged herein, including also all moneys and property with which such moneys and property have been mingled, because such moneys and property cannot be identified in kind because of such commingling, together with any or all books of account and papers relating to such moneys and property;

58

I.      Directing that each Defendant pay Plaintiff an additional allowance of $2,000

pursuant to Civil Practice Law and Rules § 8303(a)(6), and an additional allowance of $2,000

pursuant to GBL § 353(1);

J.      Permitting Plaintiff to make further applications for such other and further relief

as it appears to Plaintiff is proper and necessary for the enforcement of the judgment; and

K.      Awarding such other and further relief to Plaintiff as the Court may deem just and

proper in the circumstances.

Dated: New York, New York
       August 30, 2019

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        *Attorney for Plaintiff*


                                By: _____
                                        Jeffrey A. Novack
                                        Assistant Attorney General
                                        Investor Protection Bureau
                                        (212) 416-6178
                                        jeffrey.novack@ag.ny.gov

                                        Mary Kay Dunning
                                        Senior Enforcement Counsel
                                        Investor Protection Bureau

                                        Verle Johnson
                                        Assistant Attorney General
                                        Investor Protection Bureau


                                        *Attorneys for Plaintiff*
                                        *People of the State of New York*

Of Counsel:

Kevin Wallace
Acting Bureau Chief
Investor Protection Bureau

**EXHIBIT C**

**Fill in this information to identify the case:**

Debtor 1          Aaron Fischman

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Southern District of New York

Case number   23-35660

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Shalom Maidenbaum

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Eric W. Berry, Esq. / Berry Law PLLC
Name

745 Fifth Avenue, 5th Floor
Number        Street

New York          NY        10151
City                    State          ZIP Code

Contact phone  (212) 355-0777

Contact email  berrylawpllc@gmail.com

**Where should payments to the creditor be sent? (if different)**

Name

Number        Street

City                    State          ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — —

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____       Filed on _____
                                                                                                      MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**   $ _____ 900,000.00 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Claim based on Debtor's fraud in connection with creditor Shalom    Maidenbaum's $900,000 of investments in Cardis Enterprises International, B.V., and/or Cardis Enterprises International, N.V., and/or Cardis Enterprises International (USA), Inc.  This claim is nondischargeable pursuant to, among other provisions, 11 U.S.C. section 523(a)(2).

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                          $ _____

**Amount of the claim that is secured:**       $ _____

**Amount of the claim that is unsecured:**     $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**       $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**       $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    10/19/2023
                    MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Shalom | | Maidenbaum |
| | First name | Middle name | Last name |
| Title | | | |
| Company | Maidenbaum & Sternberg, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 132 Spruce Street | | |
| | Number        Street | | |
| | Cedarhurst | NY | 11516 |
| | City | State | ZIP Code |
| Contact phone | 516-569-8100 | Email | Shalom.Maidenbaum@msllplaw.com |

| Print | Save As... | Add Attachment | Reset |
|---|---|---|---|

**EXHIBIT D**

**SHORT FORM ORDER**

## SUPREME COURT - STATE OF NEW YORK

**Present:**    **HON. R. BRUCE COZZENS - SUPREME COURT JUSTICE**

---

SHALOM S. MAIDENBAUM,

                                Plaintiff,

                -against-

CARDIS ENTERPRISES INTERNATIONAL, B.V.,
CARDIS ENTERPRISES INTERNATIONAL, N.V.,
CARDIS ENTERPRISES INTERNATIONAL (USA), INC.
CHOSHEN ISRAEL LLC and AARON FISCHMAN.

                                Defendants.

---

**TRIAL/ IAS PART 1**

**NASSAU COUNTY**

**INDEX NO. 604610/2016**

**MOT. SEQ. #38**

        The following papers read on this Order to Show Cause (Mot. #38) for Contempt of Court:

### NYSCEF  639 -654

Order to Show Cause/Affidavit/Affirmation/Exhibits....................................X
Affidavit/Affirmation..................................................................................X
Reply Affidavit/Affirmation/Exhibits..........................................................X

The Order to Show Cause by the Plaintiff for an Order of this Court:

        (I) Adjudging Defendant Aaron Fischman to be in criminal contempt of Court in violation of Judiciary Law § 750(A)(3) and (4)

        (ii) Adjudging Defendant Aaron Fischman to be in Civil Contempt of Court in violation of Judiciary Law § 753(A)(5)

        (iii) issuing a warrant directing the Sheriff of any County within the State of New York to arrest Defendant Aaron Fischman

        (iv) pursuant to Judiciary Law §751(1) ordering Defendant Aaron Fischman imprisoned for a term of 30 days,; and following the completion of that term of imprisonment;

(v) pursuant to Judiciary Law §774 ordering Defendant Aaron Fischman imprisoned for an additional term (not to exceed six months) until he has fully complied with his obligations under the Court's January 21, 2022 Order (the "Court Order") is hereby determined as follows:

This is a judgment enforcement action in which the Plaintiff is seeking to enforce and collect on a judgment in the principal amount of $2,576,446.78 entered on June 21, 2016. The judgment is based upon the failure to pay on a promissory note that was secured by an Affidavit of Confession of Judgment that was filed when the debtors defaulted on the promissory note.

The Court Order upon which this Order to Show Cause was brought was entered on January 21, 2022 and served on February 8, 2022. That Court Order was the decision on Motions (Seq. # 33 and #34) in this post judgment action. Motion (Seq. #33) was filed by Aaron Fischman seeking a protective order protecting him and his wife Nina Fischman from responding to outstanding *subpoenas* and having to be deposed. Motion (Seq. #34) was filed by Plaintiff seeking Criminal and Civil contempt against Nina Fischman for her failure to comply with a valid *subpoena*. The Order stated that "The application for contempt is granted to the extent that Nina and Aaron Fischman shall produce the demanded documents and appear for a deposition on or before February 28, 2022." Notification was sent to the attorney for Aaron Fischman notifying him that the deposition was scheduled for February 24, 2022. Aaron Fischman and his Counsel failed to appear.

On December 15, 2022, Aaron Fischman pled guilty to Grand Larceny in the Third Degree and fraudulent practices with respect to stocks, bonds and other securities in violation of General Business Law 352-c(5) he was sentenced to a three year conditional discharge and $2,000,000 restitution. A Check was turned over for $1,000,000 in Court by Aaron Fischman's Attorney Levi Huebner, Esq. who is also the Attorney on this matter.

It has been almost seven years since the Judgment (based upon a Confession of Judgment) was entered in this action. There has been constant avoidance of providing financial documents and failure to comply with Court Orders. Though claiming not to have funds $1,000,000. was paid to another Creditor.

Civil contempt is based upon the sound discretion of the Court based upon clear and convincing evidence. The order of this Court directing Aaron Fischman to produce the demanded documents and appear for deposition on or before February 28, 2022 was clear and unambiguous and was granted following many other Court orders issued on 32 prior motions. The order clearly was disobeyed following its entry into **NYSCEF**. The Plaintiff has been prejudiced by this offending conduct since the Plaintiff can not get the information required to enforce the judgment, *El-Dehdan v. El-Dehdan*, 114 A.D.3d 4(2d Dep't 2013), aff'd 26 N.Y.3d 19 (2015). Civil contempt allows the Court to punish by fine and imprisonment and includes circumstances such as here where the person *subpoenaed* has failed to comply (Judiciary Law §753 (A)).

The same act may be punishable both as Criminal and Civil contempt, *Town of Southampton v. R.K.B. Realty, LLC* 91 A.D.3d 628 (2d Dep't 2012). Pursuant to section 750(A) (3) and (4) the Court may find Criminal Contempt where there has been a higher degree of wilfulness and contumaciousness than is required in Civil Contempt, *Matter of Murray*, 98 A.D.2d 93 (1st Dep't 1983). A review of this Court's file, 38 motions and 654 filings in **NYSCEF** in this post judgment enforcement action, clearly shows there has been, and continues to be, wilfulness and contumaciousness on the part of Aaron Fischman in deliberately avoiding the orders of the Honorable Jerome C. Murphy and the undersigned. There have been many clear and lawful orders of this Court including the order of January 21, 2022 of which Aaron Fischman had notice and the Plaintiff has clearly been prejudiced by the failure on the part of Aaron Fischman to comply.

Instead of addressing the merits of the Order to Show Cause Counsel chose to argue regarding the service of the Order to Show Cause. The Affidavit of Service of James H. Deluca dated March 6, 2023 indicates that every attempt at personal service failed due to the efforts of Aaron Fischman to avoid service and accordingly the process server conducted nail and mail service of the Order to Show Cause. The Process Server affixed a copy to the door of the residence, 703 Carlyle Street, Woodmere, NY 11598 and on February 28, 2023 copies were mailed to 703 Carlyle Street, Woodmere, NY 11598. In addition, the attorney, Levi Huebner was served via e-mail. (**NYSCEF** 649, 650) Under the circumstances the Court finds the nail and mail service and service upon the attorney to be proper.

The Defendant has proffered no excuse for failure to comply with the multiple Court Orders including the order of the undersigned which is the subject of this motion. The underlying *subpoena* was served in June of 2017 almost six (6) years ago and in spite of the orders of Justice Murphy and the undersigned there has been no compliance whatsoever. There have been ten motions relating to the 2017 *subpoenas* including six by the Plaintiff for Contempt of Court and 4 by the Defendant seeking to quash and/or for a protective order. The conduct on the part of the Defendants is making a mockery of this Court. The Court therefore finds the Defendant Aaron Fischman guilty of Criminal Contempt of Court as well as Civil Contempt of Court. This Court may render separate imprisonments for Criminal and Civil contempt however they must run concurrently.

(CONTINUED ON NEXT PAGE)

ACCORDINGLY, THE COURT FINDS THE DEFENDANT, AARON FISCHMAN GUILTY OF BOTH CIVIL AND CRIMINAL CONTEMPT OF COURT. THE DEFENDANT AARON FISCHMAN IS SENTENCED TO THIRTY (30 DAYS) IN PRISON FOR CRIMINAL CONTEMPT OF COURT AND TWENTY (20) DAYS IN PRISON FOR CIVIL CONTEMPT OF COURT THE SENTENCE TO RUN CONCURRENTLY. DEFENDANT AARON FISCHMAN MAY PURGE HIMSELF OF CIVIL AND CRIMINAL CONTEMPT OF COURT BY APPEARING WITH ALL DEMANDED DOCUMENTS AND SUBMITTING HIMSELF TO A DEPOSITION ON TUESDAY MAY 9, 2023 AT 9:30 A.M. AT THE COURTHOUSE. AARON FISCHMAN IS TO APPEAR IN THE THIRD FLOOR COURTROOM OF THE UNDERSIGNED JUSTICE, THE HONORABLE R. BRUCE COZZENS SUPREME COURT 100 SUPREME COURT DRIVE MINEOLA, NEW YORK 11501 ON TUESDAY THE 9TH DAY OF MAY, 2023 AT 9:30 A.M. SHOULD THE DEFENDANT, AARON FISCHMAN FAIL TO COMPLY WITH THIS ORDER A WARRANT WILL ISSUE WITHOUT FURTHER NOTICE FOR THE ARREST OF AARON FISCHMAN AND AARON FISCHMAN WILL BE INCARCERATED FOR THIRTY (30) DAYS.

The NYSCEF System is instantaneous. Accordingly, this order shall be deemed served upon the Defendant Aaron Fischman upon entry of the Order by the County Clerk.

Dated:

APR 25 2023

_____
Hon. R. Bruce Cozzens
Supreme Court Justice

**ENTERED**

APR 25 2023

**NASSAU COUNTY
COUNTY CLERK'S OFFICE**

**EXHIBIT E**

At IAS Part 1 of the Supreme Court
of the State of New York, Nassau County,
100 Supreme Court Drive, Mineola,
New York 11901, on the    1ST Day
of   AUGUST    2023

P r e s e n t:    Hon. R. Bruce Cozzens, Presiding
Justice of the Supreme Court

-----------------------------------------------------------X

SHALOM S. MAIDENBAUM,

                                         Index No. 604610/2016

                       Plaintiff,

 - against -

CARDIS ENTERPRISES INTERNATIONAL, B.V.,
CARDIS ENTERPRISES INTERNATIONAL, N.V.,
CARDIS ENTERPRISES INTERNATIONAL (USA), INC.,
CHOSHEN ISRAEL LLC and AARON FISCHMAN,

                                          **ORDER**

                     Defendants.

-----------------------------------------------------------X

THE COURT HAVING previously found defendant Aaron Fischman ("Fischman")
guilty of both criminal and criminal contempt of Court and sentenced him to thirty (30) days in
prison for criminal contempt of court and twenty (20) days in prison for civil contempt of court,
the sentences to run concurrently, and provided that Fischman could purge himself of criminal
and civil contempt of Court by appearing with all demanded documents and submitting himself
to a deposition on Tuesday, May 9, 2023 at 9:30 a.m. at the Courthouse; and   though Aaron D. Fischman
was in the Courtroom the matter could not proceed due to a Bankrupcy Stay being in effect, and

IT APPEARING that all proceedings in this case were stayed on May 8, 2023 under 11
U.S.C. §362 by the filing of a bankruptcy case, *In re Aaron D. Fischman*, Case No.
23-35368-cgm (Bankr., S.D.N.Y.) ("the *Fischman* bankruptcy case"); and

IT FURTHER APPEARING that the *Fischman* bankruptcy case was dismissed by the
order of the Hon. Cecelia G. Morris, U.S.B.J., dated July 11, 2023 (*see* NYSCEF 664),

IT IS HEREBY ORDERED that defendant Aaron Fischman may purge himself of civil
and criminal contempt of court by appearing with all demanded documents and submitting
himself to a deposition on Monday, August14,2023 at 9:00a.m. at the Courthouse.  Aaron
Fischman is to appear in the Third Floor Courtroom of the undersigned Justice, The Honorable

R. Bruce Cozzens, Supreme Court, 100 Supreme Court Drive, Mineola, New York 11501 on Monday, the 14th day of August, 2023 at 9:00 a.m. Should the defendant, Aaron Fischman, fail to comply with this order a warrant will issue without further notice for the arrest of Aaron Fischman and Aaron Fischman will be incarcerated for thirty (30) days.

The NYSCEF System is instantaneous. Accordingly, this order shall be deemed served upon the Defendant Aaron Fischman upon entry of the Order by the County Clerk.

Dated: August 1, , 2023

Hon. R. Bruce Cozzens
Supreme Court Justice

# ENTERED

## Aug 02 2023

NASSAU COUNTY
COUNTY CLERK'S OFFICE

2

**EXHIBIT F**

At IAS Part 1 of the Supreme Court
of the State of New York, Nassau County,
100 Supreme Court Drive, Mineola,
New York 11901, on the   1ST Day
of   AUGUST   2023

P r e s e n t:   Hon. R. Bruce Cozzens, Presiding
Justice of the Supreme Court

-----------------------------------------------------------X

SHALOM S. MAIDENBAUM,

Index No. 604610/2016

                              Plaintiff,

 - against -

CARDIS ENTERPRISES INTERNATIONAL, B.V.,
CARDIS ENTERPRISES INTERNATIONAL, N.V.,
CARDIS ENTERPRISES INTERNATIONAL (USA), INC.,
CHOSHEN ISRAEL LLC and AARON FISCHMAN,

**ORDER**

                              Defendants.

-----------------------------------------------------------X

THE COURT HAVING previously found defendant Aaron Fischman ("Fischman")
guilty of both criminal and criminal contempt of Court and sentenced him to thirty (30) days in
prison for criminal contempt of court and twenty (20) days in prison for civil contempt of court,
the sentences to run concurrently, and provided that Fischman could purge himself of criminal
and civil contempt of Court by appearing with all demanded documents and submitting himself
to a deposition on Tuesday, May 9, 2023 at 9:30 a.m. at the Courthouse; and   though Aaron D. Fischman
was in the Courtroom the matter could not proceed due to a Bankruptcy Stay being in effect, and

IT APPEARING that all proceedings in this case were stayed on May 8, 2023 under 11
U.S.C. §362 by the filing of a bankruptcy case, *In re Aaron D. Fischman*, Case No.
23-35368-cgm (Bankr., S.D.N.Y.) ("the *Fischman* bankruptcy case"); and

IT FURTHER APPEARING that the *Fischman* bankruptcy case was dismissed by the
order of the Hon. Cecelia G. Morris, U.S.B.J., dated July 11, 2023 (*see* NYSCEF 664),

IT IS HEREBY ORDERED that defendant Aaron Fischman may purge himself of civil
and criminal contempt of court by appearing with all demanded documents and submitting
himself to a deposition on Monday, August 14, 2023 at 9:00 a.m. at the Courthouse. Aaron
Fischman is to appear in the Third Floor Courtroom of the undersigned Justice, The Honorable

R. Bruce Cozzens, Supreme Court, 100 Supreme Court Drive, Mineola, New York 11501 on Monday, the 14th day of August, 2023 at 9:00 a.m. Should the defendant, Aaron Fischman, fail to comply with this order a warrant will issue without further notice for the arrest of Aaron Fischman and Aaron Fischman will be incarcerated for thirty (30) days.

    The NYSCEF System is instantaneous. Accordingly, this order shall be deemed served upon the Defendant Aaron Fischman upon entry of the Order by the County Clerk.

Dated:    August 1,   , 2023

Hon. R. Bruce Cozzens
Supreme Court Justice

# ENTERED

## Aug 02 2023

NASSAU COUNTY
COUNTY CLERK'S OFFICE

2

**EXHIBIT G**

| | | |
|---|---|---|
| | | pro se plaintiff. Ordered by Judge Gary R. Brown on 7/27/2021. (Meil, Stephen) (Entered: 07/27/2021) |
| 07/27/2021 | 18 | First MOTION for pre motion conference *to Dismiss Action* by Elliot Blumenthal, Shalom S Maidenbaum, Jonathan Stein. (Stein, Jonathan) (Entered: 07/27/2021) |
| 07/27/2021 | 19 | Letter from Nina Fischman regarding DE 15 Motion for Extension. (Tirado, Chelsea) (Entered: 07/28/2021) |
| 08/03/2021 | | ORDER deferring ruling on 18 Motion for Pre Motion Conference pending plaintiff's response to this Court's Order of June 23, 2021. The Clerk of the Court is respectfully directed to mail a copy of this Order to the pro se plaintiff. Ordered by Judge Gary R. Brown on 8/3/2021. (Meil, Stephen) (Entered: 08/03/2021) |
| 08/11/2021 | 20 | RESPONSE TO ORDER TO SHOW CAUSE requesting that the Court vacate the 6/23/2021 Electronic OTSC and requesting 3 week extension to file a pre motion conference letter by Nina Fischman (Tirado, Chelsea) (Entered: 08/12/2021) |
| 08/17/2021 | 21 | MOTION for pre motion conference re Order on Motion for Extension of Time to File, *Motion to Dismiss under Rules 12(b)(6) and 9(b)* by Eric W. Berry. (Berry, Eric) (Entered: 08/17/2021) |
| 08/19/2021 | | ORDER DISMISSING CASE: On June 23, 2021, the undersigned entered a show cause order directing *pro se* plaintiff to show cause why this matter should not be dismissed as against Justice Murphy under, *inter alia*, the doctrines of judicial and sovereign immunity, and why this matter should not be dismissed as to the private parties as parties not subject to suit under 42 U.S.C. § 1983.<br><br>As to Justice Murphy, the Justice has represented to this Court that he has recused himself from the underlying action at issue. *See* DE 7. As a result, this Court is unable to provide the prospective declaratory relief that plaintiff seeks regarding Justice Murphy's activity in that case.<br><br>As for the private parties, plaintiff principally relies on the Supreme Court's decision in *Lugar v. Edmondson Oil Co.*, in which the Supreme Court addressed circumstances under which a private party may be held liable under § 1983 as a state actor. The Court held that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment," further clarifying that "invoking the aid of state officials to take advantage of state-created attachment procedures" is sufficient to raise a claim "when the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute." *Lugar*, 457 U.S. 922, 941-42 (1982). The allegations set forth in the complaint do not make clear whether the attachment of plaintiff's property was conducted pursuant to an order issued in the case brought against plaintiff's husband, or the case brought against, *inter alia*, both her and her husband. The former situation would seem to make the attachment akin to *ex parte* relief, in that the application would necessarily have been filed without opportunity for plaintiff to respond. In such a situation, the private parties would appear to be state actors for the purposes of § 1983.<br><br>However, the Supreme Court in *Lugar* further held that the plaintiff in that case "did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the... statute; he did not insofar as he alleged only misuse or abuse of the statute." *Id.* at 942. That is, even in the circumstances contemplated by the *Lugar* |

| | | |
|---|---|---|
| | | court, a plaintiff may bring claims under § 1983 against private parties only when challenging the constitutionality of the statutory enforcement scheme used by such parties. In this case, plaintiff does not challenge the constitutionality of NY CPLR 5222; she merely alleges its misuse. Accordingly, she fails to state a plausible claim against the private parties.<br><br>For the reasons set forth above, the claims against Justice Murphy and against the private parties are dismissed without prejudice. As this effectively adjudicates the claims against all remaining defendants to this action, the Clerk of the Court is respectfully directed to close the case, and to mail a copy of this Order to the pro se plaintiff.<br><br>Ordered by Judge Gary R. Brown on 8/19/2021. (Meil, Stephen) (Entered: 08/19/2021) |
| 08/19/2021 | | ORDER finding as moot 7 Motion for Pre Motion Conference, 18 Motion for Pre Motion Conference, 21 Motion for Pre Motion Conference in light of this Court's earlier Order of August 19, 2021. The Clerk of the Court is respectfully directed to mail a copy of this Order to the *pro se* plaintiff. Ordered by Judge Gary R. Brown on 8/19/2021. (Meil, Stephen) (Entered: 08/19/2021) |
| 08/19/2021 | | Civil Case Terminated pursuant to 8/19/2021 Electronic Order. (Tirado, Chelsea) (Entered: 08/23/2021) |
| 09/19/2021 | 22 | NOTICE OF APPEAL as to Order Dismissing Case by Nina Fischman. (Attachments: # 1 Receipt for Payment) (Landow, Concetta) (Entered: 09/22/2021) |
| 09/22/2021 | 23 | USCA Appeal Fees received $ 505 receipt number 4653160023 re 22 Notice of Appeal filed by Nina Fischman. (Landow, Concetta) (Entered: 09/22/2021) |
| 09/22/2021 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 22 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Landow, Concetta) (Entered: 09/22/2021) |
| 10/18/2022 | 24 | MANDATE of USCA 21-2326 as to 22 Notice of Appeal filed by Nina Fischman. UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED. (CL) (Entered: 10/18/2022) |
| 10/26/2022 | 25 | USCA Statement of Costs 21-2326 as to 22 Notice of Appeal filed by Nina Fischman. IT IS HEREBY ORDERED that costs are taxed in the amount of $172.95 in favor of Appellees Eric W. Berry, Elliot Blumenthal, Shalom S. Maidenbaum and Jonathan Stein. (CL) (Entered: 10/26/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/04/2023 22:02:14 | | |
| **PACER Login:** | eberry658 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-03111-GRB-ARL |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**EXHIBIT H**

SHORT FORM ORDER

## SUPREME COURT - STATE OF NEW YORK

Present:

HON. JEROME C. MURPHY,

Justice

Trial/IAS Part 7

---

SHALOM S. MAIDENBAUM,

Plaintiff,

- against -

CARDIS ENTERPRISES INTERNATIONAL, B.V.,
CARDIS ENTERPRISES INTERNATIONAL, N.V.,
CARDIS ENTERPRISES INTERNATIONAL (USA), INC.,
CHOSEN ISRAEL, LLC and AARON FISCHMAN,

Defendants,

Index No. 604610-2016

RECUSAL ORDER

---

On the Court's own motion recusing itself from hearing this matter, it is hereby:

ORDERED, that this matter is respectfully referred to Hon. Norman St. George, Supervising Judge, for the purpose of reassignment to another Justice of this Court outside of the Commercial Division, since one of the non-parties has sued this Justice prior to the Court ruling on a contempt motion against that individual.

This constitutes the Decision and Order of this Court.

DATED: June 2, 2021

JEROME C. MURPHY
J.S.C.

**ENTERED**

**Jun 04 2021**

NASSAU COUNTY
COUNTY CLERK'S OFFICE

**EXHIBIT I**

# U.S. District Court
## Eastern District of New York (Central Islip)
## CIVIL DOCKET FOR CASE #: 2:23-cv-03039-KAM-ARL

| | |
|---|---|
| Maidenbaum v. Marcus et al | Date Filed: 04/21/2023 |
| Assigned to: Judge Kiyo A. Matsumoto | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Arlene R. Lindsay | Nature of Suit: 190 Contract: Other |
| Demand: $930,000 | Jurisdiction: Diversity |
| Cause: 12:22 Securities Fraud | |

**Plaintiff**

**Shalom S. Maidenbaum**                  represented by    **Elliot J. Blumenthal**
483 Chestnut Street
Cedarhurst, NY 11516
516-295-0903
Fax: 516-706-3963
Email: elliot@eblumenthallaw.com
*ATTORNEY TO BE NOTICED*

**Eric William Berry**
Berry Law PLLC
745 Fifth Avenue
Ste 5th Floor
New York, NY 10151
212-355-0777
Fax: 212-750-1371
Email: berrylawpllc@gmail.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ellen Rea Marcus**
*TERMINATED: 07/17/2023*

V.

**Defendant**

**Seymour H Marcus**                  represented by    **Asher Perlin**
*also known as*                                           Law Office of Asher Perlin
Sy H. Marcus                                              4600 Sheridan Street
Ste 303
Hollywood, FL 33021
786-687-0404
Email: asher@asherperlin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Levi Huebner**
Levi Huebner & Associates, PC
488 Empire Boulevard
Suite 100
Brooklyn, NY 11225
212-354-5555
Email: Newyorklawyer@msn.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ellen Reas Marcus**                    represented by **Asher Perlin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Levi Huebner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Ultimax Digital, Inc.**               represented by **Paul Goodman**
Cyruli Shanks Hart & Zizmor LLP
420 Lexington Avenue
Suite 2320
New York, NY 10170
212-661-6800
Fax: 212-661-5350
Email: pgoodman@cszlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/21/2023 | 1 | COMPLAINT against Ellen Reas Marcus, Seymour H Marcus filing fee $ 402, receipt number ANYEDC-16624091 Was the Disclosure Statement on Civil Cover Sheet completed -No,, filed by Shalom S. Maidenbaum. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons) (Berry, Eric) Modified on 4/24/2023 (AC). (Entered: 04/21/2023) |
| 04/24/2023 | 2 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made. (AC) (Entered: 04/24/2023) |
| 04/24/2023 | | Case Assigned to Judge Kiyo A. Matsumoto and Magistrate Judge Arlene R. Lindsay. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (AC) (Entered: 04/24/2023) |
| 04/24/2023 | | Your proposed summons was not issued for one of the following reasons: **No name and address on the Plaintiffs attorney name and addresses section.,**<br><br>Please correct and resubmit using Proposed Summons/Civil Cover Sheet. (AC) (Entered: 04/24/2023) |

| | | |
|---|---|---|
| 04/24/2023 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **Do NOT return or file the consent <u>unless</u> all parties have signed the consent.** (AC) (Entered: 04/24/2023) |
| 04/24/2023 | 4 | Proposed Summons. Re 1 Complaint, by Shalom S. Maidenbaum (Berry, Eric) (Entered: 04/24/2023) |
| 04/25/2023 | 5 | Summons Issued as to Ellen Reas Marcus, Seymour H Marcus. (IH) (Entered: 04/25/2023) |
| 04/28/2023 | 6 | NOTICE of Appearance by Eric William Berry on behalf of Shalom S. Maidenbaum (notification declined or already on case) (Berry, Eric) (Entered: 04/28/2023) |
| 05/04/2023 | 7 | NOTICE of Appearance by Elliot J. Blumenthal on behalf of All Plaintiffs (aty to be noticed) (Blumenthal, Elliot) (Entered: 05/04/2023) |
| 05/09/2023 | 8 | SUMMONS Returned Executed by Shalom S. Maidenbaum. Seymour H Marcus served on 5/2/2023, answer due 5/23/2023. (Berry, Eric) (Entered: 05/09/2023) |
| 05/09/2023 | 9 | SUMMONS Returned Executed by Shalom S. Maidenbaum. Ellen Rea Marcus served on 5/2/2023, answer due 5/23/2023. (Berry, Eric) (Entered: 05/09/2023) |
| 05/23/2023 | 10 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by Ellen Reas Marcus, Seymour H Marcus. (Perlin, Asher) (Entered: 05/23/2023) |
| 05/24/2023 | | ORDER granting 10 Motion for Extension of Time to Answer. The time for defendants to answer, move against or otherwise respond to the Complaint is extended until June 6, 2023. Ordered by Magistrate Judge Arlene R. Lindsay on 5/24/2023. (BJ) (Entered: 05/24/2023) |
| 06/06/2023 | 11 | Letter MOTION for pre motion conference re 1 Complaint, *Motion to Dismiss* by Ellen Reas Marcus, Seymour H Marcus. (Perlin, Asher) (Entered: 06/06/2023) |
| 06/07/2023 | | ORDER granting 11 Motion for Pre-Motion Conference. Pre-Motion Hearing set for June 21, 2023 at 2:30 pm in Courtroom 6B South before Judge Kiyo A. Matsumoto. The parties shall appear by telephone. The parties shall dial into the conference by calling 1-888-684-8852 and entering the following access code: 1312089. Plaintiff shall file a response, of no more than three pages, to Defendants' 5 letter requesting a Pre-Motion Conference by June 14, 2023. Ordered by Judge Kiyo A. Matsumoto on 6/7/2023. (HM) (Entered: 06/07/2023) |
| 06/08/2023 | 12 | Consent MOTION to Adjourn Conference by Ellen Reas Marcus, Seymour H Marcus. (Perlin, Asher) (Entered: 06/08/2023) |
| 06/12/2023 | | PORDER granting 12 Motion to Adjourn Pre-Motion Conference. Pre-Motion Hearing set for July 12, 2023 at 12:30 pm in Courtroom 6B South before Judge Kiyo A. Matsumoto. The parties shall appear by telephone. The parties shall dial into the conference by calling 1-888-684-8852 and entering the following access code: |

| | | |
|---|---|---|
| | | 1312089.<br><br>Plaintiff shall file a response, of no more than three pages, to Defendants' [11] letter requesting a Pre-Motion Conference by June 14, 2023. Ordered by Judge Kiyo A. Matsumoto on 6/12/2023. (HM) (Entered: 06/12/2023) |
| 06/14/2023 | 13 | MOTION for pre motion conference re Order on Motion to Adjourn Conference,, *and response to Defendants' Request for a Pre-motion conference* by Shalom S. Maidenbaum. (Berry, Eric) (Entered: 06/14/2023) |
| 06/16/2023 | | ORDER. The Court is in receipt of Plaintiff's [13] letter response to Defendants' [11] Motion for a Pre-Motion Conference. Plaintiff is granted leave to amend the Complaint and is ordered to file an Amended Complaint within 30 days or by Monday, July 17, 2023. Defendants' [11] Motion for a Pre-Motion Conference is accordingly moot. The Pre-Motion Hearing previously scheduled for July 12, 2023 is adjourned. Defendants may file a Motion for a Pre-Motion Conference in anticipation of a motion to dismiss upon receipt and review of Plaintiffs Amended Complaint. Ordered by Judge Kiyo A. Matsumoto on 6/16/2023. (HM) (Entered: 06/16/2023) |
| 07/17/2023 | 14 | AMENDED COMPLAINT against Ellen Rea Marcus, Seymour H Marcus, filed by Shalom S. Maidenbaum. (Berry, Eric) (Entered: 07/17/2023) |
| 07/31/2023 | 15 | MOTION for pre motion conference re [14] Amended Complaint *Motion to Dismiss* by Ellen Reas Marcus, Seymour H Marcus. (Perlin, Asher) (Entered: 07/31/2023) |
| 08/03/2023 | 16 | RESPONSE to Motion re [15] MOTION for pre motion conference re [14] Amended Complaint *Motion to Dismiss* filed by Shalom S. Maidenbaum. (Berry, Eric) (Entered: 08/03/2023) |
| 08/07/2023 | | ORDER granting [15] Motion for Pre-Motion Conference. Pre-Motion Hearing set for 8/23/2023 at 2:00 PM in Courtroom 6B South before Judge Kiyo A. Matsumoto. The parties shall appear by telephone. The parties shall dial into the conference by calling 1-888-684-8852 and entering the following access code: 1312089. Ordered by Judge Kiyo A. Matsumoto on 8/7/2023. (HM) (Entered: 08/07/2023) |
| 08/16/2023 | 17 | SCHEDULING ORDER: Rule 26 Meeting Report due by September 18, 2023. See the attached Order for details. Ordered by Magistrate Judge Arlene R. Lindsay on 8/16/2023. (Attachments: # 1 Rule 26(f) form) c/ecf (RI) (Entered: 08/16/2023) |
| 08/23/2023 | 18 | NOTICE of Appearance by Levi Huebner on behalf of All Defendants (aty to be noticed) (Huebner, Levi) (Entered: 08/23/2023) |
| 08/23/2023 | | Minute Order for proceedings held before Judge Kiyo A. Matsumoto: Pre-Motion Conference held on 8/23/2023. Appearances: Eric William Berry, Esq. and Elliot J. Blumenthal, Esq. for Plaintiff Shalom Maidenbaum; Levi Huebner, Esq. and Asher Perlin, Esq. for Defendants Seymour "Sy" Marcus and Ellen Marcus. The parties discussed Defendants' anticipated motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), which the Court advised Defendants is unlikely to succeed in light of the sufficiency of the factual allegations in the Amended Complaint. Moreover, the arguments set forth in Defendants' Pre-Motion Conference letter and articulated by defense counsel during the Pre-Motion Conference ignore the standard of review in a 12(b)(6) motion to dismiss. The parties also discussed Defendants' anticipated motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. However, the defense arguments are unlikely to succeed given Defendants' contacts and actions in New York. The parties shall appear before Magistrate Judge Arlene R. Lindsay in order |

| | | |
|---|---|---|
| | | to engage in discovery, including, but not limited to, jurisdictional discovery. Defense counsel is directed to advise the Court of how they intend to proceed by or before Wednesday, August 30, 2023.<br><br>Mr. Huebner is advised that his persistent interruption of the Court, after repeated instructions not to interrupt, was unprofessional and discourteous and will not be tolerated moving forward. Due to the difficulties with clear audio communication, the parties are directed to appear in person for all future conferences in this matter, unless the Court orders otherwise. Counsel are ordered to serve a copy of this minute entry on their clients and certify service on the docket by Friday, August 25, 2023. (Court Reporter Kristi Cruz.) (HM) (Entered: 08/23/2023) |
| 08/24/2023 | 19 | CERTIFICATE OF SERVICE by Shalom S. Maidenbaum re Pre Motion Conference,,,,,,, *of August 23, 2023 minute order on Mr. Maidenbaum* (Berry, Eric) (Entered: 08/24/2023) |
| 08/25/2023 | 20 | CERTIFICATE OF SERVICE by Ellen Reas Marcus, Seymour H Marcus *of Electronic Order dated August 23, 2023 per the directive of the Court* (Huebner, Levi) (Entered: 08/25/2023) |
| 08/25/2023 | 21 | Notice of Filing Bankruptcy (Attachments: # 1 Exhibit A - Bankruptcy Filing of Aaron Fischman, # 2 Exhibit B - Bankruptcy Filing of Choshen Israel LLC) (Huebner, Levi) (Entered: 08/25/2023) |
| 08/30/2023 | 22 | STATUS REPORT *regarding Defendants rocceding with thier pre-answer motion to dismiss* by Ellen Reas Marcus, Seymour H Marcus (Huebner, Levi) (Entered: 08/30/2023) |
| 09/07/2023 | | ORDER. The Court is in receipt of Defendants' 22 letter update indicating their intention to move forward with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6).<br><br>On August 23, 2023, the parties were ordered to "appear before Magistrate Judge Arlene R. Lindsay in order to engage in discovery, including, but not limited to, jurisdictional discovery" and "Defense counsel [was] directed to advise the Court of how they intend to proceed by or before Wednesday, August 30, 2023." Defense counsel has submitted a 22 letter update, but the docket reflects that no conference has taken place.<br><br>The parties are ORDERED to schedule a conference before Magistrate Judge Lindsay by or before Tuesday, September 12, 2023. Upon certification of the close of jurisdictional discovery from Magistrate Judge Lindsay, the parties shall submit a joint letter update to the Court advising of how they intend to proceed, including whether Plaintiff seeks to move to amend the Amended Complaint.<br><br>The parties are advised that this Court's orders are not optional. Ordered by Judge Kiyo A. Matsumoto on 9/7/2023. (HM) (Entered: 09/07/2023) |
| 09/07/2023 | 23 | Letter *concerning discovery planning conference* by Shalom S. Maidenbaum (Berry, Eric) (Entered: 09/07/2023) |
| 09/07/2023 | | ORDER. The Court is in receipt of Plaintiff's 23 letter advising that the Parties are scheduled to begin the discovery process before Judge Lindsay as of the filing of the Rule 26 meeting report on September 18, 2023. Plaintiff's update clarifies that the Parties are in compliance with the directive within the Court's August 23, 2023 Order. |

| | | |
|---|---|---|
| | | Ordered by Judge Kiyo A. Matsumoto on 9/7/2023. (HM) (Entered: 09/07/2023) |
| 09/18/2023 | 24 | Letter MOTION for Discovery *Order approving and filng Plaintiffs' Proposed Rule 26 Report* by Shalom S. Maidenbaum. (Attachments: # 1 Exhibit 1-Asher Perlin email to Eric Berry (9-18-23), # 2 Exhibit 2-Levi Huebner email to Eric Berry (9-18-23), # 3 3-Plaintiff's proposed Rule 26 report) (Berry, Eric) (Entered: 09/18/2023) |
| 09/18/2023 | 25 | RESPONSE in Opposition re 24 Letter MOTION for Discovery *Order approving and filng Plaintiffs' Proposed Rule 26 Report* filed by Ellen Reas Marcus, Seymour H Marcus. (Perlin, Asher) (Entered: 09/18/2023) |
| 09/19/2023 | | ORDER denying 24 Motion for Discovery. The parties are directed to meet and confer regarding the Rule 26(f) statement, and submit a joint statement to the court no later than September 22, 2023. In the event the parties are unable to meet prior to September 22, 2023, they shall be required to appear before the Court in person to resolve any differences. Ordered by Magistrate Judge Arlene R. Lindsay on 9/19/2023. (BJ) (Entered: 09/19/2023) |
| 09/22/2023 | 26 | REPORT of Rule 26(f) Planning Meeting (Berry, Eric) (Entered: 09/22/2023) |
| 09/22/2023 | | SCHEDULING ORDER: An Initial Conference is scheduled for October 11, 2023 at 11:30 a.m. by telephone before Magistrate Judge Arlene R. Lindsay. The parties are directed to dial (888) 684-8852 prior to the scheduled time to access the call center. At the prompt enter access code 7625765. Ordered by Magistrate Judge Arlene R. Lindsay on 9/22/2023. c.ecf (RI) (Entered: 09/22/2023) |
| 10/11/2023 | 28 | SCHEDULING ORDER: A Final Conference is scheduled for October 1, 2024 at 11:00 AM before Magistrate Judge Arlene R. Lindsay. See the attached Order for details.Ordered by Magistrate Judge Arlene R. Lindsay on 10/12/2023. c/ecf (RI) (Entered: 10/12/2023) |
| 10/12/2023 | 27 | Minute Entry for proceedings held before Magistrate Judge Arlene R. Lindsay on 10/11/2023. The case is referred to mediation which shall be completed by December 13, 2023. A scheduling order will be entered under a separate order. Depositions are stayed pending mediation. c/ecf (RI) (Entered: 10/12/2023) |
| 10/12/2023 | | MEDIATION INSTRUCTIONS for Counsel are available at: https://www.nyed.uscourts.gov/adr-forms. <br><br> Counsel are to select a mediator, schedule the first mediation session, and file the name of the mediator, date, time and place (in-person or remote) of the first mediation session via CM/ECF using the event Selection of Mediator. For a list of the EDNY Mediators and their qualifications, see the Court's website at https://www.nyed.uscourts.gov /adr/Mediation/displayAll.cfm. EDNY Mediators are compensated in accordance with EDNY Local Civil Rule 83.8(f)(1)[formerly EDNY Local Civil Rule 83.11(f)(1)]. <br><br> The Confidentiality Stipulation is available at: https://www.nyed.uscourts.gov/adr-forms. The Confidentiality Stipulation (in-person or remote) must be signed at or before the initial mediation session by all participants and the Mediator and returned via e-mail to nyed_adr@nyed.uscourts.gov. <br><br> Upon completion of the mediation, both parties must submit a Mediation Report which can be found at: https://www.nyed.uscourts.gov/adr-forms. The Mediation Report must be submitted within two weeks following mediation session. (JR) (Entered: 10/12/2023) |

| 10/13/2023 | 29 | Letter MOTION for Reconsideration *of Electronic Order Dated August 23, 2023* by Ellen Reas Marcus, Seymour H Marcus. (Attachments: # 1 Exhibit A - Notice of Bankrutcy Re: Choshen, # 2 Exhibit B - Notice of Bankruptcy Re: Fischman, # 3 Exhibit C - Notice of Appearance Re: Fischman Bankruptcy, # 4 Exhibit D - Notice of Appearance Re: Fischman Bankruptcy, # 5 Exhibit E - Notice of Appearance Re: Fischman Bankruptcy, # 6 Exhibit F - Notice of Appearance Re: Choshen Bankruptcy, # 7 Exhibit G - Notice of Appearance Re: Choshen Bankruptcy, # 8 Exhibit H - Notice of Appearance Re: Choshen Bankruptcy, # 9 Exhibit I - Subpoenas Issued by Plaintiff) (Huebner, Levi) (Entered: 10/13/2023) |
| 10/16/2023 | 30 | RESPONSE to Motion re 29 Letter MOTION for Reconsideration *of Electronic Order Dated August 23, 2023* filed by Shalom S. Maidenbaum. (Blumenthal, Elliot) (Entered: 10/16/2023) |
| 10/16/2023 | 31 | REPLY in Opposition *to Plaintff's Request for and Uncondtional Extension [ECF 30]* filed by All Defendants. (Attachments: # 1 Exhibit A - Email Exchange Between Counsel, # 2 Exhibit B - Non-Party Objections to Subpoenas) (Huebner, Levi) (Entered: 10/16/2023) |
| 10/17/2023 | 32 | Letter MOTION to Quash *Subpoena* by Ultimax Digital, Inc.. (Attachments: # 1 Exhibit Exhibit A - Copy of Subpoena, # 2 Exhibit Exhibit B - New York County Stay) (Goodman, Paul) (Entered: 10/17/2023) |
| 10/17/2023 |  | ORDER. The Court is in receipt of Defendants' 29 motion for reconsideration and Plaintiff's 30 letter regarding the timing of Plaintiff's response. Plaintiff is requested to file a response by or before Friday, October 27, 2023. Ordered by Judge Kiyo A. Matsumoto on 10/17/2023. (HM) (Entered: 10/17/2023) |
| 10/19/2023 | 33 | RESPONSE in Opposition re 32 Letter MOTION to Quash *Subpoena* filed by Shalom S. Maidenbaum. (Attachments: # 1 Exhibit A - copy of state court decision granting sanctions, # 2 Exhibit B - copy of state court decision awarding attorney fees) (Blumenthal, Elliot) (Entered: 10/19/2023) |
| 10/19/2023 | 34 | Letter MOTION to Stay *Discovery and hold in abeyance any decision regarding [ECF 32 & 33] pending Defendants' application* by Ellen Reas Marcus, Seymour H Marcus. (Attachments: # 1 Exhibit A - Defendants' application to the Honorable Judge Matsumoto) (Huebner, Levi) (Entered: 10/19/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/23/2023 15:45:05 | | |
| **PACER Login:** | eberry658 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:23-cv-03039-KAM-ARL |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |